UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 11 |
| Genmar Holdings, Inc., et al.[1] | Case No. 09-43537 |
| Debtors. | Jointly Administered |

**NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING
DEBTORS TO SELL THREE PARCELS OF REAL PROPERTY FREE
AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**

To:     Parties as specified in Local Rule 9013-3(a)(2).

1.      The above-referenced Debtors move the Court for the relief requested below and gives notice of a hearing.

2.      The Court will hold a hearing on this motion ("Sale Motion") at 10:00 a.m. on September 3, 2009 in Courtroom No. 2B, United States Courthouse, 316 North Robert Street, St. Paul, Minnesota.

3.      Any response to the relief sought at the final hearing on this Sale Motion must be filed and served by delivery not later than August 31, 2009, which is three days before the time set for the hearing (excluding Saturdays, Sundays, and holidays), or filed and served by mail not later than August 25, 2009, which is seven days before the time set for the hearing (excluding Saturdays, Sundays, and holidays).   **UNLESS A RESPONSE OPPOSING THE SALE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE SALE MOTION WITHOUT A HEARING.**

---

[1]     Jointly administered debtors: Genmar Holdings, Inc., Case No. 09-43537; Carver Industries, L.L.C., Case No. 09-43538; Carver Italia, L.L.C., Case No. 09-33773; Carver Yachts International, L.L.C., Case No. 09-33774; Genmar Florida, Inc., Case No. 09-43539; Genmar Industries, Inc., Case No. 09-43540; Genmar IP, LLC, Case No. 09-43541; Genmar Manufacturing of Kansas, Inc., Case No. 09-43542; Genmar Michigan, L.L.C., Case No. 09-43543; Genmar Minnesota, Inc., Case No. 09-33775; Genmar Tennessee, Inc., Case No. 09-43544; Genmar Transportation, Inc., Case No. 09-43545; Genmar Yacht Group, LLC, Case No. 09-43546; Marine Media, LLC, Case No. 09-43547; Minstar, LLC, Case No. 09-43548; Triumph Boats, Inc., Case No. 09-43550; Triumph Boat Rentals, L.L.C., Case No. 09-43551; VEC Leasing Services, L.L.C., Case No. 09-43552; VEC Management Co., L.L.C., Case No. 09-43553; VEC Technology, Inc., Case No. 09-43554; Windsor Craft Yachts, L.L.C., Case No. 09-43555; Wood Manufacturing Company, Inc., Case No. 09-43556.

4.    This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rules 1070-1 and 1073-1.  This is a core proceeding. The petitions commencing the above-captioned chapter 11 cases were filed on June 1, 2009 (the "Filing Date").  The cases are now pending before this Court.  Debtors continues to operate their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

5.    The relief sought in this Sale Motion is based upon 11 U.S.C.§ 105(a), § 363, § 363(b), § 363(f), § 363(m), § 541, and Fed. R. Bankr. P. 2002(a)(2) and 6004.  Debtors seek Court approval of the sale of certain real properties located in Sarasota, Florida (the "Properties") free and clear of all liens, claims, interests, and encumbrances.

## BACKGROUND

6.    Genmar Holdings, Inc. ("Genmar") was formed in 1994 to combine the operations of IJ Holdings Corp. and Miramar Marine Corporation, each of which were under the control of investor groups led by Irwin L. Jacobs ("Jacobs").  Jacobs later acquired other companies in the marine industry that are now subsidiaries of Genmar.  Genmar, through its subsidiaries, is primarily engaged in the manufacture and/or sale of recreational power boats under the brand names of Carver, Champion, Four Winns, Glastron, HydraSports, Larson, Marquis, Ranger, Scarab, Seaswirl, Stratos, Triumph, Wellcraft, FinCraft, and Windsor Craft Yachts.  Debtors sell their products primarily through an established network of more than 1,000 independent dealers in the United States and throughout the world.

7.    Overall, Debtors as a group are the second largest manufacturer and distributor of fiberglass powerboats in the world, selling more than 24,000 units during its fiscal year ended June 30, 2008.  It estimates net revenues of approximately $460 million by the end of its fiscal year June 30, 2009.  As of May 1, 2009, Company and its subsidiaries had approximately 1,500 employees with an average monthly payroll of $4.6 million.

8. Genmar's subsidiaries included in the filing are all borrowers under Genmar's senior credit facility. Genmar has subsidiaries who are not borrowers and who are not debtors in these cases. Genmar and its Debtor subsidiaries fall into the following categories:

**Holding Companies**

**Genmar Holdings, Inc.**—headquartered in Minneapolis, MN is the parent of wholly-owned Debtor subsidiaries Minstar, LLC, Marine Media, LLC, Windsor Craft Yachts, LLC, and Genmar Yacht Group, LLC. It employs corporate level professionals and staff to assist its subsidiaries in their operations.

**Minstar, LLC**—headquartered in Minneapolis, MN is the parent of wholly-owned Debtor subsidiary Genmar Industries, Inc.

**Genmar Industries, Inc.**—headquartered in Minneapolis, MN is the parent of wholly-owned Debtor subsidiaries Genmar Minnesota, Inc., Genmar Michigan, LLC, Genmar Tennessee, Inc., Carver Industries, LLC, Genmar IP, LLC, Genmar Florida, Inc., Triumph Boats, Inc., Triumph Boat Rentals, LLC, Genmar Transportation, Inc., and VEC Technology, Inc. These are the majority of the Debtor group operating assets. It also owns real property in Florida and Minnesota, and certain patents and trademarks used in some subsidiaries' manufacturing and sales.

**Marine Media, LLC**—headquartered in Minneapolis, MN is the owner of 37.75% of non-debtor Wave South Florida, LLC and 50% owner of non-debtor Boat Show Group, LLC. It is a holding company for small investments in start-up companies related to the marine industry.

**VEC Technology, Inc.**—is a former operating company that is now inactive and holds the stock of Debtor subsidiaries VEC Management Co., LLC and VEC Leasing Services, Inc.

**VEC Management Co., LLC** and **VEC Leasing Services, Inc.**—headquartered in Minneapolis, MN are the majority owners of non-debtor VEC Technology, LLC.

**Boat Manufacturing and Sales Companies**

**Carver Yachts International, LLC**—headquartered in Pulaski, WI, this company engages in sales of Carver and Marquis yachts through an office in Monaco.

**Genmar Michigan, LLC**—headquartered in Cadillac, MI, and formerly known as Four Winns Boats, LLC, this company owns and operates a manufacturing facility for and sells Four Winns and Wellcraft boats.

**Genmar Minnesota, Inc.** —headquartered in Little Falls, MN, and formerly known as Larson/Glastron Boats, Inc., this company owns and operates a manufacturing facility for and sells Larson, Glastron, Seaswirl, and FinCraft boats.

**Genmar Tennessee, Inc.**—headquartered in Murfreesboro, TN, and formerly known as Stratos Boats, Inc., this company owns and operates a manufacturing facility for and sells Stratos, Champion, and HydraSports boats.

**Genmar Yacht Group, LLC**—headquartered in Pulaski, WI, and formerly known as Carver Boat Corporation, LLC, this company owns and operates a manufacturing facility for and sells Carver and Marquis yachts.

**Triumph Boats, Inc.**—headquartered in Durham, NC, this company leases and operates a manufacturing facility for and sells Triumph boats.

**Windsor Craft Yachts, LLC**—headquartered in Minneapolis, MN, this company purchases, brands, and sells direct to the public wooden yachts that are manufactured on an exclusive basis by a third party in Turkey.

**Wood Manufacturing Company, Inc.**—headquartered in Flippin, AR, this company owns and operates a manufacturing facility for and sells Ranger boats.

### Other Debtor Entities

**Carver Industries, LLC** and **Genmar IP, LLC** are headquartered in Minneapolis, MN. They own various items of intellectual property for the operating companies.

**Genmar Transportation, Inc.**—headquartered in Little Falls, MN, this company owns real property adjacent to the Genmar Minnesota property and leases a fleet of semi-tractors and trailers to transport boats and other products for other subsidiaries and for third parties.

**Carver Italia, LLC**—now headquartered in Minneapolis, MN, this former operating company owns certain boat tooling and molds located in Fano, Italy and is liquidating its operating assets.

**Genmar Florida, Inc. (f/k/a Wellcraft Marine Corp.), Genmar Manufacturing of Kansas, Inc.,** and **Triumph Boat Rentals, LLC** are inactive companies and borrowers under the Wells Fargo N.A. ("Wells Fargo") credit facility.

9.     The marine industry began to be negatively impacted by a number of macro-economic factors and other factors unique to the industry beginning in the fall of 2007.  The Debtors responded immediately to these market conditions with operational changes, and infused additional equity, but conditions continued to erode as overall economic concerns lead to falling customer confidence and declines in retail sales.  In addition, financing sources previously available to Debtors and their dealers became more restrictive and, in some cases, unavailable.

The Debtors have, therefore, concluded that financing will only be available through the Debtor-in-possession loan process, and are seeking relief through Chapter 11.

## BACKGROUND RELEVANT TO RELIEF REQUESTED

6.    Debtor Minstar, L.L.C. (then known as Minstar, Inc.) acquired Aegis Corporation in 1984 for the purpose of acquiring the Wellcraft brand of boats.  Aegis's wholly owned subsidiary, Wellcraft Marine Corporation ("WMC"), owned the Properties at the time of the acquisition.  WMC merged into Debtor Genmar Industries, Inc. in 1986, where ownership of the Properties has remained.

7.    The Properties had been used to manufacture various brands of boats since its acquisition in 1984 until 2008, when the manufacturing operations at the Properties ceased and production was consolidated with other manufacturing facilities owned or operated by the debtors.

8.    Beginning in early 2008, Debtors have been engaged in efforts to sell the Properties.  The Properties consist of a main parcel, located at 1651 Whitfield Ave, Sarasota, FL 34243 (the "Main Parcel"), concrete buildings located at 1715 67th Avenue East, Sarasota, FL (the  "Concrete Buildings"), and a small parcel located at 7150 15th Ave, Sarasota, FL 34243 (the "Small Parcel," collectively with the Main Parcel and Concrete Buildings, the "Properties").

9.    Debtor Genmar Industries, Inc. holds title to the Properties, subject to mortgages in favor of Wells Fargo Bank National Association and Fifth Third Bank National Association (the "Senior Lenders.").

10.    Debtors hired NorthMarq Corporate Solutions LLC ("NorthMarq") to manage the disposition of the Properties.  Since February 2008, NorthMarq has engaged in efforts to market and dispose of the Properties.  These efforts include:

- Developing a strategic plan to dispose of the Properties;
- Preparing a highest and best use analysis;

- Developing a marketing program in cooperation with a local broker, Michael Saunders & Co. ("Saunders");
- Defining metrics and key performance indicators ("KPI") to measure success;
- Creating budget for selling expenses and net proceeds of sale;
- Developing a communication and reporting program;
- Conducting market research and analysis of comparative properties;
- Reviewing environmental considerations and recommending any additional assessments;
- Determining the value and asking price of the Properties;
- Compiling and maintaining a prospect list;
- Evaluating all offers, recommending responses, and reviewing all offers with Debtors;
- Providing reporting on progress against performance metrics and KPIs; and
- Providing monthly reports on progress, team performance, and projected outcomes.

11.     By order of this Court dated June 25, 2009, Debtors were authorized to continue to employ both NorthMarq and Saunders as ordinary course professionals.   NorthMarq has agreed to waive its prepetition claim of $91,400 and will be paid only a commission based on the sale price of the Properties.

12.     As part of its marketing efforts, NorthMarq completed a comparative property analysis, in-depth market surveys, and consulted with other real estate professionals in determining the appropriate asking price for the Properties.   The Properties were initially listed for sale in summer/fall 2008 at the following prices: $17,200,000 for the Main Parcel; $483,200 for the Concrete Buildings; and $7,700,000 for the Small Parcel.

13.     NorthMarq posted listings on their own website, as well as other websites that commonly list commercial real estate.   NorthMarq created a marketing brochure and distributed marketing flyers.   In August 2008, NorthMarq sent emails marketing the Properties to over 3,000 companies.   In January 2009, NorthMarq sent out a similar email.   Despite these efforts, no serious inquiries were made.

14.     In June 2009, as the real estate market continued to decline and after the Filing Date, the listing price of the Properties was adjusted.   The listing  prices for the Properties were

reduced to the following: $10,600,000 for the Main Parcel; $295,000 for the Concrete Buildings; and $4,620,000 for the Small Parcel.

15. A number of parties made inquiries into the purchase of the Properties. The purchase agreements attached as Exhibits A through C were the highest and best offers for the Properties.

16. Trans United Development Corp. ("Trans United") sought to purchase the Main Parcel (the "Main Parcel Sale Agreement") for $7,620,000. A true and correct copy of the Main Parcel Sale Agreement is attached as <u>Exhibit A</u>. The effective date of the Main Parcel Sale Agreement will be the date that this Court approves of the sale. Ex. A, First Addendum. After the effective date of the agreement, Trans United will have a thirty day due diligence period in which to determine, among other things, whether the property is suitable for its planned use. Ex. A, § 7(b). After receiving title to the Main Parcel from Debtors, Trans United will have 15 days within which to deliver notice to Debtors of any defect in title. Ex. A, § 4(b). The closing date of the sale will be sixty days after the effective date of the agreement. Ex. A, § 5. A deposit of $50,000 is currently being held in escrow pending Court approval of this Sale Motion, and Trans United must pay an additional $200,000 deposit within 30 days of the effective date of the Main Parcel Sale Agreement. Ex. A, § 2.

17. Pursuant to the Main Parcel Sale Agreement, NorthMarq and Saunders will be entitled to a five percent brokerage fee, which totals approximately $381,000. Debtors have requested that the applicable secured lenders, the Senior Lenders, consent to the payment of NorthMarq's fee directly out of sale proceeds.

18. Pursuant to the Main Parcel Sale Agreement, Debtors will receive approximately $6,967,220 in proceeds from the sale of the Main Parcel. These proceeds will be used to pay the Senior Lenders, who hold a mortgage on the Main Parcel.

19.     Trans United Development Corp. ("Trans United") sought to purchase the Small Parcel (the "Small Parcel Sale Agreement") for $3,138,615.  A true and correct copy of the Small Parcel Sale Agreement is attached as Exhibit B.  The effective date of the Small Parcel Sale Agreement will be the date that this Court approves the sale.  Ex. B, First Addendum.  After the effective date of the agreement, Trans United will have a thirty day due diligence period in which to determine, among other things, whether the property is suitable for its planned use.  Ex. B, § 7(b).  After receiving title to the Small Parcel from Debtors, Trans United will have 15 days within which to deliver notice to Debtors of any defect in title.  Ex. B, § 4(b).  The closing date of the sale will be sixty days after the effective date of the agreement.  Ex. B, § 5.  A deposit of $50,000 is currently being held in escrow pending Court approval of this Sale Motion, and Trans United must pay an additional $100,000 deposit within 30 days of the effective date of the Small Parcel Sale Agreement.  Ex. B, § 2.

20.     Pursuant to the Small Parcel Sale Agreement, NorthMarq and Saunders will be entitled to a five percent brokerage fee, which totals approximately $156,931.  Debtors have requested that the Senior Lenders consent to the payment of NorthMarq's fee directly out of sale proceeds.

21.     Pursuant to the Small Parcel Sale Agreement, Debtors will receive approximately $2,863,717 in proceeds from the sale of the Small Parcel.  These proceeds will be used to pay the Senior Lenders, who hold a mortgage on the Small Parcel.

