UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 11 |
| Genmar Holdings, Inc., et al.[1] | Case No. 09-43537 |
| Debtors. | Jointly Administered |

**ORDER (I) AUTHORIZING DEBTORS TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) APPROVING BIDDING PROCEDURES AND AUCTION; (III) APPROVING BREAK UP FEE AND EXPENSE REIMBURSEMENT; (IV) APPROVING FORM AND MANNER OF NOTICE; (V) SCHEDULING FURTHER HEARING; AND (VI) GRANTING CERTAIN RELATED RELIEF**

The Sale Motion[2] of the above-referenced Debtors for Orders (I) Authorizing Debtors to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Authorizing Assumption and Assignment or Rejection of Unexpired Leases and Executory Contracts; (III) Approving Bidding Procedures and Auction; (IV) Approving Break-Up Fee and Expense Reimbursement; (V) Approving Form and Manner of Notice; and (VI) Scheduling Further Hearing ("Sale Motion") came before the undersigned on December 8, 2009. Appearances were noted on the record.

---

[1] Jointly administered debtors: Genmar Holdings, Inc., Case No. 09-43537; Carver Industries, L.L.C., Case No. 09-43538; Carver Italia, L.L.C., Case No. 09-33773; Carver Yachts International, L.L.C., Case No. 09-33774; Genmar Florida, Inc., Case No. 09-43539; Genmar Industries, Inc., Case No. 09-43540; Genmar IP, LLC, Case No. 09-43541; Genmar Manufacturing of Kansas, Inc., Case No. 09-43542; Genmar Michigan, L.L.C., Case No. 09-43543; Genmar Minnesota, Inc., Case No. 09-33775; Genmar Tennessee, Inc., Case No. 09-43544; Genmar Transportation, Inc., Case No. 09-43545; Genmar Yacht Group, LLC, Case No. 09-43546; Marine Media, LLC, Case No. 09-43547; Minstar, LLC, Case No. 09-43548; Triumph Boats, Inc., Case No. 09-43550; Triumph Boat Rentals, L.L.C., Case No. 09-43551; VEC Leasing Services, L.L.C., Case No. 09-43552; VEC Management Co., L.L.C., Case No. 09-43553; VEC Technology, Inc., Case No. 09-43554; Windsor Craft Yachts, L.L.C., Case No. 09-43555; Wood Manufacturing Company, Inc., Case No. 09-43556.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the APA, as applicable.

1

4606724_12

Based on the Sale Motion, the arguments of counsel, all the files, records and proceedings herein, the Court being advised in the premises, and for those reasons stated orally and recorded in open court following the close of evidence:

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.  The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The Debtors have articulated good and sufficient reasons for approving the Sale Motion.

C.  Due and proper notice of the Sale Motion was provided and no other or further notice need be provided.

D.  The process for selection of the Stalking Horse (as defined herein) was fair and appropriate under the circumstances and is in the best interests of the Debtors' estates.

E.  The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Break-Up Fee and the Expense Reimbursement, each as set forth in the APA.

F.  The Break-Up Fee and Expense Reimbursement are fair and reasonable and provide a benefit to the Debtors' estates and parties in interest in these cases.

G.  The Debtors' obligation to the Stalking Horse (under the conditions and as set forth in the APA) for the Break-Up Fee and Expense Reimbursement (a) is the result of arm's length negotiations among the parties that were not tainted by self-dealing or manipulation, (b) is reasonably tailored to encourage, rather than hamper, bidding for the Debtors' assets, (c) is an actual

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. 7052.

4606724_12

and necessary cost and expense of preserving the Debtors' assets, within the meaning of section 503(b) of the Bankruptcy Code, (d) is of substantial and commensurate benefit to the Debtors' estates, (e) is reasonable and appropriate, in light of the size and nature of the transaction and the substantial efforts that have been and will be expended by the Stalking Horse and the benefits the Stalking Horse is providing to the Debtors' estates, creditors and all parties in interest, (f) is necessary to ensure that the Stalking Horse will continue to pursue its proposed acquisition of the Acquired Assets, (g) is necessary to establish a bid standard and minimum bid for other bidders and attract additional bidders, and (h) correlates with a maximization of value to the Debtors' estates. The Break-Up Fee and Expense Reimbursement and the circumstances under which they become payable under the APA were material inducements for and conditions of, the Stalking Horse's entry into the APA.

H.    The Bidding Procedures, substantially in the form attached as <u>Exhibit D</u> to the Sale Motion are fair, reasonable and appropriate and represent the best method for maximizing the value of the Debtors' assets.

I.    The entry of this Order is in the best interests of the Debtors and their estates, creditors and interest holders and all other parties in interest herein.

IT IS HEREBY ORDERED:

1.    The Sale Motion is granted to the extent set forth herein.

2.    The transaction contemplated by that certain Asset Purchase Agreement dated as of November 27, 2009, attached to the Sale Motion as <u>Exhibit A</u> among Genmar Holdings, Inc., certain of its affiliates named therein as Sellers and Project Boat Holdings, LLC (together with any of its affiliates or designees for purposes of consummation of the Asset Purchase Agreement, the "Stalking Horse") is designated as the Stalking Horse Bid.

