# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                                                          Chapter 11

Genmar Holdings, Inc., et al.[1]                                          Case No. 09-43537

Debtors.                                              Jointly Administered

---

**ORDER  (I) AUTHORIZING DEBTORS, TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO BUYER IN ACCORDANCE WITH ASSET PURCHASE AGREEMENT; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND (III) GRANTING OTHER AND FURTHER RELIEF**

---

The Sale Motion[2] of above-referenced Debtors for Orders (I) Authorizing Debtors, to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Authorizing Assumption and Assignment of Unexpired Leases and Executory Contracts; (III) Approving Bidding Procedures and Auction; (IV) Approving Break-Up Fee and Expense Reimbursement; (V) Approving Form and Manner of Notice; and (VI) Scheduling Further Hearing ("Sale Motion") came before the undersigned on January 13, 2010.  Appearances were noted on the record.

---

[1]     Jointly administered debtors: Genmar Holdings, Inc., Case No. 09-43537; Carver Industries, L.L.C., Case No. 09-43538; Carver Italia, L.L.C., Case No. 09-33773; Carver Yachts International, L.L.C., Case No. 09-33774; Genmar Florida, Inc., Case No. 09-43539; Genmar Industries, Inc., Case No. 09-43540; Genmar IP, LLC, Case No. 09-43541; Genmar Manufacturing of Kansas, Inc., Case No. 09-43542; Genmar Michigan, L.L.C., Case No. 09-43543; Genmar Minnesota, Inc., Case No. 09-33775; Genmar Tennessee, Inc., Case No. 09-43544; Genmar Transportation, Inc., Case No. 09-43545; Genmar Yacht Group, LLC, Case No. 09-43546; Marine Media, LLC, Case No. 09-43547; Minstar, LLC, Case No. 09-43548; Triumph Boats, Inc., Case No. 09-43550; Triumph Boat Rentals, L.L.C., Case No. 09-43551; VEC Leasing Services, L.L.C., Case No. 09-43552; VEC Management Co., L.L.C., Case No. 09-43553; VEC Technology, Inc., Case No. 09-43554; Windsor Craft Yachts, L.L.C., Case No. 09-43555; Wood Manufacturing Company, Inc., Case No. 09-43556.

[2]     All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the APA (as defined in paragraph I hereof) or the Sale Motion, as applicable.

Based on the Sale Motion, the arguments of counsel, all the files, records and proceedings herein, the Court being advised in the premises, and for those reasons stated orally and recorded in open court following the close of evidence:

**IT IS HEREBY FOUND THAT**:[3]

A.     This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1070-1.

B.     Venue of these cases ("Chapter 11 Cases") in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

C.     Determination of the Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).  The statutory predicates for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014.

D.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

E.     An initial hearing (the "Sale Procedures Hearing") on the Sale Motion was held by this Court on December 8, 2009, and, on that date, the Court entered an Order (I) Authorizing Debtors to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Approving Bidding Procedures and Auction; (III) Approving Break Up Fee and Expense

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  <u>See</u> Bankruptcy Rule 7052.

Reimbursement; (IV) Approving Form and Manner of Notice (V) Scheduling Further Hearing and (VI) Granting Certain Related Relief ("Sale Procedures Order"). The Debtors and the Buyer have complied with the Sale Procedures Order in all respects.

F.     Pursuant to the Sale Procedures Order, the Debtors timely received **7** Qualified Bids on or before January 4, 2010, and an auction (the "Auction") was conducted on January 7 and 8, 2010 by the Debtors in consultation with their investment banker, Houlihan, Lokey, Howard & Zukin Capital, Inc. ("Houlihan"). The Sale Procedures Order set January 13, 2010 as the date of the hearing for an order to approve, among other things, the sale of the Acquired Assets ("Sale Approval Hearing").

G.     On November 27, 2009, the Debtors filed the Sale Motion and served copies of the Sale Motion in compliance with Local Rule 9013-3(a)(2). On December 15, 2009 and December 21, 2009, in compliance with the Sale Procedures Order, the Debtors served the Notice of Sale and Bidding Procedures on each entity listed on the creditor matrix maintained pursuant to Local Rule 1007-2, to entities identified in Local Rule 9013-3(a)(2), to the Counterparties (as defined herein), to each shareholder (either directly or through the shareholder's proxy) and to each entity identified by Houlihan as a potential purchaser. On December 23, 2009, the Debtors served the Notice Concerning Unexpired Leases and Executory Contracts on the Counterparties. On December 29, 2009, the Debtors filed the first supplement to the Notice Concerning Unexpired Leases and Executory Contracts (the "First Supplemental Contract Notice") and served the same on all affected Counterparties. On January 4, 2010, the Debtors filed the second supplement to the Notice Concerning Unexpired Leases and Executory Contracts (the "Second Supplemental Contract Notice") and served the same on all affected Counterparties. On January 8, 2010, the Debtors filed and served a Notice of (I) Change

Regarding Contracts and Leases to be Assumed and Assigned and (II) Identity of Prevailing and Back-Up Bidders (the "January 8, 2010 Change Notice") pursuant to the Sale Procedures Order and in full compliance therewith.