22.     Nexgen Co. ("Nexgen," collectively with Trans United, the "Buyers") sought to purchase the Concrete Buildings (the "Concrete Buildings Sale Agreement") for $210,000.  A true and correct copy of the Concrete Buildings Sale Agreement is attached as Exhibit C.  The effective date of the Concrete Buildings Sale Agreement will be the date that this Court approves of the sale.  Ex. C, First Addendum.  After the effective date of the agreement, Nexgen will have a thirty day due diligence period in which to determine, among other things, whether the

property is suitable for its planned use. Ex. C, § 7(b). After receiving title to the Concrete Buildings from Debtors, Nexgen will have 15 days within which to deliver notice to Debtors of any defect in title. Ex. C, § 4(b). The closing date of the sale will be sixty days after the effective date of the agreement. Ex. C, § 5. A deposit of $1,000 is currently being held in escrow pending Court approval of this Sale Motion, and Trans United must pay an additional $9,000 deposit within 2 days of the effective date of the Concrete Buildings Sale Agreement. Ex. C, § 2.

23.     Pursuant to the Concrete Buildings Sale Agreement, NorthMarq and Saunders will be entitled to a five percent brokerage fee, which totals approximately $10,500. Debtors have requested that the Senior Lenders consent to the payment of NorthMarq's fee directly out of sale proceeds.

24.     Pursuant to the Concrete Buildings Sale Agreement, Debtors will receive approximately $190,662 in proceeds from the sale of the Concrete Buildings. These proceeds will be used to pay the Senior Lenders, who hold a mortgage on the Concrete Buildings.

25.     By selling the Properties, Debtors will realize approximately $10 million, which will pay down the obligations to the Senior Lenders.

26.     The proposed sale of the Properties will be a sale free and clear of all liens, claims, interests and encumbrances. Debtors have been working to obtain the Senior Lender's consent and anticipate they will consent to the sale and payment of commission from sale proceeds..

27.     Debtors believe  that sale of the Properties will benefit their estates, their creditors, particularly given that the Properties are not needed for Debtors' ongoing business operations.

## SALE OF THE PROPERTIES FREE AND CLEAR OF LIENS

28.     In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell properties "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

29.     Debtors believe that they will obtain the consent of the Senior Lenders to the sale of the Properties free and clear of liens, claims and encumbrances.  If such consent is not obtained, Debtors request that the liens, claims and encumbrances asserted against the Properties by the Senior Lenders or any creditor purporting to be a secured creditor be transferred and attached to the net proceeds from sales received by Debtors, subject to the rights, claims, defenses and objections, if any, of any and all interested parties with respect thereto.

30.     Accordingly, Debtors request that the order approving the sale of the Properties provide that such sale is free and clear of all liens, claims and encumbrances in accordance with section 363(f) of the Bankruptcy Code.

## REQUEST FOR RELIEF UNDER BANKRUPTCY RULES 6004(g)

31.     Bankruptcy Rule 6004(g) provides, in substance, that an order authorizing the sale of a debtor's property is stayed for a period of ten days after entry of the order unless the court orders otherwise.  Debtors request that any order approving the relief requested herein be

effective immediately, by providing that the ten-day stay is inapplicable. Debtors need to effectuate the asset disposition transaction described herein without waiting the ten-day period provided for under Bankruptcy Rule 6004(g). The failure to consummate the transaction expeditiously likely will have a significant adverse affect on the value to be realized upon the disposition of the Properties at issue.

## CONCLUSION

32.     Pursuant to Local Rule 9013-2, this Sale Motion is verified and is accompanied by a Memorandum of Law, proposed Order and proof of service.

33.     Pursuant to Local Rule 9013-2, Debtors give notice that they may, if necessary call David J. Huls, Chief Financial Officer of Genmar Holdings, Inc., or Ryan Tibbits, Senior Solutions Advisor of NorthMarq to testify at the hearing on the motion regarding the facts set out herein. Mr. Huls' business address is 2900 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402. Mr. Tibbits' business address is 3500 American Blvd W # 200, Minneapolis, MN 55431.

WHEREFORE, Debtors respectfully request that the Court enter their proposed order: (a) authorizing Debtors to sell the Properties free and clear of all liens, claims, interests and encumbrances; (b) authorizing Debtors, in their discretion, to (1) pay the Senior Lenders at closing or (2) place into a separate account an amount sufficient to pay the Senior Lenders subject to later direction by order of this Court; and (c) granting such other and further relief as the Court may deem just and equitable.

Dated: August 7, 2009

FREDRIKSON & BYRON, P.A.

/s/ Ryan T. Murphy
James L. Baillie (#3980)
Ryan T. Murphy (#311972)
Kendall L. Bader (#389001)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077
jbaillie@fredlaw.com
rmurphy@fredlaw.com
kbader@fredlaw.com

ATTORNEYS FOR DEBTORS

4592293_1.DOC

## VERIFICATION

I, David J. Huls, am the Chief Financial Officer of Genmar Holdings, Inc. Based upon my personal information and belief, I declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: August 7, 2009

Signed: _____
David J. Huls

4592293_1.DOC

# EXHIBITS

# EXHIBIT A


1. **1. PURCHASE AND SALE:** _____ **Trans United Development Corp and or Assigns** _____ ("Buyer")

2. agrees to buy and _____ **Owner of Record** _____ ("Seller")

3. agrees to sell the property described as: Street Address:
   **1651 Whitfield Ave, Sarasota Fl. 34243**

4.

5. Legal Description:
   **LL**

6.

7. and the following Personal Property:

8.

9. (all collectively referred to as the "Property") on the terms and conditions set forth below. **The "Effective Date" of this Contract is**
10. **the date on which the last of the Parties signs the latest offer. Time is of the essence in this Contract.** Time periods of 5
11. days or less will be computed without including Saturday, Sunday, or national legal holidays and any time period ending on a
12. Saturday, Sunday or national legal holiday will be extended until 5:00 p.m. of the next business day.

13. **2. PURCHASE PRICE:**                                                                            $_____7,620,000.00

14.   (a) Deposit held in escrow by  University Title upon acceptance                                 $_____50,000.00

15.   (b) Additional deposit to be made within ___30___ days from Effective Date                      $_____200,000.00

16.   (c) Total mortgages (as referenced in Paragraph 3)                                              $_____

17.   (d) Other: _____                                                                      $_____

18.   (e) Balance to close, subject to adjustments and prorations, to be made with cash, locally drawn $_____7,370,000.00
19.   certified or cashier's check or wire transfer.

20. **3. THIRD PARTY FINANCING:** Within _____ days from Effective Date ("Application Period"), **Buyer** will, at Buyer's expense, apply for

21. third party financing in the amount of $_____ or _____% of the purchase price to be amortized over a period of _____

22. years and due in no less than _____ years and with a fixed interest rate not to exceed ☐ _____% per year or variable interest rate not

23. to exceed ☐ _____% at origination with a lifetime cap not to exceed _____% from initial rate, with additional terms as follows:

24.

25. **Buyer** will pay for the mortgagee title insurance policy and for all loan expenses. **Buyer** will timely provide any and all credit,

26. employment, financial and other information reasonably required by any lender. **Buyer** will notify **Seller** immediately upon obtaining

27. financing or being rejected by a lender. If **Buyer**, after diligent effort, fails to obtain a written commitment within _____ days from

28. Effective Date ("Financing Period"), **Buyer** may cancel the Contract by giving prompt notice to **Seller** and **Buyer's** deposit(s) will be

29. returned to **Buyer** in accordance with Paragraph 9.

30. **Buyer** (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is page 1 of 5 Pages.

CC-2    © 1997 Florida Association of REALTORS®    All Rights Reserved

4. **TITLE:** Seller has the legal capacity to and will convey marketable title to the Property by ☑ statutory warranty deed ☐ other _____, free of liens, easements and encumbrances of record or known to Seller, but subject to property taxes for the year of closing; covenants, restrictions and public utility easements of record; and (list any other matters to which title will be subject) _____
_____
provided there exists at closing no violation of the foregoing and none of them prevents Buyer's intended use of the Property as
As Presently Zoned _____

(a) **Evidence of Title:** Seller will, at (check one) ☐ Seller's ☑ Buyer's expense and within ____ days ☐ from Effective Date
☑ prior to Closing Date ☐ from date Buyer meets or waives financing contingency in Paragraph 3, deliver to Buyer (check one)
☑ a title insurance commitment by a Florida licensed title insurer and, upon Buyer recording the deed, an owner's policy in
the amount of the purchase price for fee simple title subject only to exceptions stated above.
☐ an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
However, if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed insurer as
a base for reissuance of coverage. The prior policy will include copies of all policy exceptions and an update in a format
acceptable to Buyer from the policy effective date and certified to Buyer or Buyer's closing agent together with copies of all
documents recited in the prior policy and in the update.

(b) **Title Examination:** Buyer will, within 15 days from receipt of the evidence of title deliver written notice to Seller of title
defects. Title will be deemed acceptable to Buyer if (1) Buyer fails to deliver proper notice of defects or (2) Buyer delivers proper
written notice and Seller cures the defects within ____ days from receipt of notice ("Curative Period"). If the defects are
cured within the Curative Period, closing will occur within 10 days from receipt by Buyer of notice of such curing. Seller may
elect not to cure defects if Seller reasonably believes any defect cannot be cured within the Curative Period. If the defects are
not cured within the Curative Period, Buyer will have 10 days from receipt of notice of Seller's inability to cure the defects to
elect whether to terminate this Contract or accept title subject to existing defects and close the transaction without reduction in
purchase price. The party who pays for the evidence of title will also pay related title service fees including title and abstract
charges and title examination.

(c) **Survey:** (check applicable provisions below)
☑ Seller will, within   3   days from Effective Date, deliver to Buyer copies of prior surveys, plans, specifications, and
engineering documents, if any and the following documents relevant to this transaction:_____
_____, prepared for Seller or in Seller's
possession, which show all currently existing structures.
☑ Buyer will, at ☐ Seller's ☑ Buyer's expense and within the time period allowed to deliver and examine title evidence,
obtain a current certified survey of the Property from a registered surveyor. If the survey reveals encroachments on the
Property or that the improvements encroach on the lands of another, ☐ Buyer will accept the Property with existing
encroachments ☑ such encroachments will constitute a title defect to be cured within the Curative Period.

(d) **Ingress and Egress:** Seller warrants that the Property presently has ingress and egress.

(e) **Possession:** Seller will deliver possession and keys for all locks and alarms to Buyer at closing

5. **CLOSING DATE AND PROCEDURE:** This transaction will be closed in                    Manatee                    County, Florida on
or before the _____ or within  60  days from Effective Date ("Closing Date"), unless otherwise extended
herein. ☐ Seller ☑ Buyer will designate the closing agent. Buyer and Seller will, within    30    days from Effective Date, deliver to
Escrow Agent signed instructions which provide for closing procedure. If an institutional lender is providing purchase funds, lender
requirements as to place, time of day, and closing procedures will control over any contrary provisions in this Contract.

(a) **Costs:** Buyer will pay taxes and recording fees on notes, mortgages and financing statements and recording fees for the deed.
Seller will pay taxes on the deed and recording fees for documents needed to cure title defects. If Seller is obligated to discharge
any encumbrance at or prior to closing and fails to do so, Buyer may use purchase proceeds to satisfy the encumbrances.

(b) **Documents:** Seller will provide the deed, bill of sale, mechanic's lien affidavit, assignments of leases, updated rent roll,
tenant and lender estoppel letters, assignments of permits and licenses, corrective instruments and letters notifying tenants of
the change in ownership/rental agent. If any tenant refuses to execute an estoppel letter, Seller will certify that information
regarding the tenant's lease is correct. If Seller is a corporation, Seller will deliver a resolution of its Board of Directors
authorizing the sale and delivery of the deed and certification by the corporate Secretary certifying the resolution and setting forth
facts showing the conveyance conforms with the requirements of local law. Seller will transfer security deposits to Buyer. Buyer
will provide the closing statement, mortgages and notes, security agreements and financing statements.

Buyer (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is page 2 of 5 Pages.

(c) Taxes, Assessments, and Prorations: The following items will be made current and prorated √ as of Closing Date
_ _ as of _ _ _ _ _ _ _ _ : real estate taxes, bond and assessment payments acceptable to Buyer, interest,
rents, association dues, insurance premiums acceptable to Buyer, operational expenses and _ _ _ _ _ _ _ _ _
If the amount of taxes and assessments for the current year cannot be ascertained, rates for the previous year will be used with due
allowance being made for improvements and exemptions. Seller is aware of the following assessments affecting or potentially
affecting the Property:
Buyer will be responsible for all assessments of any kind which become due and owing on or after Effective Date, unless the
improvement is substantially completed as of Closing Date, in which case Seller will be obligated to pay the entire assessment.
(d) FIRPTA Tax Withholding: The Foreign Investment in Real Property Act ("FIRPTA") requires Buyer to withhold at closing a
portion of the purchase proceeds for remission to the Internal Revenue Service ("I.R.S.") if Seller is a "foreign person" as defined
by the Internal Revenue Code. The parties agree to comply with the provisions of FIRPTA and to provide. at or prior to closing.
appropriate documentation to establish any applicable exemption from the withholding requirement. If withholding is required
and Buyer does not have cash sufficient at closing to meet the withholding requirement, Seller will provide the necessary funds
and Buyer will provide proof to Seller that such funds were properly remitted to the I.R.S.

6. ESCROW: Buyer and Seller authorize University Title upon acceptance
Telephone: _(941) 757-2459_  Facsimile: _ (941) 373-6747_  Address: 8141 Lakewood Main St _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ to act as "Escrow Agent"
to receive funds and other items and. subject to clearance. disburse them in accordance with the terms of this Contract. Escrow
Agent will deposit all funds received in √ a non-interest bearing escrow account _ an interest bearing escrow account with
interest accruing to _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ with interest disbursed (check one) √ at closing
_ at _ _ _ _ _ _ _ _ _ _ _ intervals. If Escrow Agent receives conflicting demands or has a good faith doubt as to Escrow
Agent's duties or liabilities under this Contract, he/she may (a) hold the subject matter of the escrow until the parties mutually
agree to its disbursement or until issuance of a court order or decision of arbitrator determining the parties' rights regarding the
escrow or (b) deposit the subject matter of the escrow with the clerk of the circuit court having jurisdiction over the dispute. Upon
notifying the parties of such action. Escrow Agent will be released from all liability except for the duty to account for items
previously delivered out of escrow. If a licensed real estate broker, Escrow Agent will comply with applicable provisions of Chapter
475, Florida Statutes. In any suit or arbitration in which Escrow Agent is made a party because of acting as agent hereunder or
interpleads the subject matter of the escrow, Escrow Agent will recover reasonable attorneys' fees and costs at all levels, with
such fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court or other costs in favor
of the prevailing party. The parties agree that Escrow Agent will not be liable to any person for misdelivery to Buyer or Seller of
escrowed items, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence.