3

4606724_12

3. All objections filed in response to the Sale Motion are resolved as set forth herein and to the extent not resolved, are hereby overruled.

4. The Debtors are authorized to conduct an Auction for the sale of all or substantially all of their assets free and clear of all liens, claims, interests and encumbrances, with all such liens, claims, interests and encumbrances to attach to the sale proceeds in the same order and priority as existed at the commencement of the case, subject to a further hearing and final court approval following the Auction (the "Sale").

5. The Debtors are hereby authorized to offer the assignment of unexpired leases and executory contracts and to determine Cure Amounts in connection with the Sale authorized above, subject to further hearing and final court approval of the assignment or assignments (the "Assignment").

6. The Bidding Procedures, substantially in the form attached as Exhibit D to the Sale Motion, are hereby incorporated herein and approved in their entirety;

7. The Notice of Sale, substantially in the form attached as Exhibit C to the Sale Motion, is hereby approved and the Debtors are authorized and directed to serve said Notice of Sale in the manner and upon the parties specified in the Sale Motion.

8. Pursuant to sections 105, 363, 503 and 507 of the Bankruptcy Code, the Debtors are hereby authorized, empowered and directed to pay an amount equal to the Break-Up Fee or the Expense Reimbursement, as applicable, to the Stalking Horse Bidder in accordance with the terms of the APA and without further order of this Court. The dollar amount of the Break-Up Fee and Expense Reimbursement and the circumstances under which the Break-Up Fee or Expense Reimbursement are payable, as set forth in Section 8.3 of the APA are approved. The Break-Up Fee and Expense Reimbursement shall be allowed as administrative expense claims in each of the

4606724_12

Debtors' Chapter 11 Cases pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, without further order of the Court. In addition, the right of the Stalking Horse Bidder to receive payment of the Break-Up Fee or Expense Reimbursement, as applicable, to the extent payable under the APA, shall be senior to any and all liens, claims, encumbrances, interests and administrative expenses of any of the Debtors' prepetition and postpetition secured lenders (the "Secured Lenders"), including, without limitation, Wells Fargo Bank N.A. and Fifth Third Bank N.A. in their capacities as lenders under that certain Amended and Restated Credit and Security Agreement dated as of November 1, 2007 (as amended, restated, supplemented or otherwise modified from time to time), up to the Carve-Out Amount, or in the case of the consummation of an Alternative Transaction, up to the amount of the Break-Up Fee.

9.   To the extent payable under the APA, the Sellers' obligation to pay the Break-Up Fee or Expense Reimbursement, as applicable, shall survive termination of the APA and shall be payable out of the Debtors' cash or other collateral securing Debtors' obligations to the Secured Lenders, prior to any recovery by such Secured Lenders, up to the Carve-Out Amount, or in the case of the consummation of an Alternative Transaction, up to the amount of the Break-Up Fee.

10.  If the Debtors are required pursuant to the terms of the APA to pay the Break-Up Fee or Expense Reimbursement, the Debtors are hereby authorized, empowered and directed (x) to pay such applicable amount (i) from the proceeds of any Alternative Transaction giving rise to the Debtors' obligation to pay the Break-Up Fee, prior to payment of such proceeds to any and all of the Debtors' Secured Lenders, unsecured creditors, claim holders, equity holders and other parties in interest or (ii) from the Debtors' available cash or proceeds of the Debtors' assets free and clear of all liens, claims, interests, encumbrances and administrative expenses of any and all of the Debtors' Secured Lenders or otherwise, up to the Carve-Out Amount, and (y) to make such payments in

4606724_12

accordance with the time frames and other terms and conditions set forth in the APA. The Debtors' obligation to pay the Break-Up Fee or Expense Reimbursement, as applicable, shall be joint and several, absolute and unconditional and not subject to any defense, claim, counterclaim, offset, recoupment or reduction of any kind whatsoever and shall not be amended, discharged, expunged or released in any respect pursuant to any plan of reorganization for the Debtors. Notwithstanding the Debtors' obligations to pay the Break-Up Fee or Expense Reimbursement, as applicable, prior to payment of amounts otherwise due to the Secured Lenders, the Debtors shall remain fully obligated to repay all obligations to the Secured Lenders, without limitation or reduction of any kind, and all such obligations (and all liens and documents related thereto) shall remain in full force and effect and fully enforceable by the Secured Lenders.

11. This Court will hold a hearing on or after 9:30 a.m. January 13, 2009 to consider final approval of the Sale and Assignment. The Sale Approval Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

12. Objections, if any, to the Sale Motion must be served and filed in accordance with Local Rule 9006-1(c).

13. The procedures for determining Cure Amounts through the Closing Date of the Sale of the Acquired Assets in accordance with the APA (including amounts of compensation for actual pecuniary loss) and the deadline for objections to the assumption and/or assignment of the Acquired Contracts and Assumed Leases set forth herein are approved.