H.      The Debtors published notice of the Sale Motion, the Bidding Procedures, the hearing(s) seeking approval of the Sale Motion, the time and place of the proposed Auction of the Acquired Assets, and the time for filing objections to the Sale Motion, in the Minneapolis Star Tribune on December 17, 2009 and the Wall Street Journal on December 18, 2009.

I.      Based upon the foregoing and the certificates of service and publication filed with the Court, due, proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Procedures Hearing, the Auction, the Sale Approval Hearing, the sale (the "Sale") of the Acquired Assets to J & D Acquisitions, LLC (collectively, with its designated affiliates, as applicable, the "Buyer") pursuant to that certain Asset Purchase Agreement by and among Genmar Holdings, Inc., Genmar IP, LLC, Genmar Yacht Group, LLC, Carver Industries LLC, and J & D Acquisitions, LLC filed as of January 12, 2010 (the "APA"), and the proposed assumption and assignment of the Assumed Leases and Acquired Contracts has been provided in accordance with section 102(1), section 363(b) and section 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 2002-4, 6004-1, 9013-2 and 9013-3, and in compliance with the Sale Procedures Order.  No other or further notice of the Sale Motion, the Sale Procedures Hearing, the Auction, the Sale Approval Hearing, the Sale, the proposed assumption and assignment of the Assumed Leases and Acquired Contracts or the entry of this order (the "Sale Approval Order") is required or necessary.

J.      In accordance with the Sale Procedures Order, on December 15 and December 21, 2009, the Notice of Sale and Bidding Procedures was served upon all non-Debtor counterparties

to the Debtors' executory contracts and unexpired leases, including all of the non-Debtor parties to the Assumed Leases and Acquired Contracts (collectively, the "Counterparties"). The Sale Procedures Order provided that the non-Debtor parties to the Acquired Contracts and Assumed Leases set forth on the Initial Contract and Lease Notice had until three days before the Sale Approval Hearing (the "Contract Objection Deadline") to file an objection to (i) the proposed assumption and assignment of such Acquired Contracts or Assumed Leases and/or (ii) the proposed Cure Amounts set forth on the Initial Contract and Lease Notice or any supplement thereto (a "Contract Objection"). The Sale Procedures Order further provided that if the Debtors served a Notice of Change (as defined in the Sale Procedures Order) to a non-Debtor Party to an Acquired Contract or Assumed Lease, except where such proposed change in treatment was upon mutual agreement of the parties, the non-Debtor party would have until one day prior to the Sale Approval Hearing to file a Contract Objection (the "Amended Contract Objection Deadline"). Without limitation, the First Supplemental Contract Notice, the Second Supplemental Contract Notice and the January 8, 2010 Change Notice each constituted proper and timely served "Notices of Change," as that term is used in the Sale Procedures Order. To the extent that any party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn or overruled. To the extent that any party did not timely file a Contract Objection by the Contract Objection Deadline or Amended Contract Objection Deadline, as applicable, such party shall be deemed to have consented to (i) the assumption and assignment of the Acquired Contract or Assumed Lease, as applicable, and (ii) the proposed Cure Amount set forth on the Initial Contract and Lease Notice or any supplement thereto, including without limitation any Notice of Change.

K.     All parties in interest, including, without limitation, all parties who claim an interest in, a claim against or lien upon the Acquired Assets, all creditors and shareholders of the Debtors, all federal, state and local environmental authorities, all asbestos, silica and other tort claimants, and all U.S. or foreign federal, state and local governmental taxing authorities who have, or as a result of the Sale of Acquired Assets may have, claims, contingent or otherwise against the Debtors, have been given a reasonably opportunity to object and be heard regarding the relief requested in the Sale Motion and the Sale. All objections to the Sale Motion and the Sale were resolved, withdrawn or overruled at the Sale Approval Hearing.

L.     As demonstrated by the testimony and/or other evidence proffered or adduced at the Sale Approval Hearing: (a) the offer from the Buyer embodied in the APA constitutes the highest and best offer for the Acquired Assets; (b) the Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Sale Procedures Order; (c) the auction process set forth in the Sale Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets; and (d) the Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.

M.     In accordance with the Sale Procedures Order, the Bid Procedures and the auction procedures adopted by Houlihan for the Auction, the Buyer was deemed a Qualified Bidder (as defined in the Bidding Procedures) and the Buyer's bid for the Acquired Assets (the "Buyer's Bid") was deemed a Qualified Bid (as defined in the Bidding Procedures) and was eligible to participate at the Auction.  Buyer's status as an "insider" of Debtors (as such term is defined in the Bankruptcy Code) was fully disclosed to Debtors' representatives and all other participants.

Buyer is not an officer or directoe of any of the Debtors and plays no role in the current management of the Debtors.

N.     The APA constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the APA constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

O.     The APA represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of the Chapter 11 Cases.  No other Person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer.

P.     The consideration provided by the Buyer for the Acquired Assets (i) exceeds the liquidation value of the Acquired Assets and (ii) is fair and reasonable, and constitutes fair consideration and reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  Approval of the APA and the Sale of the Acquired Assets in accordance with this Order and the APA are in the best interests of the Debtors' estates, creditors and other parties in interest.  The terms of the APA were negotiated at arms'-length and are fair and reasonable.