7. PROPERTY CONDITION: Seller will deliver the Property to Buyer at the time agreed in its present "as is" condition. ordinary
wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. Seller makes no warranties
other than marketability of title. By accepting the Property "as is," Buyer waives all claims against Seller for any defects in the
property. (Check (a) or (b))
_ (a) As Is:  Buyer has inspected the Property or waives any right to inspect and accepts the Property in its "as is" condition.
√ (b) Due Diligence Period: Buyer will, at Buyer's expense and within   30   days from Effective Date ("Due Diligence Period"),
determine whether the Property is suitable, in Buyer's sole and absolute discretion, for Buyer's intended use and development of
the Property as specified in Paragraph 4. During the Due Diligence Period, Buyer may conduct any tests, analyses, surveys and
investigations ("Inspections") which Buyer deems necessary to determine to Buyer's satisfaction the Property's engineering,
architectural, environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local, state and regional
growth management and comprehensive land use plans; availability of permits, government approvals and licenses; compliance with
American with Disabilities Act; absence of asbestos. soil and ground water contamination; and other inspections that Buyer deems
appropriate to determine the suitability of the Property for Buyer's intended use and development. Buyer shall deliver written notice
to Seller prior to the expiration of the Due Diligence Period of Buyer's determination of whether or not the Property is acceptable
Buyer's failure to comply with this notice requirement shall constitute acceptance of the Property in its present "as is" condition.
Seller grants to Buyer, its agents. contractors and assigns, the right to enter the Property at any time during the Due Diligence
Period for the purpose of conducting Inspections; provided, however, that Buyer, its agents, contractors and assigns enter the
Property and conduct Inspections at their own risk. Buyer shall indemnify and hold Seller harmless from losses, damages. costs.
claims and expenses of any nature, including attorneys' fees at all levels, and from liability to any person, arising from the conduct of
any and all inspections or any work authorized by Buyer. Buyer will not engage in any activity that could result in a mechanic's lien
being filed against the Property without Seller's prior written consent. In the event this transaction does not close, (1) Buyer shall
repair all damages to the Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of
the Inspections, and (2) Buyer shall, at Buyer's expense, release to Seller all reports and other work generated as a result of the
Inspections. Should Buyer deliver timely notice that the Property is not acceptable, Seller agrees that Buyer's deposit shall be
immediately returned to Buyer and the Contract terminated.

Buyer ( _ _ ) and Seller ( _ _ ) ( _ _ ) acknowledge receipt of a copy of this page, which is page 3 of 5 Pages.

(c) **Walk-through Inspection:** Buyer may, on the day prior to closing or any other time mutually agreeable to the parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and to ensure that all Property is on the premises.

(d) **Disclosures:**

**1. Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**2. Energy Efficiency:** Buyer may have determined the energy efficiency rating of the building, if any is located on the Real Property.

**8. OPERATION OF PROPERTY DURING CONTRACT PERIOD:** Seller will continue to operate the Property and any business conducted on the Property in the manner operated prior to Contract and will take no action that would adversely impact the Property, tenants, lenders or business, if any. Any changes, such as renting vacant space, that materially affect the Property or Buyer's intended use of the Property will be permitted ☑ only with Buyer's consent ☐ without Buyer's consent.

**9. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is not met and Buyer has timely given any required notice regarding the condition having not been met, Buyer's deposit will be returned in accordance with applicable Florida laws and regulations.

**10. DEFAULT:**

(a) In the event the sale is not closed due to any default or failure on the part of Seller other than failure to make the title marketable after diligent effort, Buyer may either (1) receive a refund of Buyer's deposit(s) or (2) seek specific performance. If Buyer elects a deposit refund, Seller will be liable to Broker for the full amount of the brokerage fee.

(b) In the event the sale is not closed due to any default or failure on the part of Buyer, Seller may either (1) retain all deposit(s) paid or agreed to be paid by Buyer as agreed upon liquidated damages, consideration for the execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek specific performance. If Seller retains the deposit, Seller will pay the Listing and Cooperating Brokers named in Paragraph 12 fifty percent of all forfeited deposits retained by Seller (to be split equally among the Brokers) up to the full amount of the brokerage fee.

**11. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the prevailing party, which for purposes of this provision will include Buyer, Seller and Broker, will be awarded reasonable attorneys' fees, costs and expenses.

**12. BROKERS:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker other than:

(a) Listing Broker: Robert Kolion
who is ☑ an agent of Michael Saunders _____ ☐ a transaction broker ☐ a nonrepresentative and who will be compensated by ☑ Seller ☐ Buyer ☐ both parties pursuant to ☑ a listing agreement ☐ other (specify)
_____
_____
_____

(b) Cooperating Broker: Thomas Dell
who is ☐ an agent of B & T Realty Group Inc _____ ☐ a transaction broker ☐ a nonrepresentative and who will be compensated by ☐ Buyer ☑ Seller ☐ both parties pursuant to ☑ an MLS or other offer of compensation to a cooperating broker ☐ other (specify)
   1.75%
_____
_____

(collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to inquiries, introductions, consultations and negotiations resulting in this transaction. Seller and Buyer agree to indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to Paragraph 10, (3) any duty accepted by Broker at the request of Buyer or Seller, which duty is beyond the scope of services regulated by Chapter 475, F.S., as amended, or (4) recommendations of or services provided and expenses incurred by any third party whom Broker refers, recommends or retains for or on behalf of Buyer or Seller.

**13. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☐ is assignable. The terms "Buyer," "Seller" and "Broker" may be singular or plural. This Contract is binding upon Buyer, Seller and their heirs, personal representatives, successors and assigns (if assignment is permitted).

Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is page 4 of 5 Pages.

**14. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to this Contract):

☐ Arbitration        ☐ Seller Warranty        ☐ Existing Mortgage
☐ Section 1031 Exchange    ☐ Coastal Construction Control Line    ☐ Other _____
☐ Property Inspection and Repair    ☐ Flood Area Hazard Zone    ☐ Other _____
☐ Seller Representations      ☐ Seller Financing       ☒ Other *Bankruptcy Approval*

**15. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between Buyer and Seller. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records. Delivery of any written notice to any party's agent will be deemed delivery to that party.

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER SPECIALIZED ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.

**DEPOSIT RECEIPT:** Deposit of $ _____ by ☐ _____ check ☐ other _____ received on _____

_____ by _____

*Signature of Escrow Agent*

**OFFER:** Buyer offers to purchase the Property on the above terms and conditions. Unless acceptance is signed by Seller and a signed copy delivered to Buyer or Buyer's agent no later than _5:00_ ☐a.m ☒p.m. on _July 20 2009_ Buyer may revoke this offer and receive a refund of all deposits.

Date: _7/8/09_ BUYER: _____ Tax ID No: _____

Title: _President_ Telephone: _____ Facsimile: _____
Address: _____

Date: _____ BUYER: _____ Tax ID No: _____

Title: _____ Telephone: _____ Facsimile: _____
Address: _____

**ACCEPTANCE:** Seller accepts Buyer's offer and agrees to sell the Property on the above terms and conditions (☐ subject to the attached counter offer).

Date: _7/20/09_ SELLER: _____ Tax ID No: _22-2612772_

Title: _VP_ Telephone: _612 339-7600_ Facsimile: _612 337-1930_
Address: _2900 IDS Center, 80 S. 8th St, Mpls, MN 55402_

Date: _____ SELLER: _____ Tax ID No: _____

Title: _____ Telephone: _____ Facsimile: _____
Address: _____

Buyer( _____ ) and Seller ( _____ )( ___ ) acknowledge receipt of a copy of this page, which is page 5 of 5 Pages.

The Florida Association of Realtors makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

CC-2      © 1997 Florida Association of REALTORS®          All Rights Reserved

# FIRST ADDENDUM

This addendum is hereby made a part of the Purchase and Sale Agreement by and between TRANS UNITED DEVELOPMENT CORP, **(Buyer)** and GENMAR INDUSTRIES, INC. **(Seller)**, pertaining to the property known as 1651 WHITFIELD AVENUE, Manatee County, Florida

**BANKRUPTCY COURT APPROVAL:** It is understood by the Buyer that this agreement is subject to the approval from the United States Bankruptcy Court, District of Minnesota and such approval will be diligently pursued as time is of the essence. *All dates which are referred to in this Contract will start to toll 24 hrs. After approval of bankruptcy court and notification.*

Buyer: TRANS UNITED DEVELOPMENT CORP

By: _____

President

Date: July 21st ,2009

Seller: GENMAR INDUSTRIES, INC.

By: _____

Date: 7.20 ,2009

# EXHIBIT B

**Commercial Contract**
FLORIDA ASSOCIATION OF REALTORS®

1. PURCHASE AND SALE:     Trans United Development Corp and or Assigns             ("Buyer")

agrees to buy and           Owner of Record                ("Seller")

agrees to sell the property described as: Street Address:
7150 15th St E  Sarasota, Fl 34243

Legal Description:
LL

and the following Personal Property:

(all collectively referred to as the "Property") on the terms and conditions set forth below. The "Effective Date" of this Contract is the date on which the last of the Parties signs the latest offer. Time is of the essence in this Contract. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal holidays and any time period ending on a Saturday, Sunday or national legal holiday will be extended until 5:00 p.m. of the next business day.

2. PURCHASE PRICE:                                 $       3,138,615.00

    (a) Deposit held in escrow by University Title upon acceptance     $     50,000.00

    (b) Additional deposit to be made within ___30___ days from Effective Date     $     100,000.00

    (c) Total new mortgages (as referenced in Paragraph 3)     $ _____

    (d) Other:     $ _____

    (e) Balance to close, subject to adjustments and prorations, to be made with cash, locally drawn     $     2,988,615.00
    certified or cashier's check or wire transfer.

3. THIRD PARTY FINANCING: Within ___ days from Effective Date ("Application Period"), Buyer will, at Buyer's expense, apply for

third party financing in the amount of $ _____ or ___ % of the purchase price to be amortized over a period of

___ years and due in no less than _____ years and with a fixed interest rate not to exceed ___ _____% per year or variable interest rate not

to exceed ___ % at origination with a lifetime cap not to exceed _____% from initial rate, with additional terms as follows:

Buyer will pay for the mortgagee title insurance policy and for all loan expenses. Buyer will timely provide any and all credit,

employment, financial and other information reasonably required by any lender. Buyer will notify Seller immediately upon obtaining

financing or being rejected by a lender. If Buyer, after diligent effort, fails to obtain a written commitment within _____ ___ days from

Effective Date ("Financing Period"), Buyer may cancel the Contract by giving prompt notice to Seller and Buyer's deposit(s) will be

returned to Buyer in accordance with Paragraph 9.

Buyer (_____) and Seller (____) (_____) acknowledge receipt of a copy of this page, which is page 1 of 5 Pages

CC-2     West Florida Association of Realtors®     All Rights Reserved

4. **TITLE:** Seller has the legal capacity to and will convey marketable title to the Property by ☑ statutory warranty deed ☐ other _____, free of liens, easements and encumbrances of record or known to Seller, but subject to property taxes for the year of closing; covenants, restrictions and public utility easements of record; and (list any other matters to which title will be subject) _____

_____;

provided there exists at closing no violation of the foregoing and none of them prevents Buyer's intended use of the Property as **As Presently Zoned** _____

(a) **Evidence of Title:** Seller will, at (check one) ☐ Seller's ☑ Buyer's expense and within _____ days ☐ from Effective Date ☑ prior to Closing Date ☐ from date Buyer meets or waives financing contingency in Paragraph 3, deliver to Buyer (check one) ☑ a title insurance commitment by a Florida licensed title insurer and, upon Buyer recording the deed, an owner's policy in the amount of the purchase price for fee simple title subject only to exceptions stated above. ☐ an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm. However, if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed insurer as a base for reissuance of coverage. The prior policy will include copies of all policy exceptions and an update in a format acceptable to Buyer from the policy effective date and certified to Buyer or Buyer's closing agent together with copies of all documents recited in the prior policy and in the update.

(b) **Title Examination:** Buyer will, within 15 days from receipt of the evidence of title deliver written notice to Seller of title defects. Title will be deemed acceptable to Buyer if (1) Buyer fails to deliver proper notice of defects or (2) Buyer delivers proper written notice and Seller cures the defects within _____ days from receipt of the notice ("Curative Period"). If the defects are cured within the Curative Period, closing will occur within 10 days from receipt by Buyer of notice of such curing. Seller may elect not to cure defects if Seller reasonably believes any defect cannot be cured in the Curative Period. If the defects are not cured within the Curative Period, Buyer will have 10 days from receipt of notice of Seller's inability to cure the defects to elect whether to terminate this Contract or accept title subject to existing defects and close the transaction without reduction in purchase price. The party who pays for the evidence of title will also pay related title service fees including title and abstract charges and title examination.

(c) **Survey:** (check applicable provisions below)
☑ Seller will, within __3__ days from Effective Date, deliver to Buyer copies of prior surveys, plans, specifications, and engineering documents, if any, and the following documents relevant to this transaction:_____
_____, prepared for Seller or in Seller's possession, which show all currently existing structures.
☑ Buyer will, at ☐ Seller's ☑ Buyer's expense and within the time period allowed to deliver and examine title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals encroachments on the Property or that the improvements encroach on the lands of another, ☐ Buyer will accept the Property with existing encroachments ☑ such encroachments will constitute a title defect to be cured within the Curative Period.

(d) **Ingress and Egress:** Seller warrants that the Property presently has ingress and egress.

(e) **Possession:** Seller will deliver possession and keys for all locks and alarms to Buyer at closing.

5. **CLOSING DATE AND PROCEDURE:** This transaction will be closed in ____Manatee____ County, Florida on or before the _____, _____, or within _60_ days from Effective Date ("Closing Date"), unless otherwise extended herein ☐ Seller ☑ Buyer will designate the closing agent. Buyer and Seller will, within __30__ days from Effective Date, deliver to Escrow Agent signed instructions which provide for closing procedure. If an institutional lender is providing purchase funds, lender requirements as to place, time of day, and closing procedures will control over any contrary provisions in this Contract.

(a) **Costs:** Buyer will pay taxes and recording fees on notes, mortgages and financing statements and recording fees for the deed. Seller will pay taxes on the deed and recording fees for documents needed to cure title defects. If Seller is obligated to discharge any encumbrance at or prior to closing and fails to do so, Buyer may use purchase proceeds to satisfy the encumbrances.

(b) **Documents:** Seller will provide the deed, bill of sale, mechanic's lien affidavit, assignments of leases, updated rent roll, tenant and lender estoppel letters, assignments of permits and licenses, corrective instruments and letters notifying tenants of the change in ownership/rental agent. If any tenant refuses to execute an estoppel letter, Seller will certify that information regarding the tenant's lease is correct. If Seller is a corporation, Seller will deliver a resolution of its Board of Directors authorizing the sale and delivery of the deed and certification by the corporate Secretary certifying the resolution and setting forth facts showing the conveyance conforms with the requirements of local law. Seller will transfer security deposits to Buyer. Buyer will provide the closing statement, mortgages and notes, security agreements and financing statements.

Buyer (_____)(_____) and Seller (_____)(_____) acknowledge receipt of a copy of this page, which is page 2 of 5 Pages.

(c) **Taxes, Assessments, and Prorations:** The following items will be made current and prorated ☒ as of Closing Date ☐ as of _____: real estate taxes, bond and assessment payments assumed by **Buyer**, interest, rents, association dues, insurance premiums acceptable to **Buyer**, operational expenses and _____ If the amount of taxes and assessments for the current year cannot be ascertained, rates for the previous year will be used with due allowance being made for improvements and exemptions. Seller is aware of the following assessments affecting or potentially affecting the Property:

**Buyer** will be responsible for all assessments of any kind which become due and owing on or after Effective Date, unless the improvement is substantially completed as of Closing Date, in which case **Seller** will be obligated to pay the entire assessment.