14. At least twenty (20) days prior to the Sale Approval Hearing, the Debtors shall distribute to non-Debtor parties to any Acquired Contracts or Assumed Leases the Initial

4606724_12

Contract and Lease Notice, setting forth a list of executory contracts and unexpired leases the Debtors intend to assume and assign to the Stalking Horse in connection with the Sale including any Cure Amount necessary to compensate such non-Debtor parties for actual pecuniary loss associated with such Acquired Contract or Assumed Lease.

15.　In the event Debtors' proposal regarding assumption and assignment of leases or contracts changes, whether due to change by the Stalking Horse or a Prevailing Bidder or Back-Up Bidder or for any other reason, Debtors shall promptly give notice of such change to the affected counter-party to the contract or leases (the "Notice of Change"). The Debtors' Notice of Change shall be given at least four days (including weekends and holidays) prior to the date set for any hearing on the Sale Motion or any subsequent hearing. In the event of any change in the identity of the assignee after the Auction, such notice shall be given as promptly as possible after the Auction.

16.　The non-Debtor parties to the Acquired Contracts and Assumed Leases set forth on the Initial Contract and Lease Notice shall have until three days before the Sale Approval Hearing at 4:00 p.m. prevailing Central Time (the "Contract Objection Deadline"), which deadline may be extended by the Debtors, with written consent of Stalking Horse or the Prevailing Bidder, to object to (i) the proposed assumption and assignment of such Acquired Contracts or Assumed Leases in connection with the Sale and/or (ii) the proposed Cure Amounts set forth on the Initial Contract and Lease Notice; provided, however, if the Debtors otherwise provide a Notice of Change to a non-Debtor party to an Acquired Contract or Assumed Lease, except where such proposed change in treatment was upon mutual agreement of the parties, the non-Debtor party shall have until one day prior to the Sale Approval Hearing (the "Amended Contract Objection Deadline").

4606724_12

17. Any party objecting to (i) the proposed assumption and assignment of an Acquired Contract or Assumed Lease to which it is a non-Debtor counterparty and/or (ii) the proposed Cure Amounts set forth on the Initial Contract and Lease Notice shall be required to file and serve such objection (each, a "Contract Objection"), in writing, setting forth with specificity any and all cure obligations that the objecting party assets must be cured or satisfied in respect of the applicable Acquired Contract or Assumed Lease and/or all objections to the potential assumption and assignment of such agreements, together with all documentation supporting such cure claim or objection, so that the objection is received no later than 4:00 p.m. prevailing Central Time on the Contract Objection Deadline or the Amended Contract Objection Deadline, as applicable. If such objection is timely filed, the Bankruptcy Court shall hear any such objection and determine the amount of any disputed Cure Amount or objection to assumption and assignment not settled by the parties at the Sale Approval Hearing.

18. Notwithstanding the inclusion of an executory contract or unexpired lease on any list of Acquired Contracts and Assumed Leases the Stalking Horse or Prevailing Bidder, as applicable, shall have authority, in its sole discretion, to remove any contract or lease from the list of Acquired Contracts and Assumed Leases either (i) at any time prior to the Court's entry of an order approving the assumption and assignment of such executory contract or unexpired lease, or (ii) within five (5) business days after the Bankruptcy Court sustains, in whole or in part, such non-Debtor party's objection to the assumption and assignment or the proposed cure amount; in either such case, the Debtor shall not assume and assign such Acquired Contracts or Assumed Leases to the party who removed such contract or lease from such list.

19. In the event that no Contract Objection is timely filed with respect to an Acquired Contract or Assumed Lease, the applicable non-Debtor party shall be deemed to consent to the

8

Cure Amount proposed by the Debtors and shall be forever enjoined and barred from seeking an additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Prevailing Bidder on account of the assumption and assignment of such executory contract or unexpired lease and shall be deemed to have consented to the proposed assignment and assumption. In addition, if no timely Contract Objection is filed, the Prevailing Bidder shall enjoy all the rights and benefits under all Acquired Contracts and Assumed Leases, as applicable, without the necessity of obtaining any party's written consent to the Debtors' assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment.

20. The Stalking Horse shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to terminate or otherwise enforce any of its rights under the APA in accordance with the terms of the APA. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

21. The Debtors are authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established under this Order.

22. The Stalking Horse and/or the Prevailing Bidder are hereby deemed to be parties-in-interest under 11 U.S.C. § 1109(b) for purposes of this Sale Motion, the Bidding Procedures, the Auction, the Sale Approval Hearing, any Contract Objection, and any other hearing or matters arising in connection with the APA and the Sale.

9

4606724_12

23. This Order shall be binding upon and inure to the benefit of the Stalking Horse, Prevailing Bidder and its affiliates, successors and assigns, and the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors, whether in these cases or subsequent bankruptcy cases or upon dismissal of any of these cases.

24. As provided by Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon its entry.

25. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Break-Up Fee, the Expense Reimbursement, the Bidding Procedures and the implementation of this Order.

Dated: December 14 , 2009

/e/ Dennis D. O'Brien
Dennis D. O'Brien
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *12/14/2009*
Lori Vosejpka, Clerk, by SKM