Q.     The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtors nor the Buyer is entering

into the transactions contemplated by the APA fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

R.      The Debtors have demonstrated compelling circumstances, good, sufficient and sound business purposes for the Sale of the Acquired Assets pursuant to section 363(b) of the Bankruptcy Code outside of a plan of reorganization and that the Sale of the Acquired Assets pursuant to the APA constitutes a reasonable and sound exercise of the Debtors' business judgment, in that, among other things:

a.      To maximize the value of the Acquired Assets, a sale must be accomplished within the time constraints set forth in the APA, the Sale Procedures Order and the Bidding Procedures because the value of the Acquired Assets may decrease during the time it would otherwise take to propose and confirm a plan of reorganization, and, in any event, a plan may not be necessary or confirmable in these Chapter 11 Cases;

b.      Claims against the Debtors' estates will be minimized as a result of the prompt consummation of a Sale of Acquired Assets.  The Buyer will be assuming certain Assumed Liabilities.  To the extent that the Buyer assumes the Assumed Liabilities, the holders of such Assumed Liabilities will have no further recourse against the Debtors or their estates and the rights of the holders of such claims to pursue the Debtors or their estates for liability arising from such Assumed Liabilities will be extinguished; and

c.      The Sale does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to:  (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

S.      Each of the Debtors, as applicable, (i) has full corporate or other power to execute, deliver and perform its obligations under the APA and all other documents contemplated thereby or entered into in connection therewith, and the Sale of the Acquired Assets by the Debtors has, in each case, been duly and validly authorized by all necessary corporate or similar action, and (ii) has taken all action necessary to authorize and approve the APA and such other documents contemplated thereby and the consummation by them of the

NY\1607191.3

transactions contemplated thereby or entered into connection therewith. No further approvals (including but not limited to third-party approvals), other than those expressly provided for in the APA, if any, are required for the Debtors to consummate such transactions.

T. The Debtors are authorized and directed to sell and transfer the Acquired Assets free and clear of all Liens, Claims, Encumbrances and Interests (as that term is defined in paragraph 9 hereof) because they have satisfied the requirements of section 363(f) of the Bankruptcy Code.

U. Except for the Assumed Liabilities and except as otherwise expressly provided in the APA, the transfer of the Acquired Assets to the Buyer, and assumption and assignment to the Buyer of the Assumed Leases and Acquired Contracts, will not subject the Buyer to any Lien, Claim, Encumbrance and Interest whatsoever with respect to the operation of the Debtors' businesses prior to the Closing Date, including, without limitation, any liability arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance arrangements, change in control agreements or other similar agreements to which any Debtor is or was a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Debtors, (iii) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act,

9

(iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environmental liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other environmental, health and safety requirements, (vi) any bulk sales or similar law, (vii) any litigation by or against the Debtors and (viii) the laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including without limitation, any theory of equitable law, including without limitation, any theory of antitrust or successor or transferee liability.

V.     Those holders of Liens, Claims, Encumbrances and Interests against the Debtors, their estates or in respect of any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. The Debtors have met the requirements, in each instance, of one or more of the standards set forth in section 363(f) of the Bankruptcy Code with respect to all other holders of Liens, Claims, Encumbrances and Interests as such holders will have their Liens, Claims, Encumbrances and Interests, if any, in each instance against the Debtors, their estates or in respect of any of the Acquired Assets, attach to the net cash proceeds of the Sale in the same order of priority, with the same validity, force and effect that such Liens, Claims, Encumbrances and Interests had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

W.     The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors', their estates and their creditors, if the sale of the Acquired Assets to the Buyer, the assumption of liabilities and

obligations as set forth in the APA by the Buyer and the assignment of the Assumed Leases and Acquired Contracts were not free and clear of all Liens, Claims, Encumbrances and Interests including, but not limited to, successor liability.

X.     The APA was negotiated, proposed and entered into by the parties in good faith, from arms' length bargaining positions and without collusion.  The Debtors have followed in good faith the procedures for notice and sale of the Acquired Assets as set forth in the Sale Procedures Order.  Neither the Debtors nor the Buyer have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n) of the Bankruptcy Code to the Sale and the transactions contemplated by the APA, and the aggregate price paid by Buyer for the Acquired Assets was not controlled by any agreement among the bidders.  The Buyer is entitled to the full protections afforded under section 363(m) of the Bankruptcy Code because (a) except as set forth in the Sale Procedures Order, the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (b) the Buyer complied with the provisions in the Sale Procedures Order; (c) the Buyer agreed to subject the Buyer's Bid to the competitive bidding procedures set forth in the Sale Procedures Order; (d) the Buyer in no way induced or caused the chapter 11 filings by the Debtors; (e) all payments to be made by the Buyer in connection with the Sale have been disclosed; and (f) the negotiation and execution of the APA was at arms' length and in good faith.