(d) **FIRPTA Tax Withholding:** The Foreign Investment in Real Property Act ("FIRPTA") requires **Buyer** to withhold at closing a portion of the purchase proceeds for remission to the Internal Revenue Service ("I.R.S.") if **Seller** is a "foreign person" as defined by the Internal Revenue Code. The parties agree to comply with the provisions of FIRPTA and to provide, at or prior to closing, appropriate documentation to establish any applicable exemption from the withholding requirement. If withholding is required and **Buyer** does not have cash sufficient at closing to meet the withholding requirement, **Seller** will provide the necessary funds and **Buyer** will provide proof to **Seller** that such funds were properly remitted to the I.R.S.

**6. ESCROW: Buyer** and **Seller** authorize **University Title** upon acceptance
Telephone:  **(941) 757-2459**  Facsimile:  **(941) 373-6747**  Address: **8141 Lakewood Main St**
_____ to act as "Escrow Agent"
to receive funds and other items and, subject to clearance, disburse them in accordance with the terms of this Contract. Escrow Agent will deposit all funds received in ☒ a non-interest bearing escrow account ☐ an interest bearing escrow account with interest accruing to _____ with interest disbursed (check one) ☐ at closing ☐ at _____ intervals. If Escrow Agent receives conflicting demands or has a good faith doubt as to Escrow Agent's duties or liabilities under this Contract, he/she may (a) hold the subject matter of the escrow until the parties mutually agree to its disbursement or until issuance of a court order or decision of arbitrator determining the parties' rights regarding the escrow or (b) deposit the subject matter of the escrow with the clerk of the circuit court having jurisdiction over the dispute. Upon notifying the parties of such action, Escrow Agent will be released from all liability except for the duty to account for items previously delivered out of escrow. If a licensed real estate broker, Escrow Agent will comply with applicable provisions of Chapter 475, Florida Statutes. In any suit or arbitration in which Escrow Agent is made a party because of acting as agent hereunder or interpleads the subject matter of the escrow, Escrow Agent will recover reasonable attorneys' fees and costs at all levels, with such fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court or other costs in favor of the prevailing party. The parties agree that Escrow Agent will not be liable to any person for misdelivery to **Buyer** or **Seller** of escrowed items, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence.

**7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition, ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller** makes no warranties other than marketability of title. By accepting the Property "as is," **Buyer** waives all claims against **Seller** for any defects in the property. (Check (a) or (b))

☐ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is" condition.

☒ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within __30__ days from Effective Date ("Due Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion, for **Buyer's** intended use and development of the Property as specified in Paragraph 4. During the Due Diligence Period, **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural, environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local, state and regional growth management and comprehensive land use plans; availability of permits, government approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground water contamination; and other inspections that **Buyer** deems appropriate to determine the suitability of the Property for **Buyer's** intended use and development. **Buyer** shall deliver written notice to Seller prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property is acceptable. **Buyer's** failure to comply with this notice requirement shall constitute acceptance of the Property in its present "as is" condition Seller grants to Buyer, its agents, contractors and assigns, the right to enter the Property at any time during the Due Diligence Period for the purpose of conducting Inspections; provided, however, that Buyer, its agents, contractors and assigns enter the Property and conduct Inspections at their own risk. Buyer shall indemnify and hold Seller harmless from losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from liability to any person, arising from the conduct of any and all inspections or any work authorized by Buyer. Buyer will not engage in any activity that could result in a mechanic's lien being filed against the Property without Seller's prior written consent. In the event this transaction does not close, (1) Buyer shall repair all damages to the Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the Inspections, and (2) Buyer shall, at Buyer's expense, release to Seller all reports and other work generated as a result of the Inspections. Should Buyer deliver timely notice that the Property is not acceptable, Seller agrees that Buyer's deposit shall be immediately returned to Buyer and the Contract terminated.

Buyer (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is page 3 of 5 Pages.

(c) **Walk-through Inspection:** Buyer may, on the day prior to closing or any other time mutually agreeable to the parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and to ensure that all Property is on the premises.

(d) **Disclosures:**

  1. **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

  2. **Energy Efficiency:** Buyer may have determined the energy efficiency rating of the building, if any is located on the Real Property.

**8. OPERATION OF PROPERTY DURING CONTRACT PERIOD:** Seller will continue to operate the Property and any business conducted on the Property in the manner operated prior to Contract and will take no action that would adversely impact the Property, tenants, lenders or business, if any. Any changes, such as renting vacant space, that materially affect the Property or Buyer's intended use of the Property will be permitted ☐ only with Buyer's consent ☐ without Buyer's consent.

**9. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is not met and Buyer has timely given any required notice regarding the condition having not been met, Buyer's deposit will be returned in accordance with applicable Florida laws and regulations.

**10. DEFAULT:**

(a) In the event the sale is not closed due to any default or failure on the part of Seller other than failure to make the title marketable after diligent effort, Buyer may either (1) receive a refund of Buyer's deposit(s) or (2) seek specific performance. If Buyer elects a deposit refund, Seller will be liable to Broker for the full amount of the brokerage fee.

(b) In the event the sale is not closed due to any default or failure on the part of Buyer, Seller may either (1) retain all deposit(s) paid or agreed to be paid by Buyer as agreed upon liquidated damages, consideration for the execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek specific performance. If Seller retains the deposit, Seller will pay the Listing and Cooperating Brokers named in Paragraph 12 fifty percent of all forfeited deposits retained by Seller (to be split equally among the Brokers) up to the full amount of the brokerage fee.

**11. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the prevailing party, which for purposes of this provision will include Buyer, Seller and Broker, will be awarded reasonable attorneys' fees, costs and expenses.

**12. BROKERS:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

(a) Listing Broker: Robert Kolton
who is ☑ an agent of Michael Saunders _____ ☐ a transaction broker ☐ a nonrepresentative and who will be compensated by ☑ Seller ☐ Buyer ☐ both parties pursuant to ☑ a listing agreement ☐ other (specify)
_____
_____
_____

(b) Cooperating Broker: Thomas Dall
who is ☑ an agent of B & T Realty Group Inc _____ ☐ a transaction broker ☐ a nonrepresentative and who will be compensated by ☐ Buyer ☑ Seller ☐ both parties pursuant to ☑ an MLS or other offer of compensation to a cooperating broker ☐ other (specify)
1.75%
_____
_____

(collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to inquiries, introductions, consultations and negotiations resulting in this transaction. Seller and Buyer agree to indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to Paragraph 10, (3) any duty accepted by Broker at the request of Buyer or Seller, which duty is beyond the scope of services regulated by Chapter 475, F.S., as amended, or (4) recommendations of or services provided and expenses incurred by any third party whom Broker refers, recommends or retains for or on behalf of Buyer or Seller.

**13. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☑ is assignable. The terms "Buyer," "Seller" and "Broker" may be singular or plural. This Contract is binding upon Buyer, Seller and their heirs, personal representatives, successors and assigns (if assignment is permitted).

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is page 4 of 5 Pages.

**14. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to this Contract):
- ☐ Arbitration
- ☐ Section 1031 Exchange
- ☐ Property Inspection and Repair
- ☐ Seller Representations
- ☐ Seller Warranty
- ☐ Coastal Construction Control Line
- ☐ Flood Area Hazard Zone
- ☐ Seller Financing
- ☐ Existing Mortgage
- ☐ Other _____
- ☐ Other _____
- ☒ Other _Bankruptcy Approval_

**15. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between Buyer and Seller. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records. Delivery of any written notice to any party's agent will be deemed delivery to that party.

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER SPECIALIZED ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.

**DEPOSIT RECEIPT:** Deposit of $_____ by ☐ _____ check ☐ other _____ received on

_____ . _____ by _____

*Signature of Escrow Agent*

**OFFER:** Buyer offers to purchase the Property on the above terms and conditions. Unless acceptance is signed by Seller and a signed copy delivered to Buyer or Buyer's agent no later than _J.00_ ☐ a.m. ☒ p.m. on _July 20th, 2009_ Buyer may revoke this offer and receive a refund of all deposits.

Date: _7/8/09_   BUYER: _____   Tax ID No: _____

Title: _President_   Telephone: _____   Facsimile: _____
Address: _____

Date: _____   BUYER: _____   Tax ID No: _____

Title: _____   Telephone: _____   Facsimile: _____
Address: _____

**ACCEPTANCE:** Seller accepts Buyer's offer and agrees to sell the Property on the above terms and conditions (☐ subject to the attached counter offer).

Date: _7/20/09_   SELLER: _____   Tax ID No: _22-2612772_

Title: _VP_   Telephone: _612 339-7600_   Facsimile: _612 337-1930_
Address: _3960 IDS Center, 80 S. 8th St, Mpls, MN 55402_

Date: _____   SELLER: _____   Tax ID No: _____

Title: _____   Telephone: _____   Facsimile: _____
Address: _____

Buyer (_CM_) (____) and Seller (_VP_) (____) acknowledge receipt of a copy of this page, which is page 5 of 5 Pages.

The Florida Association of Realtors makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a Realtor. Realtor is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.
CC-2    © 1997 Florida Association of REALTORS®      All Rights Reserved

# FIRST ADDENDUM

This addendum is hereby made a part of the Purchase and Sale Agreement by and between TRANS UNITED DEVELOPMENT CORP, **(Buyer)** and GENMAR INDUSTRIES, INC. **(Seller)**, pertaining to the property known as 7150 15TH. STREET EAST, Manatee County, Florida

**BANKRUPTCY COURT APPROVAL:** It is understood by the Buyer that this agreement is subject to the approval from the United States Bankruptcy Court, District of Minnesota and such approval will be diligently pursued as time is of the essence. *All dates which are referred to in this contract will start to toll 24 hrs after Approval of Bankruptcy Court and notification.*

Buyer: TRANS UNITED DEVELOPMENT CORP

By: _____ President

Date: July 21 st ,2009

Seller: GENMAR INDUSTRIES, INC.

By: _____

Date: 7·20 ,2009

# EXHIBIT C

**Commercial Contract**
FLORIDA ASSOCIATION OF REALTORS®

**Michael Saunders & Company**
Licensed Real Estate Broker

1° **1. PURCHASE AND SALE:** _____ NEXORN CONCRETE, INC. _____ ("Buyer")

2° agrees to buy and _____ GENMAR INDUSTRIES, INC. _____ ("Seller")

3° agrees to sell the Property described as: Street Address: __1715 67th Avenue East__

4° _____ Sarasota _____

5° Legal Description: __BEG AT THE SE COR OF THE S1/2 OF NW1/4 OF SW1/4 OF SEC 19, & THENCE W 445FT;N126.5FT__

6° __W 15FT, N 126.5FT, E 460FT, S 253 FT TO THE POB; LESS RAILWAY R/W.. LONG LEGAL PID# 18546.0000/0__

7° and the following Personal Property: _____

8° _____

9° (all collectively referred to as the "Property") on the terms and conditions set forth below. The "Effective Date" of this Contract is
10° the date on which the last of the Parties signs the latest offer. Time is of the essence in this Contract. Time periods of 5
11° days or less will be computed without including Saturday, Sunday, or national legal holidays and any time period ending on a
12° Saturday, Sunday or national legal holiday will be extended until 5:00 p.m. of the next business day.

13° **2. PURCHASE PRICE:**  $ ~~250,000.00~~  $210,000.00  250,000.00

14° (a) Deposit held in escrow by _____ Michael Saunders & Company _____  $ 1,000.00

15° (b) Additional deposit to be made within __2__ days from Effective Date  $ 9,000.00

16° (c) Total mortgages (as referenced in Paragraph 3)  $ _____

17° (d) Other:  $ _____

18° (e) Balance to close, subject to adjustments and prorations, to be made with cash, locally drawn,  $ ~~200,000.00~~  240,000.00  $200,00 CC
19° certified or cashier's check or wire transfer.

20° **3. THIRD PARTY FINANCING:** Within _____ days from Effective Date ("Application Period"), Buyer will, at Buyer's expense, apply for
21° third party financing in the amount of $ _____ or _____ % of the purchase price to be amortized over a period of _____
22° years and due in no less than _____ years and with a fixed interest rate not to exceed ☐ _____ % per year or variable interest rate not
23° to exceed ☐ _____ % at origination with a lifetime cap not to exceed _____ % from initial rate, with additional terms as follows: _____
24° _____

25° Buyer will pay for the mortgagee title insurance policy and for all loan expenses. Buyer will timely provide any and all credit,
26° employment, financial and other information reasonably required by any lender. Buyer will notify Seller immediately upon obtaining
27° financing or being rejected by a lender. If Buyer, after diligent effort, fails to obtain a written commitment within _____ days from
28° Effective Date ("Financing Period"), Buyer may cancel the Contract by giving prompt notice to Seller and Buyer's deposit(s) will be
29° returned to Buyer in accordance with Paragraph 9.

30° Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is page 1 of 5 Pages.

CC-2  ©1997 Florida Association of REALTORS®  All Rights Reserved

*Instanet forms*

This software is licensed to [Ingrid Blokzijl - Commercial Group] www.transactiondesk.com.

31* **4. TITLE:** Seller has the legal capacity to and will convey marketable title to the Property by ☒ statutory warranty deed
32* ☐ other _____ , free of liens, easements and encumbrances of record or known to Seller,
33 but subject to property taxes for the year of closing; covenants, restrictions and public utility easements of record; and (list any
34* other matters to which title will be subject) _____
35* _____
36 provided there exists at closing no violation of the foregoing and none of them prevents Buyer's intended use of the Property as
37* _____

38* (a) **Evidence of Title:** Seller will, at (check one) ☒ Seller's ☐ Buyer's expense and within __15__ days ☒ from Effective Date
39* ☐ prior to Closing Date ☐ from date Buyer meets or waives financing contingency in Paragraph 3, deliver to Buyer (check one)
40* ☒ a title insurance commitment by a Florida licensed title insurer and, upon Buyer recording the deed, an owner's policy in
41 the amount of the purchase price for fee simple title subject only to exceptions stated above.
42* ☐ an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
43 However, if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed insurer as
44 a base for reissuance of coverage. The prior policy will include copies of all policy exceptions and an update in a format
45 acceptable to Buyer from the policy effective date and certified to Buyer or Buyer's closing agent together with copies of all
46 documents recited in the prior policy and in the update.

47 (b) **Title Examination:** Buyer will, within 15 days from receipt of the evidence of title deliver written notice to Seller of title
48 defects. Title will be deemed acceptable to Buyer if (1) Buyer fails to deliver proper notice of defects or (2) Buyer delivers proper
49* written notice and Seller cures the defects within ____10____ days from receipt of the notice ("Curative Period"). If the defects are
50 cured within the Curative Period, closing will occur within 10 days from receipt by Buyer of notice of such curing. Seller may
51 elect not to cure defects if Seller reasonably believes any defect cannot be cured within the Curative Period. If the defects are
52 not cured within the Curative Period, Buyer will have 10 days from receipt of notice of Seller's inability to cure the defects to
53 elect whether to terminate this Contract or accept title subject to existing defects and close the transaction without reduction in
54 purchase price. The party who pays for the evidence of title will also pay related title service fees including title and abstract
55 charges and title examination.

56 (c) **Survey:** (check applicable provisions below)
57* ☒ Seller will, within ____10____ days from Effective Date, deliver to Buyer copies of prior surveys, plans, specifications, and
58* engineering documents, if any, and the following documents relevant to this transaction: any environmental due diligence
59* studies performed on property. _____ , prepared for Seller or in Seller's
60 possession, which show all currently existing structures.
61* ☒ Buyer will, at ☐ Seller's ☒ Buyer's expense and within the time period allowed to deliver and examine title evidence,
62 obtain a current certified survey of the Property from a registered surveyor. If the survey reveals encroachments on the
63* Property or that the improvements encroach on the lands of another, ☐ Buyer will accept the Property with existing
64* encroachments ☐ such encroachments will constitute a title defect to be cured within the Curative Period.