Y.     Houlihan acted as the Debtors' investment banker for the sale of the Acquired Assets and worked with the Debtors and the Buyer to negotiate and finalize the APA and the conveyance of the Acquired Assets to the Buyer pursuant hereto.  To the extent that Houlihan or any other Person is entitled to any fees in connection with negotiation and consummation of the

Sale, Buyer shall not be liable in any way for such fees. The Debtors and their estates shall be solely liable to Houlihan or any other Person for any such fees.

Z. In the absence of a stay pending appeal if the Closing occurs at any time after entry of this Sale Approval Order, then, with respect to the APA, the Buyer, as a purchaser in good faith of the Acquired Assets, shall be entitled to the protections of section 363(m) of the Bankruptcy Code if this Sale Approval Order or any authorization contained herein is reversed or modified on appeal.

AA. The Debtors are the sole and lawful owners of the Acquired Assets. Effective as of the Closing, the transfer of the Acquired Assets is or will (i) constitute legal, valid and effective transfer of property of the Debtors' estates to the Buyer, as more particularly set forth in the APA, and (ii) vest the Buyer with all right, title, and interest of the Debtors and the Debtors' estates in and to the Acquired Assets free and clear of all Liens, Claims, Encumbrances and Interests under sections 363(f) and 105 of the Bankruptcy Code.

BB. Adequate notice and opportunity to be heard was provided to parties to executory contracts and unexpired leases to be assumed and assigned pursuant to this Sale Approval Order. Further, parties received adequate notice and an opportunity to object to the amount of any cure owed by the Debtors' estates on account of any executory contract or unexpired lease to be assumed and assigned to the Buyer under the APA.

CC. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign those Assumed Leases and Acquired Contracts, as defined in the APA and described on Schedules 1.1(b) and 1.1(d) to the APA, including any amendments or modifications to such Schedules as agreed to by the Debtors and Buyer pursuant to the APA, in connection with the consummation of the Sale of Acquired Assets, and the assumption and

assignment of the Assumed Leases and Acquired Contracts is in the best interests of the Debtors, their estates, their creditors and their equityholders. The Assumed Leases and Acquired Contracts being assigned to the Buyer as set forth in the APA are an integral part of the Debtors' businesses being purchased by the Buyer and, accordingly, such assumption and assignment of Assumed Leases and Acquired Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

DD.    All amounts which the Debtors or Buyer are required to pay in connection with the assumption and assignment of the Assumed Leases and Acquired Contracts are as follows: The Debtors have obtained a waiver or paid or will pay all amounts, if any (the "Cure Amounts"), due or owing under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to (i) cure any defaults under each Assumed Lease and Acquired Contract that is not deemed an Excluded Contract or Excluded Lease or otherwise removed from Schedule 1.1(b) or Schedule 1.1(d) in accordance with Section 1.5 of the APA and (ii) pay all actual or pecuniary losses that have resulted from such defaults (except with respect to those liabilities expressly assumed by Buyer pursuant to the APA). Accordingly, the Debtors have satisfied the requirements of sections 365(b)(1)(A) and (B) and section 365(f)(2)(A) of the Bankruptcy Code. The Assumed Leases and Acquired Contracts are unexpired leases or executory contracts within the meaning of the Bankruptcy Code. The promises of Buyer and the Debtors to pay the Cure Amounts and the Buyer's promise to perform the obligations under the Assumed Leases and Acquired Contracts after the Closing Date shall constitute adequate assurance of the Buyer's future performance under the Assumed Leases and Acquired Contracts being assigned to it within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

NY\1607191.3

EE.     The assumption and assignment of the Assumed Leases and Acquired Contracts is integral to the APA and is in the best interests of the Debtors and their estates, creditors and equityholders and represents the exercise of the Debtors' sound business judgment.  Any objections to the assumption and assignment of any of the Assumed Leases and Acquired Contracts to the Buyer are hereby overruled.  Any objections to the Cure Amounts associated with such Assumed Leases and Acquired Contracts are overruled, resolved or withdrawn as set forth herein.  To the extent that any counterparty to an Assumed Lease or Acquired Contract failed to timely object to (i) the proposed assumption and assignment of the applicable Assumed Lease or Acquired Contract or (ii) the Cure Amount associated with the applicable Assumed Lease or Acquired Contract, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Assumed Lease or Acquired Contract to the Buyer.

FF.     Unless such liabilities expressly constitute Assumed Liabilities of the Buyer pursuant to the APA or this Sale Approval Order, the transfer of the Acquired Assets does not and will not subject the Buyer to any liability for Liens, Claims, Encumbrances and Interests under the laws of the United States, any state, commonwealth, territory or possession thereof or the District of Columbia applicable to such transactions by reason of such transfer of the Acquired Assets.

GG.     Neither the Buyer nor its affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to: (1) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the APA); (2) have, *de facto* or otherwise, merged with or into any of the Debtors; (3) be a mere continuation of the Debtors or their estates (and there is no continuity of

enterprise between the Buyer and the Debtors); or (4) be holding itself out to the public as a continuation of the Debtors. The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the APA with respect to the Assumed Liabilities.