65 (d) **Ingress or Egress:** Seller warrants that the Property presently has ingress and egress.

66 (e) **Possession:** Seller will deliver possession and keys for all locks and alarms to Buyer at closing.

67* **5. CLOSING DATE AND PROCEDURE:** This transaction will be closed in _____ Sarasota _____ County, Florida on
68* or before the _____ , _____ or within __60__ days from Effective Date ("Closing Date"), unless otherwise extended
69* herein. ☐ Seller ☒ Buyer will designate the closing agent. Buyer and Seller will, within __30__ days from Effective Date, deliver to
70 Escrow Agent signed instructions which provide for closing procedure. If an institutional lender is providing purchase funds, lender
71 requirements as to place, time of day, and closing procedures will control over any contrary provisions of this Contract.

72 (a) **Costs:** Buyer will pay taxes and recording fees on notes, mortgages and financing statements and recording fees for the deed.
73 Seller will pay taxes on the deed and recording fees for documents needed to cure title defects. If Seller is obligated to discharge
74 any encumbrance at or prior to closing and fails to do so, Buyer may use purchase proceeds to satisfy the encumbrances.

75 (b) **Documents:** Seller will provide the deed, bill of sale, mechanic's lien affidavit, assignment of leases, updated rent roll,
76 tenant and lender estoppel letters, assignments of permits and licenses, corrective instruments and letters notifying tenants of
77 the change in ownership/rental agent. If any tenant refuses to execute an estoppel letter, Seller will certify that information
78 regarding the tenant's lease is correct. If Seller is a corporation, Seller will deliver a resolution of its Board of Directors
79 authorizing the sale and delivery of the deed and certification by the corporate Secretary certifying the resolution and setting forth
80 facts showing the conveyance conforms with the requirements of local law. Seller will transfer security deposits to Buyer. Buyer
81 will provide the closing statement, mortgages and notes, security agreements and financing statements.

82* Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is page 2 of 5 Pages.

CC-2 © 1997 Florida Association of REALTORS® All Rights Reserved

*Instanet Forms* Commercial

This software is licensed to [Ingrid Blokzijl - Commercial Group] www.transactiondesk.com.

141 (c) **Walk-through Inspection:** Buyer may, on the day prior to closing or any other time mutually agreeable to the parties,
142 conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and to ensure that all
143 Property is on the premises.
144 (d) **Disclosures:**
145     1. **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient
146 quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state
147 guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained
148 from your county public health unit.
149     2. **Energy Efficiency:** Buyer may have determined the energy efficiency rating of the building, if any, is located on the Real
150 Property.

151 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD:** Seller will continue to operate the Property and any business
152 conducted on the Property in the manner operated prior to Contract and will take no action that would adversely impact the
153 Property, tenants, lenders or business, if any. Any changes, such as renting vacant space, that materially affect the Property or
154* Buyer's intended use of the Property will be permitted ☐ only with Buyer's consent ☐ without Buyer's consent.

155 **9. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is not met and
156 Buyer has timely given any required notice regarding the condition having not been met, Buyer's deposit will be returned in
157 accordance with applicable Florida laws and regulations.

158 **10. DEFAULT:**
159     (a) In the event the sale is not closed due to any default or failure on the part of Seller other than failure to make the title
160 marketable after diligent effort, Buyer may either (1) receive a refund of Buyer's deposit(s) or (2) seek specific performance. If
161 Buyer elects a deposit refund, Seller will be liable to Broker for the full amount of the brokerage fee.
162     (b) In the event the sale is not closed due to any default or failure on the part of Buyer, Seller may either (1) retain all deposit(s)
163 paid or agreed to be paid by Buyer as agreed upon liquidated damages, consideration for the execution of this Contract, and in
164 full settlement of any claims, upon which this Contract will terminate or (2) seek specific performance. If Seller retains the
165 deposit, Seller will pay the Listing and Cooperating Brokers named in Paragraph 12 fifty percent of all forfeited deposits retained
166 by Seller (to be split equally among the Brokers) up to the full amount of the brokerage fee.

167 **11. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the prevailing party,
168 which for purposes of this provision will include Buyer, Seller and Broker, will be awarded reasonable attorneys' fees, cost and
169 expenses.

170 **12. BROKERS:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed
171 real estate Broker other than:
172* (a) Listing Broker: _____ Robert Kolton & Roberta Kolton _____
173* who is ☐ an agent of _____ Michael Saunders & Company _____ ☒ a transaction broker ☐ a nonrepresentative
174* and who will be compensated by ☒ Seller ☐ Buyer ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____
175* _____
176* _____
177* _____
178* (b) Cooperating Broker: _____ Tom Farr & Ingrid Blokzijl _____
179* who is ☒ an agent of _____ Michael Saunders & Company _____ ☐ a transaction broker ☐ a nonrepresentative
180* and who will be compensated by ☐ Buyer ☒ Seller ☐ both parties pursuant to ☐ an MLS or other offer of compensation to a
181* cooperating broker ☐ other (specify) _____
182* _____
183* _____
184* _____

185 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to inquiries,
186 introductions, consultations and negotiations resulting in this transaction. Seller and Buyer agree to indemnify and hold Broker
187 harmless from and against losses, damages, costs and expenses of any kind, including reasonable attorneys' fees at all levels, and
188 from liability to any person, arising from (1) compensation claimed which is inconsistent with the representation in this Paragraph, (2)
189 enforcement action to collect a brokerage fee pursuant to Paragraph 10, (3) any duty accepted by Broker at the request of Buyer or
190 Seller, which duty is beyond the scope of services regulated by Chapter 475, F.S., as amended, or (4) recommendations of or services
191 provided and expenses incurred by any third party whom Broker refers, recommends or retains for or on behalf of Buyer or Seller.

192* **13. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable
193* ☐ is assignable. The terms "Buyer," "Seller" and "Broker" may be singular or plural. This Contract is binding upon Buyer, Seller
194 and their heirs, personal representatives, successors and assigns (if assignment is permitted).

195* Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is page 4 of 5 Pages.

CC-2 ©1997 Florida Association of REALTORS®  All Rights Reserved

**Instanet forms**  Commercial

This software is licensed to [Ingrid Blokzijl - Commercial Group] www.transactiondesk.com.

83\* **(c) Taxes, Assessments, Prorations:** The following items will be made current and prorated ☒ as of Closing Date
84\* ☐ as of _____ : real estate taxes, bond and assessment payments assumed by Buyer, interest,
85\* rents, association dues, insurance premiums acceptable to Buyer, operational expenses and _____
86 If the amount of taxes and assessments for the current year cannot be ascertained, rates for the previous year will be used with due
87 allowance being made for improvements and exemptions. Seller is aware of the following assessments affecting or potentially
88\* affecting the Property:
89 Buyer will be responsible for all assessments of any kind which become due and owing on or after Effective Date, unless the
90 improvement is substantially completed as of Closing Date, in which case Seller will be obligated to pay the entire assessment.
91 **(d) FIRPTA Tax Withholding:** The Foreign Investment in Real Property Act ("FIRPTA") requires Buyer to withhold at closing a
92 portion of the purchase proceeds for remission to the Internal Revenue Service ("I.R.S.") if Seller is a "foreign person" as defined
93 by the Internal Revenue Code. The parties agree to comply with the provisions of FIRPTA and to provide, at or prior to closing,
94 appropriate documentation to establish any applicable exemption from the withholding requirement. If withholding is required
95 and Buyer does not have cash sufficient at closing to meet the withholding requirement, Seller will provide the necessary funds
96 and Buyer will provide proof to Seller that such funds were properly remitted to the I.R.S.

97\* **6. ESCROW:** Buyer and Seller authorize _____ Michael Saunders & Company
98\* Telephone: 941-957-3730 Facsimile: 941-954-3830 Address: 32 No. Osprey Ave
99\* _____ Sarasota, FL 34236 _____ to act as "Escrow Agent"
100 to receive funds and other items and, subject to clearance, disburse them in accordance with the terms of this Contract. Escrow
101\* Agent will deposit all funds received in ☒ a non-interest bearing escrow account ☐ an interest bearing escrow account with
102\* interest accruing to _____ with interest disbursed (check one) ☐ at closing
103\* ☐ at _____ intervals. If Escrow Agent receives conflicting demands or has a good faith doubt as to Escrow
104 Agent's duties or liabilities under this Contract, he/she may (a) hold the subject matter of the escrow until the parties mutually
105 agree to its disbursement or until issuance of a court order or decision of arbitrator determining the parties' rights regarding the
106 escrow or (b) deposit the subject matter of the escrow with the clerk of the circuit court having jurisdiction over the dispute. Upon
107 notifying the parties of such action, Escrow Agent will be released from all liability except for the duty to account for items
108 previously delivered out of escrow. If a licensed real estate broker, Escrow Agent will comply with applicable provisions of Chapter
109 475, Florida Statutes. In any suit or arbitration in which Escrow Agent is made a party because of acting as agent hereunder or
110 interpleads the subject matter of the escrow, Escrow Agent will recover reasonable attorneys' fees and costs at all levels, with
111 such fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court or other costs in favor
112 of the prevailing party. The parties agree that Escrow Agent will not be liable to any person for misdelivery to Buyer or Seller of
113 escrowed items, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence.

114 **7. PROPERTY CONDITION:** Seller will deliver the Property to Buyer at the time agreed in its present "as is" condition, ordinary
115 wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. Seller makes no warranties
116 other than marketability of title. By accepting the Property "as is", Buyer waives all claims against Seller for any defects in the
117 Property. (Check (a) or (b))
118\* ☐ **(a) As Is:** Buyer has inspected the Property or waives any right to inspect and accepts the Property in its "as is" condition.
119\* ☒ **(b) Due Diligence Period:** Buyer will, at Buyer's expense and within __ 45 __ days from Effective Date ("Due Diligence Period"),
120 determine whether the Property is suitable, in Buyer's sole and absolute discretion, for Buyer's intended use and development of
121 the Property as specified in Paragraph 4. During the Due Diligence Period, Buyer may conduct any tests, analyses, surveys and
122 investigations ("Inspections") which Buyer deems necessary to determine to Buyer's satisfaction the Property's engineering,
123 architectural, environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
124 regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local, state and regional
125 growth management and comprehensive land use plans; availability of permits, government approvals and licenses; compliance with
126 American with Disabilities Act; absence of asbestos, soil and ground water contamination; and other inspections that Buyer deems
127 appropriate to determine the suitability of the Property of Buyer's intended use and development. Buyer shall deliver written notice
128 to Seller prior to the expiration of the Due Diligence Period of Buyer's determination of whether or not the Property is acceptable.
129 Buyer's failure to comply with this notice requirement shall constitute acceptance of the Property in its present "as is" condition.
130 Seller grants to Buyer, its agents, contractors and assigns, the right to enter the Property at any time during the Due Diligence
131 Period for the purpose of conducting Inspections; provided, however, that Buyer, its agents, contractors and assigns enter the
132 Property and conduct inspections at their own risk. Buyer shall indemnify and hold Seller harmless from losses, damages, costs,
133 claims and expenses of any nature, including attorneys' fees at all levels, and from liability to any person, arising from the conduct of
134 any and all inspections or any work authorized by Buyer. Buyer will not engage in any activity that could result in a mechanic's lien
135 being filed against the Property without Seller's prior written consent. In the event this transaction does not close, (1) Buyer shall
136 repair all damages to the Property resulting from the inspections and return the Property to the condition it was in prior to conduct of
137 the inspections, and (2) Buyer shall, at Buyer's expense, release to Seller all reports and other work generated as a result of the
138 inspections. Should Buyer deliver timely notice that the Property is not acceptable, Seller agrees that Buyer's deposit shall be
139 immediately returned to Buyer and the Contract terminated.

140\* Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 5 Pages.

CC-2 ©1997 Florida Association of REALTORS® All Rights Reserved

*Instanet Forms* Commercial

This software is licensed to [Ingrid Blokzijl - Commercial Group] www.transactiondesk.com.

**14. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to this Contract):
- ☐ Arbitration
- ☐ Section 1031 Exchange
- ☐ Property Inspection and Repair
- ☐ Seller Representations
- ☐ Seller Warranty
- ☐ Coastal Construction Control Line
- ☐ Flood Area Hazard Zone
- ☐ Seller Financing
- ☐ Existing Mortgage
- ☒ Other _Bankruptcy approval_
- ☐ Other
- ☐ Other

**15. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between Buyer and Seller. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not recorded in any public records. Delivery of any written notice to any party's agent will be deemed delivery to that party.

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER SPECIALIZED ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

**DEPOSIT RECEIPT:** Deposit of $ _1,000.00_ by ☒ _____ ☐ check ☐ other _____ received on _July_ _2nd_ , _2009_ by _____

_Signature of Escrow Agent_

**OFFER:** Buyer offers to purchase the Property on the above terms and conditions. Unless acceptance is signed by Seller and a signed copy delivered to Buyer or Buyer's agent no later than _5:00_ ☐ a.m. ☒ p.m. on _July_ _7_ , _09_ , Buyer may revoke this offer and receive a refund of all deposits.

Date: _6/2/09_  BUYER: _____ Tax ID No: _____
Title: _President_ Telephone: _941 730-1876_ Facsimile: _____
Address: _JT @ AAREADY-MIX.COM_

Date: _____ BUYER: _____ Tax ID No: _____
Title: _____ Telephone: _____ Facsimile: _____
Address: _____

**ACCEPTANCE:** Seller accepts Buyer's offer and agrees to sell the Property on the above terms and conditions ☐ subject to the attached counter offer).

Date: _7/3/09_ SELLER: _____ Tax ID No: _22-2612772_
Title: _____ Telephone: _612 339-7600_ Facsimile: _612 337-1930_
Address: _2900 IDS Center, 80 S. 8th St, Minneapolis, MN 55402_

Date: _____ SELLER: _____ Tax ID No: _____
Title: _____ Telephone: _____ Facsimile: _____
Address: _____

Buyer (☒) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is page 6 of 6 Pages.

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.
CC-2 ©1997 Florida Association of REALTORS® All Rights Reserved

*Instanet Forms* Commercial

This software is licensed to [Ingrid Blokzijl - Commercial Group] www.transactiondesk.com.

# FIRST ADDENDUM

This addendum is hereby made a part of the Purchase and Sale Agreement by and between NEXGEN CONCRETE, INC, (**Buyer**) and GENMAR INDUSTRIES, INC. (**Seller**), pertaining to the property known as 1715 67TH. AVENUE EAST, Manatee County, Florida

**BANKRUPTCY COURT APPROVAL:** It is understood by the Buyer that this agreement is subject to the approval from the United States Bankruptcy Court, District of Minnesota and such approval will be diligently pursued as time is of the essence. *The effective Date of Contract Shall be the data that the Bankruptcy approval is granted*

Buyer: NEXGEN CONCRETE, INC.

By: _____

Date: _____JULY 16_____ ,2009

Seller: GENMAR INDUSTRIES, INC.