HH.    The Debtors have good, valid and marketable title to all of the Acquired Assets. At Closing, the Acquired Assets shall be transferred free and clear of any and all Liens, Claims, Encumbrances and Interests. All of the Acquired Assets are, or will on the date of Closing, be owned by the Debtors and will be transferred under the APA.

**IT IS HEREBY ORDERED:**

## General Provisions

1.     The Sale Motion is hereby granted to the extent provided herein.

2.     All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, including all reservations of rights included therein, which are not otherwise provided for by this Sale Approval Order, are overruled on the merits.

3.     Notice of the Sale Approval Hearing was fair and equitable under the circumstances and complied in all respects with the Sales Procedures Order and with sections 102(1), 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 2002-4, 6004-1, 9013-2 and 9013-3.

## Approval of the APA

4.     Each and every term of the APA and all other ancillary documents is hereby approved.

5.     The Sale of the Acquired Assets to Buyer pursuant to the APA is hereby authorized under sections 363 and 365 of the Bankruptcy Code and the entry of the Debtors into

the APA is hereby approved. The proceeds from the sale of the Acquired Assets as provided in the APA shall be paid directly to the Administrative Agent (as defined in the Sale Motion) for the Secured Lender Parties (as defined in the Sale Motion) by wire transfer. To the extent that such proceeds exceed the obligations owed by the Debtors to the Secured Lender Parties, such excess proceeds shall be paid directly to the Debtors by wire transfer.

6.     The Debtors, through any corporate officer, are authorized and directed to execute and deliver, and empowered to fully perform under, consummate, implement and close the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement such agreements, including taking any actions that otherwise would require further approval by shareholders or the Debtors' boards of directors (or any equivalent thereof) (without the need of obtaining such approvals) and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, any or all of the Acquired Assets, or as may be necessary or appropriate to the performance of the obligations of the Debtors under the APA, including effectuating amendments to the APA in furtherance thereof. All Persons necessary to effect the transactions contemplated by the APA are hereby ordered to execute any and all documents necessary to effect such transactions. If any Person fails to comply with the provisions of this paragraph 6 prior to the Closing Date, such Person (or Persons, as the case may be) shall nonetheless be deemed bound to any and all documents necessary to effect the transactions contemplated under the APA.

7.     The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy

Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Approval Order.

8.     The Buyer shall have no obligation to proceed with the Closing until all conditions precedent in the APA to its obligation to do so have been met, satisfied or waived in accordance with the terms of the APA.

### **Transfer of the Acquired Assets**

9.     Pursuant to 11 U.S.C. §§ 105, 363 and 365, the Acquired Assets shall be transferred to the Buyer, in accordance with the APA, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and shall vest Buyer with title to the Acquired Assets, free and clear of all Liens (as defined in the section 101(37) of the Bankruptcy Code, including, but not limited to, mechanics' materialmens' and other consensual or statutory liens), Claims (as defined in section 101(5) of the Bankruptcy Code) and Encumbrances (as defined in the APA), including Claims of equity security holders (as defined in Section 101(17) of the Bankruptcy Code), security interests, financing statements, mortgages, demands, guaranties, options, rights (including, but not limited to, rights of first refusal, rights of way and rights of recovery), contractual commitments, pledges, restrictions (including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Acquired Assets and all debts arising in any way in connection with any acts of the Debtors), easements, causes of action, counterclaims, defenses, personal injury and other tort claims (including without limitation (i) with respect to exposure to asbestos, crystalline silica or other hazardous materials or (ii) with respect to any products sold by the Debtors or their affiliates), covenants, defects, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, conditional sale or other title retention agreements,

options, contracts, offsets, recoupment, rights of recovery, judgments, orders, and decrees of any court or governmental entity, interests, successor, transferee, products liability, environmental, tax (including but not limited to taxes arising under or out of, in connection with, or in any way relating to Acquired Assets or the operation of the Debtors' businesses prior to the Closing Date) and other liabilities, obligations and claims of any kind or nature, including, without limitation, any claims arising under the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Workers Adjustment Restraining and Notification Act, 29 U.S.C. § 2101, et seq., or any collective bargaining agreements or other applicable law, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether arising in connection with the transactions authorized by this Sale Approval Order, and whether imposed by agreement, understanding, law, equity or otherwise, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown (the foregoing collectively referred to as "Liens, Claims, Encumbrances and Interests" herein, *provided, however*, the term "Liens, Claims, Encumbrances and Interests" shall not include Assumed Liabilities), except as otherwise set forth in the APA. All such Liens, Claims, Encumbrances and Interests released, terminated and discharged as to the Acquired Assets shall attach to the sale proceeds with the same validity, force and effect which they now have as against the Debtors, their estates or the Acquired Assets. The sole and exclusive right and remedy available to purported creditors, equityholders, including, without limitation,

equityholders of the Debtors, holders of any other Liens, Claims, Encumbrances and Interests, and parties in interest shall be a right to assert Liens, Claims, Encumbrances and Interests against the Debtors' estates.