By: _____

Date: _____July 13_____ ,2009

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                           Chapter 11

Genmar Holdings, Inc., et al.[1]                         Case No. 09-43537

                    Debtors.                          Jointly Administered

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER AUTHORIZING DEBTORS TO SELL THREE PARCELS OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

## INTRODUCTION

Debtors submit this Memorandum of Law in support of their Motion. Debtors request that the Court enter an order authorizing them to sell the Properties free and clear of liens, claims, interests, and encumbrances.

## BACKGROUND

The facts in support of the relief requested are set forth in the verified Sale Motion. All capitalized terms have the meaning ascribed to them in the Sale Motion.

## ARGUMENT

### I.    THE SALE OF THE PROPERTIES IS IN THE BEST INTEREST OF THE ESTATES AND THEIR CREDITORS.

Section 363(b)(1) of the Bankruptcy Code requires court approval, after notice and hearing, for sales outside of the ordinary course of business. 11 U.S.C. § 363(b)(1). In

---

[1]    Jointly administered debtors: Genmar Holdings, Inc., Case No. 09-43537; Carver Industries, L.L.C., Case No. 09-43538; Carver Italia, L.L.C., Case No. 09-33773; Carver Yachts International, L.L.C., Case No. 09-33774; Genmar Florida, Inc., Case No. 09-43539; Genmar Industries, Inc., Case No. 09-43540; Genmar IP, LLC, Case No. 09-43541; Genmar Manufacturing of Kansas, Inc., Case No. 09-43542; Genmar Michigan, L.L.C., Case No. 09-43543; Genmar Minnesota, Inc., Case No. 09-33775; Genmar Tennessee, Inc., Case No. 09-43544; Genmar Transportation, Inc., Case No. 09-43545; Genmar Yacht Group, LLC, Case No. 09-43546; Marine Media, LLC, Case No. 09-43547; Minstar, LLC, Case No. 09-43548; Triumph Boats, Inc., Case No. 09-43550; Triumph Boat Rentals, L.L.C., Case No. 09-43551; VEC Leasing Services, L.L.C., Case No. 09-43552; VEC Management Co., L.L.C., Case No. 09-43553; VEC Technology, Inc., Case No. 09-43554; Windsor Craft Yachts, L.L.C., Case No. 09-43555; Wood Manufacturing Company, Inc., Case No. 09-43556.

interpreting section 363(b)(1), courts have held that a transaction involving property of the estate generally should be approved so long as the debtor can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 567 n. 16 (8th Cir. 1997); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Crystalin LLC*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003). The court should give deference to a debtor's application of its sound business judgment in the use, sale or lease of property. *In re Moore*, 110 B.R. 924, 928 (Bankr. C.D. Cal. 1990); *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

Many courts have set forth factors to consider when approving a sale outside of the ordinary course, and most courts start with the factors set forth by the Second Circuit in *In re Lionel.* Those factors are:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

*In re Lionel*, 722 F.2d at 1071.

Other courts have simplified the factors to include, *inter alia*, the consideration to be paid, the financial condition and needs of the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in the debtor's possession. *Equity Funding Corp. of America v. Financial Associates (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th Cir. 1974); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991) (setting forth four elements of a "sound business purpose" test: (1) a

sound business reason, (2) accurate and reasonable notice, (3) adequate price, and (4) good

faith).

In light of the plain language of 11 U.S.C. § 363(b)(1), which only requires "notice and

hearing" before a sale and does not set out factors to consider, the Second Circuit in *Lionel*

observed that:

> A bankruptcy judge must not be shackled with unnecessarily rigid rules when exercising the undoubtedly broad administrative power granted him under the code.  As Justice Holmes once said in a different context, 'Some play must be allowed for the joints of the machine . . .'.

*Lionel*, 722 F.2d at 1069 (quoting *Missouri, Kansas and Texas Ry. Company v. May*, 194 U.S.

267 (1904)); *see also Wintz v. American Freightways, Inc. (In re Wintz Cos.)*, 219 F.3d 807, 812

(8th Cir. 2000) ("[The] bankruptcy courts have wide discretion in structuring sales of

assets . . . .").

The proposed sales should be approved based on the factors set forth above.  Debtors

have determined, after careful evaluation of their business prospects, that the proposed sales will

yield the greatest return.  Debtors do not need to Properties to continue their business operations.

Accordingly, Debtors have sought to sell the Properties since February 2008.  Debtors have hired

NorthMarq to actively market the Properties, and NorthMarq has engaged in activities to do so,

including: conducting market analysis, targeting potential buyers of Properties, creating

marketing brochures to distribute to potential buyers, and marketing the Properties to potential

buyers.  The Properties have been marketed for over a year.

Generally, "the best way to determine the market value of property is to expose the

property to the marketplace." *In re Mama's Original Foods, Inc.*, 234 B.R. 500, 504 (Bankr.

C.D. Cal. 1999) (citing *Bank of America NT & SA v. 203 North LaSalle Street Partnership*,

526 U.S. 434, 119 S. Ct. 1411, 1423 (1999)).  Debtors, with the assistance of NorthMarq, have

located buyers. The proposed purchase prices total nearly $11 million. The proposed purchase prices are the highest offers received after over a year of marketing the Properties. Further, this sale was proposed in good faith and is supported by business justifications. The sale is consistent with progress towards confirmation of a plan. All aspects of this transaction have been undertaken in good faith and provide for adequate disclosure to interested parties. Accordingly, the sale should be allowed to proceed under the terms outlined in the proposed Sale Agreements and proposed orders.

## II.    DEBTORS CAN SELL THE PROPERTIES FREE AND CLEAR OF ALL LIENS.

Debtors seek to sell their Assets free and clear of all liens, claims and interests of all claimants and lienholders. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --

> (i)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

> (ii)    such entity consents;

> (iii)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of such interest;

> (iv)    such interest is in bona fide dispute; or

> (v)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Any one of the five conditions, including the "consent" of the lienholders, provides authority to sell free and clear of liens. *Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988). To the extent a secured creditor or lienholder that receives notice does not file a written objection to the Motion, such party should be deemed to have consented to the sale. *In re Shary*, 152 B.R. 724, 725-26 (Bankr. N.D. Ohio 1993).

Debtors believe that each of the secured creditors with an interest in the assets to be sold, the Senior Lenders, will consent to such a sale. If a secured party does not consent, the sale of Debtors' assets may occur over their objections, or any other secured creditors' objection, so long as their respective liens attached to the sale proceeds and there are sufficient sale proceeds to pay such claims in full, and the sale price of the Properties will be sufficient to pay such claims.

**<u>CONCLUSION</u>**

For the foregoing reasons, Debtors respectfully request that this Court enter an order granting the relief requested in the Motion.

Dated:  August 7, 2009                  FREDRIKSON & BYRON, P.A.

<u>/s/ Ryan T. Murphy</u>
James L. Baillie (#3980)
Ryan T. Murphy (#311972)
Kendall L. Bader (#389001)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077
<u>jbaillie@fredlaw.com</u>
<u>rmurphy@fredlaw.com</u>
<u>kbader@fredlaw.com</u>

ATTORNEYS FOR DEBTORS

4592762_1

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 11 |
| Genmar Holdings, Inc., et al.[1] | Case No. 09-43537 |
| Debtors. | Jointly Administered |

## CERTIFICATE OF SERVICE

Kendall L. Bader, under penalty of perjury, states that on August 7, 2009, he caused to be served the following:

1. Notice of Motion and Motion for Order Authorizing Debtors to Sell Three Parcels of Real Property Free and Clear of Liens, Claims, Interests, and Encumbrances;

2. Memorandum of Law in Support of Motion for Order Authorizing Debtors to Sell Three Parcels of Real Property Free and Clear of Liens, Claims, Interests, and Encumbrances;

3. Order Authorizing Debtors to Sell Two Parcels of Real Property to Trans United Development Corp. Free and Clear of Liens, Claims, Interests, and Encumbrances;

4. Order Authorizing Debtors to Sell One Parcel of Real Property to Nexgen Co. Free and Clear of Liens, Claims, Interests, and Encumbrances; and

5. Certificate of Service

by sending true and correct copies to all parties on the attached Service List as indicated therein.

Dated: August 7, 2009

/s/ *Kendall L. Bader*
Kendall L. Bader

4599737_1.DOC

---

[1]    Jointly administered debtors: Genmar Holdings, Inc., Case No. 09-43537; Carver Industries, L.L.C., Case No. 09-43538; Carver Italia, L.L.C., Case No. 09-33773; Carver Yachts International, L.L.C., Case No. 09-33774; Genmar Florida, Inc., Case No. 09-43539; Genmar Industries, Inc., Case No. 09-43540; Genmar IP, L.L.C., Case No. 09-43541; Genmar Manufacturing of Kansas, Inc., Case No. 09-43542; Genmar Michigan, L.L.C., Case No. 09-43543; Genmar Minnesota, Inc., Case No. 09-33775; Genmar Tennessee, Inc., Case No. 09-43544; Genmar Transportation, Inc., Case No. 09-43545; Genmar Yacht Group, LLC, Case No. 09-43546; Marine Media, L.L.C., Case No. 09-43547; Minstar, L.L.C., Case No. 09-43548; Triumph Boats, Inc., Case No. 09-43550; Triumph Boat Rentals, L.L.C., Case No. 09-43551; VEC Leasing Services, L.L.C., Case No. 09-43552; VEC Management Co. L.L.C., Case No. 09-43553; VEC Technology, Inc., Case No. 09-43554; Windsor Craft Yachts, L.L.C., Case No. 09-43555; Wood Manufacturing Company, Inc., Case No. 09-43556.

Genmar Holdings, Inc. and Related Debtors
MASTER SERVICE LIST
Bky No. 09-43537
NOTE:  Served via U.S. Mail except those parties whose contact information includes an e-mail address were served
         via e-mail

### *US Trustee and Other Required Parties*

U.S. Trustee's Office
1015 US Courthouse
300 S Fourth St
Minneapolis MN 55415
ustpregion12.mn.ecf@usdoj.gov

U.S. Trustee's Office
1015 US Courthouse
300 South Fourth Street
Minneapolis MN 55415
Sarah.J.Wencil@usdoj.gov

IRS District Counsel
380 Jackson St, Ste 650
St Paul MN 55101-4804

Internal Revenue Service
Wells Fargo Place
30 E 7th St, Mail Stop 5700
St Paul MN 55101

MN Department of Revenue
Collection Enforcement
551 Bankruptcy Section
600 North Robert Street
PO Box 64447
St Paul MN 55101-2228

US Attorney
600 US Courthouse
300 S Fourth St
Minneapolis MN 55415

Minnesota Department of Economic
Security
332 Minnesota St, Ste E200
St. Paul MN 55101-1351

### *Debtors*

Genmar Holdings, Inc. and other Debtors
Genmar Holdings, Inc.
Attention: David Huls
2900 IDS Center
80 South Eighth Street
Minneapolis MN 55402-2100
612-337-1930 (fax)
david.huls@genmar.com

### *Major Secured Creditors*

#### *Wells Fargo Bank, NA*
Michael R. Stewart
Lyle Ward
Sara Bruggeman
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh St
Minneapolis MN 55402-3901
mstewart@faegre.com
LWard@faegre.com
sbruggeman@faegre.com

Fifth Third Bank
James Markus
1700 Lincoln
Suite 4000
Denver CO 80203
jmarkus@markuswilliams.com

*GE Commercial
Distribution Finance Corporation*
Thomas J. Lallier
Jeffrey D. Klobucar
Nathan J. Kavlie
Foley & Mansfield, PLLP
250 Marquette Ave, Ste 1200
Minneapolis MN 55401
tlallier@foleymansfield.com
jklobucar@foleymansfield.com
nkavlie@foleymansfield.com

*GE Commercial Distribution Finance*
Michael C. Rupe
Heath D. Rosenblat
King & Spalding LLP
1185 Avenue of the Americas
New York NY 10036
mrupe@kslaw.com
hrosenblat@kslaw.com

Twin Lakes Community Bank
PO Box 1229
301 South 1ˢᵗ St
Flippin AR 72634

*Textron Financial Corporation*
Paul L. Ratelle
Fabyanske Westra Hart & Thomson PA
800 LaSalle Ave S, Ste 1900
Minneapolis MN 55402
612-359-7600 (telephone)
612-359-7602 (fax)
pratelle@fwhtlaw.com

### *Textron Financial Corporation*
### *Textron Financial Canada, Ltd.*
Steven E. Fox
Paul Traub
Brett J. Nizzo
Maura I. Russell
Epstein Becker & Green PC
250 Park Ave
New York NY 10177-1211
sfox@ebglaw.com
ptraub@ebglaw.com
bnizzo@ebglaw.com
mrussell@ebglaw.com

#### *Yamaha Motor Corporation USA*
Timothy D. Moratzka, Esq.
1400 AT&T Tower
901 Marquette Ave
Minneapolis MN 55402
612-305-1414 (fax)
tdm@mcmlaw.com

### *Committee of Unsecured Creditors*

Phillip Bohl
William J. Fisher
Henry Wang
Jessica A. Mitchell
Gray Plant Mooty Mooty & Bennett PA
500 IDS Ctr, 80 S 8th St
Minneapolis MN 55402
612-632-3000 (telephone)
612-632-4444 (fax)
phillip.bohl@gpmlaw.com
William.fisher@gpmlaw.com
henry.wang@gpmlaw.com
Jessica.mitchell@gpmlaw.com

### *Special Counsel*
### *Committee of Unsecured Creditors*

Matthew A. Swanson
Leonard Street and Deinard
150 S 5th St, Ste 2300
Minneapolis MN 55402
612-335-1500 (telephone)
612-335-1657 (fax)
matthew.swanson@leonard.com

### *Requests for Notice*

Terry Lange
Hagemeyer NA
Financial Service Center
11680 Great Oaks Way
Alpharetta GA 30022

Genmar Holdings, Inc. and Related Debtors
MASTER SERVICE LIST
Bky No. 09-43537
NOTE: Served via U.S. Mail except those parties whose contact information includes an e-mail address were served
via e-mail

*Hagemeyer NA*
Cynthia J. Lowery
Moore & Van Allen PLLC
40 Calhoun St, Ste 300
PO Box 22828
Charleston SC 29413-2828
cynthialowery@mvalaw.com

*Hagemeyer NA/Navico, Inc.*
Larry B. Ricke
Spence Ricke & Sweeney PA
325 Cedar St, Ste 600
St Paul MN 55101
651-223-8000 (telephone)
651-223-8003 (fax)
rickel@srsg.net

*Bombardier Recreational Products*
Kevin D. Hofman
Halleland Lewis Nilan & Johnson PA
600 US Bank Plaza South
220 S Sixth St
Minneapolis MN 55402
612-338-7858 (fax)
khofman@halleland.com

*Bombardier Recreational Products*
Aaron Davis
Bryan Cave LLP
161 N Clark St, Ste 4300
Chicago IL 60601
312-602-5135 (telephone)
312-698-7535 (fax)
aaron.davis@bryancave.com

*Inland American Office Management and
MB Minneapolis 8th St LLC*
Kevin M. Newman
Menter Rudin & Trivelpiece PC
308 Maltbie St, Ste 200
Syracuse NY 13204-1498
315-474-4040 (fax)
knewman@menterlaw.com

*Volvo Penta of the Americas Inc./
Volvo Financial Service North America/
VFS Leasing Co.*
Cass S. Weil
John K. Rossman
Sarah E. Doerr
Moss & Barnett PA
4800 Wells Fargo Center, 90 S 7th St
Minneapolis MN 55402-4129
weilc@moss-barnett.com
rossmanj@moss-barnett.com
doerrsarah@moss-barnett.com