10.     All persons and entities (including, but not limited to, the Debtors, the Committee creditors, equityholders, including, without limitation, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials) and their respective successors or assigns and any trustees thereof, shall be and are hereby permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Acquired Assets or the Buyer with respect to any Liens, Claims, Encumbrances and Interests of any kind and nature with respect to the Debtors or the Acquired Assets or the operations of the Debtors prior to the Closing Date.  If the proposed Sale fails to close for any reason, then Liens, Claims, Encumbrances and Interests shall continue against the Acquired Assets unaffected by this Sale Approval Order.  As of the Closing, the Buyer shall have any and all rights, claims, defenses and offsets held by Debtors and the estates with respect to Assumed Liabilities.

11.     Except for Assumed Liabilities as set forth in the APA, the transfer of the Acquired Assets pursuant to this Sale Approval Order shall not subject the Buyer to any liability with respect to any obligations incurred in connection with, or in any way related to the Acquired Assets, prior to the date of Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability.  The sole and exclusive right and remedy available to any Person who asserts any Liens, Claims, Encumbrances and

Interests or other liability with respect to any obligations incurred in connection with, or in any way related to the Acquired Assets shall be a right to assert such Liens, Claims, Encumbrances and Interests or other liability against the Debtors' estates.

**Assumption and Assignment to Buyer of Assumed Leases and Acquired Contracts**

12.     Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Sale, the Debtors' assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the APA, of the Assumed Leases and Acquired Contracts is approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f)(2) with respect thereto are deemed satisfied.

13.     The Debtors are authorized and directed in accordance with 11 U.S.C. §§ 105(a) and 365 to (a) assume and assign to Buyer, effective upon the Closing of the Sale, the Assumed Leases and Acquired Contracts free and clear of all Liens, Claims, Encumbrances and Interests, other than the Assumed Liabilities, and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Leases and Acquired Contracts to the Buyer; *provided, however,* that (i) prior to the Closing or, in the case of Disputed Contracts, at any time on or prior to the fifth Business Day after the Cure Amounts for such Disputed Contracts are finally determined, the Buyer may identify any Assumed Lease or Acquired Lease as one that the Buyer no longer desires to have assigned to it and such contract shall be deemed to be an Excluded Asset and an Excluded Contract or Excluded Lease, and (ii) Disputed Contracts shall be assumed and assigned free and clear of all Liens, Claims, Encumbrances and Interests only in accordance with the procedures set forth in Section 1.5 of the APA.

14.     With respect to the Assumed Leases and Acquired Contracts: (a) each Assumed Lease and Acquired Contract, as applicable, is an unexpired lease or executory contract under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Assumed Leases and Acquired Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Assumed Lease and Acquired Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Lease or Acquired Contract that prohibit or condition the assignment of such Assumed Lease or Acquired Contract or allow the party to such Assumed Lease or Acquired Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Lease or Acquired Contract, upon the assignment of the same, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of each Assumed Lease and Acquired Contract have been satisfied; (e) the Assumed Leases and Acquired Contracts shall be transferred and assigned to the Buyer and, following the Closing, shall remain in full force and effect for the benefit of Buyer, notwithstanding any provision in any such Assumed Lease or Acquired Contract (including those of the type described in sections 365(b)(2), (c)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Leases and Acquired Contracts after such assignment to and assumption by Buyer; and (g) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested in all right, title and interest of each Assumed Lease and Acquired Contract.

15.     Each of the Assumed Leases and Acquired Contracts shall, upon assignment to the Buyer, be deemed to be valid and binding on the Buyer and in full force and effect and enforceable in accordance with its terms, and following such assignment, the Debtors and the estates shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any liability for any breach of such Assumed Leases and Acquired Contracts occurring after such assignment.

16.     Each non-Debtor party to an Assumed Lease and Acquired Contract is hereby barred and enjoined from asserting against the Buyer, the Debtors or the Debtors' estates (a) any default existing as of the date of the Sale Hearing if such default was not raised or asserted in a timely manner prior to the entry of the Sale Approval Order, (b) any objection to the assumption and assignment of such non-Debtor party's Assumed Lease or Acquired Contract or the Cure Amount, if any, of which the non-Debtor party was given notice prior to the Sale Hearing or (c) any assignment fee, breach, claim or pecuniary loss existing as of the Closing Date or arising by reason of the Closing.  The assignment of each such Assumed Lease and Acquired Contract to the Buyer will not cause a default or otherwise allow the non-Debtor party thereto to terminate or adversely affect the Buyer's rights thereunder.  Unless expressly provided in the APA, in no event shall the Buyer be liable for any Cure Amounts or pre-Closing liabilities arising from or related to any Assumed Lease or Acquired Contract with the exception of the Assumed Liabilities.