*Lindy Lazar*
Gregory M. Luyt
Bowerman Bowden Ford Clulo & Luyt
620-A Woodmere
Traverse City MI 49686
231-941-8192 (fax)
luyt@traverselaw.com
patty@traverselaw.com

*Llebroc Industries*
Aaron Z. Tobin
Anderson & Jones PLLC
One Galleria Tower
13355 Noel Rd, Ste 1900
Dallas TX 75240
972-789-1160 (telephone)
aaront@andersonjoneslaw.com

*Llebroc Industries*
Davis A. Kessler
Gregerson Rosow Johnson & Nilan Ltd
650 Third Ave S, Ste 1600
Minneapolis MN 55402
dkessler@grjn.com

*Kubota Credit Corp.*
Joe M. Lozano, Jr.
National Bankruptcy Services.com LLC
F#2390-N-2696
9441 LBJ Freeway, Ste 350
Dallas TX 75243
972-643-6600 (telephone)
972-643-6698 (fax)
notice@bkcylaw.com

*MB Minneapolis 8th St LLC*
Jane S. Welch
Michael T. Berger
Morrison Fenske & Sund PA
5125 Cty Rd 101, Ste 202
Minnetonka MN 55345
952-975-0050 (telephone)
952-975-0058 (fax)
jwelch@morrisonfenske.com
mberger@morrisonfenske.com

Linda Boyle
TW Telecom, Inc.
10475 Park Meadows Dr, #400
Littleton CO 80124
303-566-1284 (telephone)
303-566-1010 (fax)

Nancy Adelmann
Vice President, Finance
Normark Corporation d/b/a Rapala
10395 Yellow Circle Drive
Hopkins MN 55343-9101
952-939-4361 (telephone)
952-933-7329 (fax)
nadelmann@rapalausa.com

*Vicem Yachts, Inc./Vicem Yat Saniyi ve
Ticaret AS*
Ralph V. Mitchell
Lapp Libra Thomson Stoebner & Pusch
One Financial Plaza, Ste 2500
120 S 6th St
Minneapolis MN 55402
612-338-5815 (telephone)
612-338-6651 (fax)
rmitchell@lapplibra.com

*Vicem Yachts, Inc./Vicem Yat Saniyi ve
Ticaret AS*
Steven J. Cohen
Wachtel & Masyr LLP
110 E 59th St
New York NY 10022
212-909-9500 (telephone)
cohen@wmllp.com

*North American Composites Co./
Interplastic Corp.*
Ivan M. Levy
Interplastic Corporation & Subsidiaries
1225 Willow Lake Blvd
St Paul MN 55110-5145
651-481-6871 (telephone)
651-481-9836 (fax)
ilevy@interplastic.com

*Dometic Corporation*
Lester Turchin
2000 N Andrews Ave
Pompano Beach FL 33069
954-633-3158 (telephone)
954-979-4414 (fax)

*Constellation NewEnergy, Inc.*
Bruce J. Ruzinsky
D. Elaine Conway
Jackson Walker LLP
1400 McKinney St, Ste 1900
Houston TX 77010
713-752-4200 (telephone)
713-752-4221 (fax)
bruzinsky@jw.com
econway@jw.com

Genmar Holdings, Inc. and Related Debtors
MASTER SERVICE LIST
Bky No. 09-43537
NOTE: Served via U.S. Mail except those parties whose contact information includes an e-mail address were served
via e-mail

*Constellation NewEnergy, Inc.*
Heather M. Forrest
Jackson Walker LLP
901 Main St, Ste 6000
Dallas TX 75202
214-953-6000 (telephone)
214-953-5822 (fax)
hforrest@jw.com

*Florida Self-Insurers Guaranty Assn.*
James E. Sorenson
Williams Gautier Gwynn DeLoach &
Sorenson PA
PO Box 4128
Tallahassee FL 32315-4128
850-386-3300 (telephone)
850-205-4755 (fax)

Beverly H. Shideler
IBM Corporation
Two Lincoln Centre
Oakbrook Terrace IL 60181
877-876-7781 (phone)
845-491-3275

*Rodney & Barbara Voisine*
Leonard J. Koenick
Kivitz & Liptz LLC
5454 Wisconsin Ave, Ste 650
Chevy Chase MD 20815
301-951-3400 (telephone)
301-951-3646 (fax)
kivitzliptz2@earthlink.net

Michael L. Murawski
5 Hickory Ln
Plumsted NJ 08533
mlmurawski@comcast.net

Andy Gravina
Special Handling Group
IBM Credit LLC
4111 Northside Pky
Atlanta GA 30327

*Financial Protection Corp./*
*Lyndon Property Co.*
David E. Runck
Fafinski Mark & Johnson PA
400 Flagship Corporate Center
775 Prairie Center Dr
Eden Prairie MN 55344
952-995-9500 (telephone)
952-955-9577 (fax)
David.Runck@fmjlaw.com

*Taylor Made Group, Inc.*
Jeffrey A. Cooper
Carella Byrne Bain Gilfillan, et al.
5 Becker Farm Rd
Roseland NJ 07068
973-422-5573 (telephone)
jcooper@carellabyrne.com

*Veada Industries, Inc.*
Michael F. DeBoni
130 N Main St
PO Box 575
Goshen IN 46527-0575
574-533-1171 (telephone)
574-534-4174 (fax)
mdeboni@yaub.com

*Mahar Tool Supply Co.*
Susan M. Cook
Keith A. Schofner
Lambert Leser Isackson Cook & Giunta
916 Washington Ave, Ste 309
Bay City MI 48708
989-893-3518 (telephone)
scook@lambertleser.com
kschofner@lambertleser.com

*WPS Health Plan, Inc. d/b/a Arise*
*Health Plan*
Catherine J. Furay
Murphy Desmond S.C.
33 E. Main St, Ste 500
PO Box 2038
Madison WI 53701-2038
608-268-5614 (telephone)
608-257-4333 (fax)
cfuray@murphydesmond.com

*DC Capital Advisors Ltd.*
Lawrence P. Vonckx
Baker & McKenzie LLP
One Prudential Plaza
130 E. Randolph Dr, Ste 3600
Chicago IL 60601
312-861-8803 (telephone)
Lawrence.p.vonckx@bakernet.com

*IKON Financial Services*
Seprina-Renee Thomas
Bankruptcy Administration
IKON Financial Services
1738 Bass Rd
PO Box 13708
Macon GA 31208-3708
800-480-6513 (telephone)

Missouri Department of Revenue
Bankruptcy Unit
PO Box 475
Jefferson City MO 65105-0475
Attn: Steven A. Ginther
753-751-5531 (telephone)
753-751-7232 (fax)
mn@dor.mo.gov

*Squiggle Tool Company LLC*
Mark F. Uphus
Uphus Law Office
310 E Main St
PO Box 158
Melrose MN 56352
320-256-7491 (telephone)
mark@uphuslaw.com

*Scott and Lambia Heilman*
David H. Stein
Jay B. Feldman
Wilentz, Goldman & Spitzer PA
90 Woodbridge Ctr Dr, Ste 900, Box 10
Woodbridge NJ 07095
dstein@wilentz.com
jfeldman@wilentz.com

*March First d/b/a Gainesville Marina*
Daniel W. Fram
Peterson Fram & Bergmann PA
55 E 5th St, Ste 800
St Paul MN 55101
651-291-8955 (telephone)
651-228-1753 (fax)
wfram@pfb-pa.com

*Manatee County Tax Collector*
Susan D. Profant
819 US 301 Blvd W
Bradenton FL 34205
941-741-4832 (telephone)
941-741-4865 (fax)
susanp@taxcollector.com

*Eldon E. Fox*
Lisa P. Summer
Poyner Spruill LLP
PO Box 1801
Raleigh NC 27602
919-783-6400 (telephone)
919-783-1075 (fax)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    Chapter 11

Genmar Holdings, Inc., et al.[1]                          Case No. 09-43537

                        Debtors.                          Jointly Administered

---

## ORDER AUTHORIZING DEBTORS TO SELL TWO PARCELS OF REAL PROPERTY TO TRANS UNITED DEVELOPMENT CORP. FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

Debtors' Motion Seeking Order Authorizing Debtors to Sell Three Parcels of Real Property Free and Clear of Liens, Claims, Interests, and Encumbrances ("Motion") came on for hearing before the undersigned United States Bankruptcy Judge. Appearances are noted on the record. All capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the Motion.

Based upon the Sale Motion, the arguments of counsel, all the files, records and proceedings herein, the Court being advised in the premises in the Court's findings of fact and conclusions of law, if any, have been stated orally and recorded in open court following the close of argument:

IT IS HEREBY ORDERED:

1.      The Sale Motion is approved.

---

[1]     Jointly administered debtors: Genmar Holdings, Inc., Case No. 09-43537; Carver Industries, L.L.C., Case No. 09-43538; Carver Italia, L.L.C., Case No. 09-33773; Carver Yachts International, L.L.C., Case No. 09-33774; Genmar Florida, Inc., Case No. 09-43539; Genmar Industries, Inc., Case No. 09-43540; Genmar IP, LLC, Case No. 09-43541; Genmar Manufacturing of Kansas, Inc., Case No. 09-43542; Genmar Michigan, L.L.C., Case No. 09-43543; Genmar Minnesota, Inc., Case No. 09-33775; Genmar Tennessee, Inc., Case No. 09-43544; Genmar Transportation, Inc., Case No. 09-43545; Genmar Yacht Group, LLC, Case No. 09-43546; Marine Media, LLC, Case No. 09-43547; Minstar, LLC, Case No. 09-43548; Triumph Boats, Inc., Case No. 09-43550; Triumph Boat Rentals, L.L.C., Case No. 09-43551; VEC Leasing Services, L.L.C., Case No. 09-43552; VEC Management Co., L.L.C., Case No. 09-43553; VEC Technology, Inc., Case No. 09-43554; Windsor Craft Yachts, L.L.C., Case No. 09-43555; Wood Manufacturing Company, Inc., Case No. 09-43556.

2.     The sale of the Main Parcel and Small Parcel (collectively, the "Properties") to Trans United Development Corp. (the "Buyer") pursuant to the Main Parcel Sale Agreement and Small Parcel Sale Agreement (collectively, the "Sale Agreements") is hereby authorized under section 363(b) of the Bankruptcy Code and the entry of Debtors into the Sale Agreements is hereby approved.

3.     Debtors, through any corporate officer, are authorized and directed to execute and deliver, and empowered to fully perform under, consummate and implement, the Sale Agreements, together with all additional instruments and documents that may be reasonably necessary or desirable to implement such agreements, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, any or all of the Properties, or as may be necessary or appropriate to the performance of the obligations of the Debtors under the Sale Agreements, including effectuating amendments to the Sale Agreements in furtherance thereof. All Persons necessary to effect the transactions contemplated by the Sale Agreements are hereby ordered to execute any and all documents necessary to effect such transactions.

4.     On the Closing Date, Debtors shall, and are hereby authorized and directed to pay Wells Fargo Bank, National Association, as administrative agent for the Senior Lenders, the net proceeds of the sale for application to the Senior Lenders' secured obligations immediately upon receipt thereof.

5.     Pursuant to 11 U.S.C. §§ 105(a), 363(b) and 363(f)(3), the Properties shall be transferred to the Buyer free and clear of all Liens (as defined in the Sale Agreements) and claims (as defined in section 101(5) of the Bankruptcy Code), including claims of equity security holders (as defined in section 101(17) of the Bankruptcy Code), security interests, liens (as

defined in section 101(37) of the Bankruptcy Code, and including but not limited to, mechanics', materialmens' and other consensual or statutory liens), obligations, mortgages, demands, guaranties, options, rights (including, but not limited to, rights of first refusal, rights of way and rights of recovery), contractual commitments, pledges, restrictions (including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Properties and all debts arising in any way in connection with any acts of the Debtors), easements (except  as described below), encumbrances (except as described below), personal injury claims, covenants, defects, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, conditional sale or other title retention agreements, options, contracts, offsets, recoupment, rights of recovery, judgments, orders, and decrees of any court or governmental entity, interests, successor, transferee, products liability, environmental, tax and other liabilities and claims, mechanics' liens, financing statements or any claims arising under the Workers Adjustment Restraining and Notification Act, 29 U.S.C. § 2101, et seq., or any collective bargaining agreements or other applicable law, whether arising prior to or subsequent to the commencement of this Chapter 11 case, whether arising in connection with the transactions authorized by this Order, and whether imposed by agreement, understanding, law, equity or otherwise, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown (the foregoing collectively referred to as "Claims" herein, except as otherwise set forth in the Sale Agreements).

6.     All such Claims released, terminated and discharged as to the Properties shall attach to the sale proceeds with the same validity, force and effect which they now have as

against Debtors, their estates or the Properties. The sole and exclusive right and remedy available to purported creditors, equityholders, including, without limitation, minority equityholders of Debtors, and parties in interest shall be a right to assert Claims against Debtors' estates. All persons and entities (including, but not limited to, the Debtors, creditors, equityholders, including, without limitation, minority equityholders of the Debtors, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials) and their respective successors or assigns and any trustees thereof, shall be and are hereby permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Buyer and its successors or assigns as alleged successor or otherwise with respect to any Claims of any kind and nature with respect to the Properties. If the proposed Sale fails to close for any reason, then Claims shall continue against the Properties unaffected by this Order.

7. The transfer of the Properties pursuant to this Order shall not subject the Buyer to any liability with respect to any obligations incurred in connection with, or in any way related to the Properties, prior to the date of Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability, except as otherwise provided in the Sale Agreements.

8. The transfer of the Properties to the Buyer pursuant to the Sale Agreements constitutes a legal, valid and effective transfer of the Properties, and shall vest the Buyer with all

right, title, and interest of Debtors and their estates in and to the Properties free and clear of all Claims.

9.     The transactions contemplated by the Sale Agreements are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer, unless such authorization is duly stayed pending such appeal.  The Buyer is a Buyer in good faith of the Properties, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

10.     The consideration provided by the Buyer for the Properties under the Sale Agreements shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

11.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing any Claims in, against or upon the Properties prior to the date of Closing of the Sale, in proper form for filing and executed by the appropriate parties, and has not executed termination statements, instruments of satisfaction, releases of all Claims which the person or entity has with respect to the Properties, then (a) Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Properties and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered or otherwise recorded, shall constitute

conclusive evidence of the release of all Claims in, against, or upon the Properties of any kind or nature whatsoever.

12.    All entities that are presently, or on the closing date may be, in possession of some or all of the Properties are hereby directed to surrender possession of the Properties to the Buyer on the Closing Date.

13.    The Buyer is not a successor to Debtors or the estate by reason of any theory of law or equity.  The Buyer shall have no liability or responsibility for any liability or other obligation of Debtors or their estates arising under or related to the Properties other than for payment of the purchase price.  Without limiting the generality of the foregoing, and except as otherwise specifically provided for herein and in the Sale Agreements, the Buyer shall not be liable for any Claims, including any theory of successor or vicarious liability, of any kind or character whether known or unknown as of the date of closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Sale, Debtors or their estates or any obligations Debtors or their estates arising prior to the date of closing, including but not limited to, liabilities arising, accruing, or payable under, out of, in connection with, or in any way relating to the Properties.