17.     All defaults or other obligations of the Debtors under the Assumed Leases and Acquired Contracts arising or accruing prior to the satisfaction of the terms and conditions of the APA and the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Buyer or the Debtors (in accordance with the APA) by payment of the applicable Cure Amounts (such

amounts as established in accordance with the Sale Procedures Order and the APA or by mutual agreement among the Debtors, the Buyer and the non-Debtor party to such Assumed Lease or Acquired Contract) at the Closing or as soon thereafter as practicable, including with respect to a Disputed Contract that is ultimately assumed, as soon as practicable after the determination of the Cure Amount for such Disputed Contract, and the Buyer shall have no other liability or obligation with respect to defaults, breaches or other obligations incurred, arising or accruing prior to the Closing Date, except as otherwise expressly provided herein or in the APA. The payment of the applicable Cure Amounts, in accordance with the APA, shall (a) effect a cure of all defaults existing thereunder as of the date that such Assumed Lease or Acquired Contract is assumed and (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default. To the extent that any counterparty to an Assumed Lease or Acquired Contract did not object timely to the assignment of such Assumed Lease or Acquired Contract and/or to the applicable Cure Amount in accordance with the Sale Procedures Order, such counterparty is deemed to have consented to such Cure Amount and the assignment of its respective Assumed Lease or Acquired Contract to the Buyer.

18.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Buyer or the Debtors as a result of the assumption, assignment and/or transfer of any Assumed Lease or Acquired Contract.

19.     The Buyer's promise to pay the Cure Amounts (to the extent obligated to do so under the APA) and to perform the obligations under the Assumed Leases and Acquired Contracts after the Closing Date shall constitute adequate assurance of its future performance under the Assumed Leases and Acquired Contracts being assigned to it within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

20.     Upon assignment of the Assumed Leases and Acquired Contracts to the Buyer at or subsequent to the Closing, no default shall exist under any Assumed Lease or Acquired Contract and no non-Debtor party to any Assumed Lease or Acquired Contract shall be permitted to declare a default by or against the Buyer under such Assumed Lease or Acquired Contract or otherwise take action against the Buyer as a result of such assignment or any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Assumed Lease or Acquired Contract.  Upon entry of this Order and assumption and assignment of the Assumed Leases and Acquired Contracts, the Buyer shall be deemed in compliance with all terms and provisions of the Assumed Leases and Acquired Contracts.

21.     Notwithstanding anything to the contrary in this Order, no executory contract or unexpired lease will be assumed and assigned pursuant to this Order until the Closing.

22.     The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Assumed Lease or Acquired Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Assumed Leases and Acquired Contracts.

### Additional Provisions

23.     The transaction contemplated by the APA is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer.  The Buyer is a purchaser in good faith of the Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

NY\1607191.3

24.     The consideration provided by the Buyer for the Acquired Assets under the APA (i) shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the other laws of the United States, any state, territory, possession or the District of Columbia and (ii) is fair and reasonable and may not be avoided under section 363(n) or any other provision of the Bankruptcy Code, or otherwise.

25.     Neither the Buyer nor its affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to: (1) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the APA), including a "successor employer" for the purposes of the Internal Revenue Code of 1986 or the Employee Retirement Income Security Act of 1974; (2) have, *de facto* or otherwise, merged with or into any of the Debtors; (3) be a mere continuation of the Debtors or their estates (and there is no continuity of enterprise between the Buyer and the Debtors); or (4) be holding itself out to the public as a continuation of the Debtors.

26.     Each holder of Liens, Claims, Encumbrances and Interests in, against or upon the Acquired Assets is hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release such holder's Liens, Claims, Encumbrances and Interests in, against or upon the Acquired Assets, if any, as such Liens, Claims, Encumbrances and Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing any purported Liens, Claims, Encumbrances and Interests in, against or upon the Acquired Assets prior to the Closing Date of the Sale, and has not executed termination statements, instruments of satisfaction or releases, in form and substance

satisfactory to the Buyer, of all Liens, Claims, Encumbrances and Interests which such person or entity has or purports to have with respect to the Acquired Assets, then on the Closing Date, or as soon as possible thereafter, (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets and (b) the Buyer is hereby authorized on behalf of each of the Debtors' creditors, to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Encumbrances and Interests in, against, or upon the Acquired Assets of any kind or nature whatsoever.

27. All entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer on the Closing Date, or as otherwise directed by Buyer, with the Liens, Claims, Encumbrances and Interests of such entity to be satisfied solely from the proceeds of the Sale.

28. To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

29. The Buyer is not a successor to the Debtors or any of their affiliates or the estates by reason of any theory of law or equity. The Buyer and its employees, officers, directors, advisors, affiliates, owners, successors and assigns shall have no liability or responsibility for

NY\1607191.3

any liability or other obligation of the Debtors or the estates arising under or related to the Acquired Assets or other assets, operations, activities, or businesses of Debtors or their Affiliates other than for the Assumed Liabilities. Without limiting the generality of the foregoing, and except as otherwise specifically provided for herein and in the APA, the Buyer and its employees, officers, directors, advisors, affiliates, owners, designees, successors and assigns shall not be liable for any Liens, Claims, Encumbrances and Interests, including but not limited to under any theory of successor or vicarious liability, antitrust, environmental or labor law, *de facto* merger or substantial continuity, of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Sale, the Debtors or the estates or any obligations of the Debtors or their Affiliates or the estates arising prior to the Closing Date, including but not limited to, liabilities arising, accruing, or payable under, out of, in connection with, or in any way relating to the Acquired Assets or the Acquired Business or the other assets, operations, activities, or businesses of the Debtors or their Affiliates.