14.    Subject to the Sale Agreements, this Order (a) is and shall be effective as a determination that, at closing, all Claims existing as to the Properties prior to the date of the closing have been and hereby are unconditionally released, discharged and terminated as to the Properties, and that the conveyance described in this Order has been effected, (b) is and shall be effective to cause all Claims to attach to and be perfected in the proceeds of the sale of the Properties, in the order of their priority, with the same validity, force and effect which they now have as against the Properties, without the need to file any financing statements or other evidence

6

of perfection, and (c) is and shall be binding upon and govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Properties.

15.     Debtors or the Buyer and any agent or representative of either of them, are each hereby authorized and empowered to serve upon all filing and recording officers a notice when filing or recording any instruments of transfer (including, without limitation, deeds, leases, and assignments, modifications and terminations of leases) in accordance with this Order and the Sale Agreements to evidence and implement this paragraph of this Order.  All filing and recording officers are hereby directed to accept, file and record all instruments of transfer including, without limitation, deeds, leases, and assignments, modifications and terminations of leases (if any) to be filed and recorded pursuant to and in accordance with this Order or the Sale Agreements and the various documents related thereto, without the payment of any such taxes.

16.     This Court retains exclusive jurisdiction to (i) enforce and implement the terms and provisions of the Sale Agreements, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) compel delivery of the Properties to the Buyer, (iii) resolve any disputes arising under or related to the Sale Agreements and related agreements, except as otherwise provided therein, (iv) enjoin the assertion of any Claims against the Buyer or the Properties, and (v) interpret, implement and enforce the provisions of this Order.

17.     As of the closing, all agreements and all orders of this Court entered prior to the date hereof shall be deemed amended or modified solely to the extent required to permit the consummation of the transactions contemplated by this Order and the Sale Agreements.

18.     Nothing contained (i) in any plan of reorganization (or liquidation) confirmed in the Chapter 11 case, (ii) the order of confirmation confirming any plan of reorganization (or liquidation), (iii) any order dismissing the Chapter 11 case or converting it to a chapter 7 liquidation or (iv) any order appointing an examiner or trustee in the case shall conflict with or derogate from the provisions of the Sale Agreements or the terms of this Order.

19.     The terms and provisions of the Sale Agreements, together with the terms and provisions of this Order, shall be binding in all respects upon, and inure to the benefit of, the Buyer, Debtors, Debtors' estates, any of Debtors' affiliates, successors and assigns, Debtors' creditors, equityholders, including, without limitation, minority equityholders of Debtors, and third parties, including, but not limited to persons asserting a Claim against or interest in the estates or any of the Properties to be sold to the Buyer pursuant to the Sale Agreements.  If a trustee or examiner is subsequently appointed in these cases, such trustee or examiner shall likewise be bound, in all respects, to the terms and provisions of this Order.

20.     The Sale Agreements and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material.  In the event of a material modification, Debtors shall file a notice of modification of Sale Agreements.  Any party in interest shall have three (3) business days to object to the notice.  Should an objection be timely filed, Debtors shall schedule a hearing on an

expedited basis. Should no party in interest timely object, the modification shall be deemed approved.

21.     The failure specifically to include any particular provisions of the Sale Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreements be authorized and approved in its entirety.

22.     Upon closing, Debtors and their estates shall be deemed without further action or order of the Court to have released and discharged the Buyer and its affiliates, and their respective officers, directors, representative, agents, attorneys, marketing companies and professionals, of and from any causes of action, legal or equitable, suits, debts, covenants, contracts, agreements, judgments, executions, claims, and demands whatsoever whether known or unknown, except for obligations arising hereunder or under the Sale Agreements.

23.     Upon closing, the Buyer shall be deemed without further action or order of the Court to have released and discharged Debtors and their estates, and its affiliates, and their respective officers, directors, representative, agents, attorneys, investment   bankers and professionals, of and from any causes of action, legal or equitable, suits, debts, covenants, contracts, agreements, judgments, executions, claims, and demands whatsoever whether known or unknown, except for obligations arising hereunder or under the Sale Agreements.

24.     The provisions of Bankruptcy Rule 6004(h) staying the effectiveness of this Order for ten (10) days are hereby waived, and this Order shall be effective immediately upon entry thereof.

Dated: _____, 2009          _____
                                            Dennis D. O'Brien
                                            United States Bankruptcy Judge

4597980_1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                            Chapter 11

Genmar Holdings, Inc., et al.[1]                              Case No. 09-43537

           Debtors.                                        Jointly Administered

---

**ORDER AUTHORIZING DEBTORS TO SELL ONE PARCEL OF REAL
PROPERTY TO NEXGEN CO. FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES**

---

Debtors' Motion Seeking Order Authorizing Debtors to Sell Three Parcels of Real

Property Free and Clear of Liens, Claims, Interests, and Encumbrances ("Motion") came on for

hearing before the undersigned United States Bankruptcy Judge.  Appearances are noted on the

record.  All capitalized terms not otherwise defined in this Order have the meaning ascribed to

them in the Motion.

Based upon the Sale Motion, the arguments of counsel, all the files, records and

proceedings herein, the Court being advised in the premises in the Court's findings of fact and

conclusions of law, if any, have been stated orally and recorded in open court following the close

of argument:

IT IS HEREBY ORDERED:

1.        The Sale Motion is approved.

---

[1]    Jointly administered debtors: Genmar Holdings, Inc., Case No. 09-43537; Carver Industries, L.L.C., Case
No. 09-43538; Carver Italia, L.L.C., Case No. 09-33773; Carver Yachts International, L.L.C., Case No. 09-
33774; Genmar Florida, Inc., Case No. 09-43539; Genmar Industries, Inc., Case No. 09-43540; Genmar IP,
LLC, Case No. 09-43541; Genmar Manufacturing of Kansas, Inc., Case No. 09-43542; Genmar Michigan,
L.L.C., Case No. 09-43543; Genmar Minnesota, Inc., Case No. 09-33775; Genmar Tennessee, Inc., Case No.
09-43544; Genmar Transportation, Inc., Case No. 09-43545; Genmar Yacht Group, LLC, Case No. 09-43546;
Marine Media, LLC, Case No. 09-43547; Minstar, LLC, Case No. 09-43548; Triumph Boats, Inc., Case No. 09-
43550; Triumph Boat Rentals, L.L.C., Case No. 09-43551; VEC Leasing Services, L.L.C., Case No. 09-43552;
VEC Management Co., L.L.C., Case No. 09-43553; VEC Technology, Inc., Case No. 09-43554; Windsor Craft
Yachts, L.L.C., Case No. 09-43555; Wood Manufacturing Company, Inc., Case No. 09-43556.

2.     The sale of the Concrete Buildings (the "Property") to Nexgen Co. (the "Buyer") pursuant to the Concrete Buildings Sale Agreement (the "Sale Agreement") is hereby authorized under section 363(b) of the Bankruptcy Code and the entry of Debtors into the Sale Agreement is hereby approved.

3.     Debtors, through any corporate officer, are authorized and directed to execute and deliver, and empowered to fully perform under, consummate and implement, the Sale Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement such agreements, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, any or all of the Property , or as may be necessary or appropriate to the performance of the obligations of the Debtors under the Sale Agreement, including effectuating amendments to the Sale Agreement in furtherance thereof. All Persons necessary to effect the transactions contemplated by the Sale Agreement are hereby ordered to execute any and all documents necessary to effect such transactions.

4.     On the Closing Date, Debtors shall, and are hereby authorized and directed to pay Wells Fargo Bank, National Association, as administrative agent for the Senior Lenders, the net proceeds of the sale for application to the Senior Lenders' secured obligations immediately upon receipt thereof.

5.     Pursuant to 11 U.S.C. §§ 105(a), 363(b) and 363(f)(3), the Property  shall be transferred to the Buyer free and clear of all Liens (as defined in the Sale Agreement) and claims (as defined in section 101(5) of the Bankruptcy Code), including claims of equity security holders (as defined in section 101(17) of the Bankruptcy Code), security interests, liens (as defined in section 101(37) of the Bankruptcy Code, and including but not limited to, mechanics',

materialmens' and other consensual or statutory liens), obligations, mortgages, demands, guaranties, options, rights (including, but not limited to, rights of first refusal, rights of way and rights of recovery), contractual commitments, pledges, restrictions (including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Property and all debts arising in any way in connection with any acts of the Debtors), easements (except as described below), encumbrances (except as described below), personal injury claims, covenants, defects, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, conditional sale or other title retention agreements, options, contracts, offsets, recoupment, rights of recovery, judgments, orders, and decrees of any court or governmental entity, interests, successor, transferee, products liability, environmental, tax and other liabilities and claims, mechanics' liens, financing statements or any claims arising under the Workers Adjustment Restraining and Notification Act, 29 U.S.C. § 2101, et seq., or any collective bargaining agreements or other applicable law, whether arising prior to or subsequent to the commencement of this Chapter 11 case, whether arising in connection with the transactions authorized by this Order, and whether imposed by agreement, understanding, law, equity or otherwise, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown (the foregoing collectively referred to as "Claims" herein, except as otherwise set forth in the Sale Agreement).

6.      All such Claims released, terminated and discharged as to the Property shall attach to the sale proceeds with the same validity, force and effect which they now have as against Debtors, their estates or the Property .  The sole and exclusive right and remedy available

to purported creditors, equityholders, including, without limitation, minority equityholders of Debtors, and parties in interest shall be a right to assert Claims against Debtors' estates. All persons and entities (including, but not limited to, the Debtors, creditors, equityholders, including, without limitation, minority equityholders of the Debtors, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials) and their respective successors or assigns and any trustees thereof, shall be and are hereby permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Buyer and its successors or assigns as alleged successor or otherwise with respect to any Claims of any kind and nature with respect to the Property . If the proposed Sale fails to close for any reason, then Claims shall continue against the Property unaffected by this Order.

7.      The transfer of the Property pursuant to this Order shall not subject the Buyer to any liability with respect to any obligations incurred in connection with, or in any way related to the Property , prior to the date of Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability, except as otherwise provided in the Sale Agreement.

8.      The transfer of the Property to the Buyer pursuant to the Sale Agreement constitutes a legal, valid and effective transfer of the Property , and shall vest the Buyer with all right, title, and interest of Debtors and their estates in and to the Property free and clear of all Claims.

9.     The transaction contemplated by the Sale Agreement is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer, unless such authorization is duly stayed pending such appeal.  The Buyer is a Buyer in good faith of the Property , and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

10.     The consideration provided by the Buyer for the Property  under the Sale Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

11.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing any Claims in, against or upon the Property  prior to the date of Closing of the Sale, in proper form for filing and executed by the appropriate parties, and has not executed termination statements, instruments of satisfaction, releases of all Claims which the person or entity has with respect to the Property , then (a) Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property  and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims in, against, or upon the Property  of any kind or nature whatsoever.

12.     All entities that are presently, or on the closing date may be, in possession of some or all of the Property  are hereby directed to surrender possession of the Property  to the Buyer on the closing date.

13.     The Buyer is not a successor to Debtors or the estate by reason of any theory of law or equity.  The Buyer shall have no liability or responsibility for any liability or other obligation of Debtors or their estates arising under or related to the Property  other than for payment of the purchase price.  Without limiting the generality of the foregoing, and except as otherwise specifically provided for herein and in the Sale Agreement, the Buyer shall not be liable for any Claims, including any theory of successor or vicarious liability, of any kind or character whether known or unknown as of the date of closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Sale, Debtors or their estates or any obligations Debtors or their estates arising prior to the date of closing, including but not limited to, liabilities arising, accruing, or payable under, out of, in connection with, or in any way relating to the Property .

14.     Subject to the Sale Agreement, this Order (a) is and shall be effective as a determination that, at closing, all Claims existing as to the Property  prior to the date of the closing have been and hereby are unconditionally released, discharged and terminated as to the Property , and that the conveyance described in this Order has been effected, (b) is and shall be effective to cause all Claims to attach to and be perfected in the proceeds of the sale of the Property , in the order of their priority, with the same validity, force and effect which they now have as against the Property , without the need to file any financing statements or other evidence of perfection, and (c) is and shall be binding upon and govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property .

15.     Debtors or the Buyer and any agent or representative of either of them, are each hereby authorized and empowered to serve upon all filing and recording officers a notice when filing or recording any instruments of transfer (including, without limitation, deeds, leases, and assignments, modifications and terminations of leases) in accordance with this Order and the Sale Agreement to evidence and implement this paragraph of this Order.  All filing and recording officers are hereby directed to accept, file and record all instruments of transfer including, without limitation, deeds, leases, and assignments, modifications and terminations of leases (if any) to be filed and recorded pursuant to and in accordance with this Order or the Sale Agreement and the various documents related thereto, without the payment of any such taxes.

16.     This Court retains exclusive jurisdiction to (i) enforce and implement the terms and provisions of the Sale Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) compel delivery of the Property  to the Buyer, (iii) resolve any disputes arising under or related to the Sale Agreement and related agreements, except as otherwise provided therein, (iv) enjoin the assertion of any Claims against the Buyer or the Property , and (v) interpret, implement and enforce the provisions of this Order.

17.     As of the closing, all agreements and all orders of this Court entered prior to the date hereof shall be deemed amended or modified solely to the extent required to permit the consummation of the transaction contemplated by this Order and the Sale Agreement.

18.     Nothing contained (i) in any plan of reorganization (or liquidation) confirmed in the Chapter 11 case, (ii) the order of confirmation confirming any plan of reorganization (or liquidation), (iii) any order dismissing the Chapter 11 case or converting it to a chapter 7 liquidation or (iv) any order appointing an examiner or trustee in the case shall conflict with or derogate from the provisions of the Sale Agreement or the terms of this Order.

19.     The terms and provisions of the Sale Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon, and inure to the benefit of, the Buyer, Debtors, Debtors' estates, any of Debtors' affiliates, successors and assigns, Debtors' creditors, equityholders, including, without limitation, minority equityholders of Debtors, and third parties, including, but not limited to persons asserting a Claim against or interest in the estates or any of the Property  to be sold to the Buyer pursuant to the Sale Agreement.  If a trustee or examiner is subsequently appointed in these cases, such trustee or examiner shall likewise be bound, in all respects, to the terms and provisions of this Order.

20.     The Sale Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material.  In the event of a material modification, Debtors shall file a notice of modification of Sale Agreement.  Any party in interest shall have three (3) business days to object to the notice.  Should an objection be timely filed, Debtors shall schedule a hearing on an

expedited basis. Should no party in interest timely object, the modification shall be deemed approved.

21.     The failure specifically to include any particular provisions of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement be authorized and approved in its entirety.

22.     Upon closing, Debtors and their estates shall be deemed without further action or order of the Court to have released and discharged the Buyer and its affiliates, and their respective officers, directors, representative, agents, attorneys, marketing companies and professionals, of and from any causes of action, legal or equitable, suits, debts, covenants, contracts, agreements, judgments, executions, claims, and demands whatsoever whether known or unknown, except for obligations arising hereunder or under the Sale Agreement.

23.     Upon closing, the Buyer shall be deemed without further action or order of the Court to have released and discharged Debtors and their estates, and its affiliates, and their respective officers, directors, representative, agents, attorneys, investment  bankers and professionals, of and from any causes of action, legal or equitable, suits, debts, covenants, contracts, agreements, judgments, executions, claims, and demands whatsoever whether known or unknown, except for obligations arising hereunder or under the Sale Agreement.

24.     The provisions of Bankruptcy Rule 6004(h) staying the effectiveness of this Order for ten (10) days are hereby waived, and this Order shall be effective immediately upon entry thereof.

Dated: _____, 2009                 _____

                                              Dennis D. O'Brien
                                              United States Bankruptcy Judge

4598032_1

9