30.    This Sale Approval Order (a) is and shall be effective as a determination that, at Closing, all Liens, Claims, Encumbrances and Interests existing as to the Acquired Assets prior to the Closing Date have been and hereby are unconditionally released, discharged and terminated as to the Acquired Assets, and that the conveyance described in this Sale Approval Order has been effected, (b) is and shall be effective to cause all Liens, Claims, Encumbrances and Interests to attach to and be perfected in the proceeds of the Sale of the Acquired Assets, in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets, without the need to file any financing statements or other evidence of perfection, and (c) is and shall be binding upon and govern the acts of all entities including

without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

31.    The Debtors or the Buyer and any agent or representative of either of them, are each hereby authorized and empowered to serve upon all filing and recording officers a notice when filing or recording any instruments of transfer (including, without limitation. deeds, leases, and assignments, modifications and terminations of leases) in accordance with this Sale Approval Order and the APA to evidence and implement this paragraph of the Sale Approval Order.  All filing and recording officers are hereby directed to accept, file and record all instruments of transfer including, without limitation, deeds, leases, and assignments, modifications and terminations of leases (if any) to be filed and recorded pursuant to and in accordance with this Sale Approval Order or the APA and the various documents related thereto, without the payment of taxes associated with the transfer of the Acquired Assets to the Buyer.

32.    All persons and entities are prohibited and enjoined from taking any action to adversely effect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the APA and this Order.

33.    This Court retains exclusive jurisdiction to (i) interpret, enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) compel delivery of the Acquired Assets to the Buyer, (iii) resolve any disputes arising under or related to the APA

NY\1607191.3

and related agreements, except as otherwise provided therein, (iv) enjoin and adjudicate the assertion of any Liens, Claims, Encumbrances and Interests against the Buyer or in respect of the Acquired Assets, and (v) interpret, implement and enforce the provisions of this Sale Approval Order.

34.    As of the Closing, all agreements and all orders of this Court entered prior to the date hereof shall be deemed amended or modified solely to the extent required to permit the consummation of the transactions contemplated by this Sale Approval Order and the APA.

35.    Nothing contained (i) in any plan of reorganization (or liquidation) confirmed in the Chapter 11 Cases, (ii) the order of confirmation confirming any plan of reorganization (or liquidation), (iii) any order dismissing any of the Chapter 11 Case or converting any of them to a chapter 7 case or (iv) any order appointing an examiner or trustee in any of the Chapter 11 Cases shall conflict with or derogate from the provisions of the APA or the terms of this Sale Approval Order and no such plan or order shall discharge the obligations of the Debtors under this Sale Approval Order or the APA or any documents or agreements delivered in connection therewith.

36.    The terms and provisions of the APA, together with the terms and provisions of this Sale Approval Order, shall be binding in all respects upon, and inure to the benefit of, the Buyer and all affiliates, designees, successors and assigns of the Buyer, the Debtors, the Debtors' estates, any of Debtors' affiliates, successors and assigns, the Committee, all of the Debtors' known and unknown creditors and equityholders, including, without limitation, minority equityholders of the Debtors, and other third parties, including, but not limited to persons asserting any Liens, Claims, Encumbrances and Interests in respect of the Debtors' estates or any of the Acquired Assets or any persons that are party to any Assumed Leases and Acquired Contracts and their respective successors and assigns.  If a trustee or examiner is subsequently

NY\1607191.3

appointed in any of the Chapter 11 Cases, such trustee or examiner shall likewise be bound, in all respects, to the terms and provisions of this Sale Approval Order. The Order and the APA shall not be subject to rejection pursuant to section 365 of the Bankruptcy Code or otherwise.

37.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not materially less favorable to the Debtors. In the event a modification is materially less favorable to the Debtors, the Debtors shall file and serve a notice of such modification. If no party-in-interest filed a written objection with the Court within five (5) business days, such modification shall be deemed approved without further order of the Court, but the Court may enter any such further order as may be necessary.

38.     The failure specifically to include any particular provisions of the APA in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

39.     The provisions of Bankruptcy Rule 6004(h) and 6006(d) staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this Order shall be effective immediately upon entry thereof.

40.     To the extent that this Order is inconsistent with any prior Order or pleading with respect to the Sale Motion in these Chapter 11 Cases, the terms of this Order shall govern.

41.     To the extent that the Acquired Assets include any consumer privacy information within the meaning of 11 U.S.C. § 332, the Buyer shall adopt the Debtors' policies relating to such consumer privacy information.

NY\1607191.3

42.     Notwithstanding anything to the contrary herein, nothing in this Sale Approval

Order shall, or shall be deemed to, provide for a release any claims or Causes of Action against

the Buyer or any other person, (ii) limitation of the remedies against any person with respect to

any claims or Causes of Action, except the Buyer were expressly provided or (iii) an injunction

against any person from proceeding against any person with respect to any claims or Causes of

Action, except the Buyer were expressly provided.


Dated:  <u>January 14, 2010</u>

/e/ Dennis D. O'Brien
_____
Dennis D. O'Brien
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *01/14/2010*
Lori Vosejpka, Clerk, By DLR, Deputy Clerk