## SETTLEMENT AGREEMENT

This Settlement Agreement effective as of April 15, 2010 (as may be amended, supplemented or otherwise modified from time to time, hereinafter referred to as this "**Settlement Agreement**") is by and among GENMAR HOLDINGS, INC., a Delaware corporation, MINSTAR, LLC, a Delaware limited liability company (formerly known as Minstar, Inc., a Delaware corporation), TRIUMPH BOAT RENTALS, L.L.C., a Delaware limited liability company, GENMAR YACHT GROUP, L.L.C., a Delaware limited liability company (formerly known as Carver Boat Corporation, L.L.C., a Delaware limited liability company), GENMAR INDUSTRIES, INC., a Delaware corporation, WOOD MANUFACTURING COMPANY, INC., an Arkansas corporation, GENMAR MICHIGAN, L.L.C., a Delaware limited liability company (formerly known as Four Winns Boats, L.L.C., a Delaware limited liability company), GENMAR IP LLC, a Delaware limited liability company, GENMAR MANUFACTURING OF KANSAS, INC., a Delaware corporation, GENMAR MINNESOTA, INC., a Delaware corporation (formerly known as Larson/Glastron Boats, Inc., a Delaware corporation, and successor-by-merger to Seaswirl Boats, Inc., a Delaware corporation), GENMAR TENNESSEE, INC., a Delaware corporation (formerly known as Stratos Boats, Inc., a Delaware corporation), TRIUMPH BOATS, INC., a Delaware corporation, VEC TECHNOLOGY, INC., a Delaware corporation, GENMAR FLORIDA, INC., a Delaware corporation (formerly known as Wellcraft Marine Corp., a Delaware corporation), VEC MANAGEMENT CO., L.L.C., a Delaware limited liability company, VEC LEASING SERVICES, L.L.C., a Delaware limited liability company, GENMAR TRANSPORTATION, INC., a Delaware corporation, WINDSOR CRAFT YACHTS, L.L.C., a Delaware limited liability company, CARVER ITALIA, L.L.C., a Delaware limited liability company, CARVER YACHTS INTERNATIONAL, L.L.C., a Delaware limited liability company, MARINE MEDIA, LLC, a Delaware limited liability company, CARVER INDUSTRIES, L.L.C., a Delaware limited liability company (collectively, the "**Debtors**" and each a "**Debtor**"), GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION (together with its respective successors and assigns, "**GE Commercial Distribution Finance Corporation**"), GE COMMERCIAL DISTRIBUTION FINANCE CANADA, GE COMMERCIAL CORPORATION (AUSTRALIA) PTY LTD, GE FINANCE AND INSURANCE (collectively, together with their respective successors and assigns, the "**Subordinated Creditors**" and each a "**Subordinated Creditor**") and WELLS FARGO BANK, NATIONAL ASSOCIATION, a national banking association, acting through its Wells Fargo Business Credit operating division, in its capacity as administrative agent for the Senior Lender Parties described below under the Senior Credit Agreement described below (together with its successors and assigns, the "**Senior Administrative Agent**").

## RECITALS

The Debtors and Wells Fargo Bank, National Association, a national banking association, acting through its Wells Fargo Business Credit operating division, in its capacity as Senior Administrative Agent and in its capacity as letter of credit issuer (in such capacity, the "**Letter of Credit Issuer**"), and Wells Fargo Bank, National Association, a national banking association, and Fifth Third Bank, N.A., an Ohio banking corporation, in their capacities as lenders (the "**Lenders**" together with the Senior Administrative Agent and the

Letter of Credit Issuer the "**Senior Lender Parties**") have entered into an Amended and Restated Credit and Security Agreement dated as of November 1, 2007, as amended by a Forbearance Agreement and First Amendment to Amended and Restated Credit and Security Agreement dated as of December 17, 2008, as amended by a Second Amendment to Amended and Restated Credit and Security Agreement dated as of June 4, 2009, as amended by a Third Amendment to Amended and Restated Credit and Security Agreement and Waiver of Defaults dated as of September 2, 2009 as amended by a Fourth Amendment to Amended and Restated Credit and Security Agreement and Waiver of Defaults dated as of November 2, 2009, as amended by a letter amendment dated as of January 20, 2010, as amended by the Fifth Amendment to Amended and Restated Credit and Security Agreement dated as of February 18, 2010 (as the same may be further amended, restated, supplemented, modified, replaced or refinanced from time to time, the "**Senior Credit Agreement**").

On June 1, 2009 (the "**Petition Date**"), the Debtors filed petitions under chapter 11 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.* the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Minnesota (the "**Bankruptcy Court**"). The Debtors are acting as debtors-in-possession in their bankruptcy cases (the "**Cases**"), which are currently being jointly administered under the heading *In re Genmar Holdings, Inc.*, Case No. 09-43537, pending before the Honorable Dennis D. O'Brien. The Senior Lender Parties are providing debtor-in-possession financing to the Debtors under the terms and conditions of the Senior Credit Agreement, the Stipulation for Secured Borrowing and Adequate Protection among the Debtors and the Senior Lender Parties dated June 4, 2009 (the "**Senior Secured Borrowing Stipulation**"), and the orders of the Bankruptcy Court approving such debtor-in possession financing dated June 4, 2009, July 1, 2009, September 4, 2009, November 5, 2009, and February 18, 2010 (collectively, the "**Senior DIP Orders**").

Pursuant to the Senior Credit Agreement, the Senior Secured Borrowing Stipulation and the Senior DIP Orders, the Debtors granted the Senior Administrative Agent, for the benefit of the Senior Lender Parties, a first priority lien on and security interest in all or substantially all of the Debtors' present and after-acquired assets to secure amounts advanced under the Senior Credit Agreement.

GE Commercial Distribution Finance Corporation provided subordinated debtor-in-possession financing to the Debtors under the terms and conditions of that certain Debtor-in-Possession Working Capital Finance Agreement dated as of June 4, 2009, among the Debtors and GE Commercial Distribution Finance Corporation (as the same may be amended, restated, supplemented, modified, replaced or refinanced from time to time, the "**Subordinated Credit Agreement**").

The Subordinated Creditors and the Debtors are parties to a Vendor Agreement, dated June 1, 2004, as amended by the Amendment to the Vendor Agreement dated August 18, 2006, as amended by the Second Amendment to the Vendor Agreement dated November 5, 2007, and as amended by the Third Amendment to the Vendor Agreement dated June 4, 2009 (collectively, the "**Vendor Agreement**").

-2-

Pursuant to the Subordinated Credit Agreement and the Subordinated DIP Orders (as defined below), the Debtors granted the Subordinated Creditors, a lien on and security interest in all or substantially all of the Debtors' present and after-acquired assets, with priority junior to the liens and security interests securing amounts advanced under the Senior Credit Agreement with the limited exception of the Subordinated Priority Collateral (as defined in the Subordination Agreement) in which the Subordinated Creditors held rights senior to the Secured Lender Parties, to secure amounts owed under the Subordinated Credit Agreement and Vendor Agreement.

As a condition to continuing to extend debtor-in-possession financing to the Debtors and as a condition to allowing the Debtors to obtain subordinated debtor-in-possession financing from GE Commercial Distribution Finance Corporation, the Senior Lender Parties required the Subordinated Creditors to enter into the Subordination Agreement dated as of June 4, 2009 (the "**Subordination Agreement**").

The Bankruptcy Court approved the subordinated debtor-in-possession financing under the Subordinated Credit Agreement and the Vendor Agreement, subject to the terms and conditions of the Subordination Agreement, by orders dated June 16, 2009 and July 1, 2009 (the "**Subordinated DIP Orders**").

In December and January of 2009, the Debtors paid a total of $200,000 to the Subordinated Creditors with respect to obligations that the Subordinated Creditors alleged were owed by the Debtors to the Subordinated Creditors under the Vendor Agreement with respect to boats and other merchandise which had been repossessed from dealers by the Subordinated Creditors. In January of 2010, the Senior Administrative Agent and the Debtor alleged that the Subordinated Creditors setoff the amount of $1,400,000 from amounts due to the Debtors with respect to merchandise approved for financing by the Subordinated Creditors and invoiced and delivered to dealers by the Debtors (the foregoing $200,000 payment and $1,400,000 alleged setoff are herein referred to as the "**Covered Transactions**").

On February 3, 2010, the Debtors and the Senior Administrative Agent sent letters to the Subordinated Creditors notifying the Subordinated Creditors that, among other things, the alleged setoff of the $1,400,000 by the Subordinated Creditors was in violation of the Subordination Agreement and demanding that the Subordinated Creditors turn over to the Senior Administrative Agent the entire $1,400,000 which had been allegedly setoff by the Subordinated Creditors.

The Debtors, the Subordinated Creditors, and the Senior Administrative Agent (each a "**Party**" and, collectively, the "**Parties**") wish to settle and mutually release any and all claims relating to and arising from the Covered Transactions.

<u>AGREEMENT</u>

ACCORDINGLY, in consideration of the premises and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors,

-3-

fb.us.4937459.05

Subordinated Creditors and Senior Administrative Agent agree as follows:

1.  **Recitals.** The Recitals stated above are true and correct and are incorporated into the Settlement Agreement by reference.

2.  **Payment.**

    (a)  The Subordinated Creditors shall pay to the Senior Administrative Agent the amount of $1,000,000 (one million dollars) ("**Settlement Amount**").

    (b)  Payment of the Settlement Amount shall be made to the Senior Administrative Agent no later than 5:00 p.m. (Minneapolis time) on the third business day after approval of the Settlement Agreement by the Bankruptcy Court, and shall be made in lawful money of the United States of America in immediately available funds transferred via wire to the following account:

> Bank:  Wells Fargo Bank, N.A.
>           San Francisco, CA
> ABA Routing #:  121000248
> Account #:  6355010053
> Beneficiary:  Wells Fargo Business Credit, Minneapolis, MN
> Reference:  Genmar Holdings

3.  **Releases.**

    (a)  Each Debtor on behalf of itself, and its present and past representatives, affiliates, insurers, indemnitors, administrators, successors, assigns, partners, employees, agents and attorneys hereby fully and forever releases and discharges each Subordinated Creditor and each Senior Lender Party and their respective representatives, affiliates, insurers, indemnitors, administrators, successors, assigns, partners, employees, agents, and attorneys from any and all claims, demands, torts, damages, obligations, liabilities, costs, expenses, rights of action, or causes of action whether in law or in equity, accrued or unaccrued, known or unknown, liquidated or unliquidated, certain or contingent, which any of them now has or hereafter may acquire, relating to and arising on account of the Covered Transactions.  Such release shall be effective on the date the payment of the Settlement Amount to the Senior Administrative Agent described in paragraph 2 is made.

    (b)  The Senior Administrative Agent, for itself and for each other Senior Lender Party and the present and past representatives, affiliates, insurers, indemnitors, administrators, successors, assigns, partners, employees, agents and attorneys of each Senior Lender Party hereby fully and forever releases and discharges each Subordinated Creditor and each Debtor and their respective representatives, affiliates, insurers, indemnitors, administrators, successors, assigns, partners, employees, agents, and attorneys from any and all claims, demands, torts, damages, obligations, liabilities, costs, expenses, rights of action, or causes of action whether in law or in equity, accrued or unaccrued, known or unknown, liquidated or unliquidated, certain or contingent, which

-4-

any of them now has or hereafter may acquire, relating to and arising on account of the Covered Transactions. Such release shall be effective on the date the payment to the Senior Administrative Agent described in paragraph 2 is made.

(c)     Each Subordinated Creditor on behalf of itself, and its present and past representatives, affiliates, insurers, indemnitors, administrators, successors, assigns, partners, employees, agents and attorneys hereby fully and forever releases and discharges each Debtor and each Senior Lender Party and their respective representatives, affiliates, insurers, indemnitors, administrators, successors, assigns, partners, employees, agents, and attorneys from any and all claims, demands, torts, damages, obligations, liabilities, costs, expenses, rights of action, or causes of action whether in law or in equity, accrued or unaccrued, known or unknown, liquidated or unliquidated, certain or contingent, which any of them now has or hereafter may acquire, relating to and arising on account of the Covered Transactions; provided, however, that this release does not affect any of the Debtors' obligations to the Subordinated Creditors arising under the Subordinated Credit Agreement or Vendor Agreement, except that the Debtors' obligations to the Subordinated Creditors shall be adjusted by the Subordinated Creditors in the amount of $600,000 (the amount retained by the Subordinated Creditors from the Covered Transactions pursuant to this Settlement Agreement) as deemed appropriate by the Subordinated Creditors in accordance with the Subordinated Credit Agreement or Vendor Agreement. Such release shall be effective on the date the payment of the Settlement Amount to the Senior Administrative Agent described in paragraph 2 is made.

4.     **Effectiveness.** This Settlement Agreement shall be subject to approval by the Bankruptcy Court and shall be null and void if an order of the Bankruptcy Court approving this Settlement Agreement is not entered by the earlier of April 19, 2010, or the time at which the Cases are converted to cases under chapter 7 of the Bankruptcy Code or such later time as to which the parties may agree. In the event that the Settlement Agreement is not approved by the Bankruptcy Court for any reason, the Parties will be returned to the *status quo ante* as if this Settlement Agreement had never been executed.

5.     **Further Assurances.** Each Party agrees to execute all such further documents as shall be reasonably necessary or helpful to carry out to the provisions of this Settlement Agreement.

6.     **No Prior Assignment of Claims.** Each Party represents and warrants that said Party has not previously assigned or transferred any claim, demand, liability, or cause of action that is the subject of this Settlement Agreement.

7.     **Amendments and Waiver.** This Settlement Agreement cannot be amended, modified or waived except in writing signed by each Party to be bound thereby.

8.     **Construction.** This Settlement Agreement constitutes a negotiated document. In case of any alleged ambiguity in any term of this Settlement Agreement, such term shall not be constructed in favor of or against any Party by reason of the participation of such Party or its attorneys in the negotiation or drafting of this Settlement Agreement.

fb.us.4937459.05

9.　**Applicable Law/Jurisdiction.** This Settlement Agreement shall be subject to and constructed and enforced in accordance with the laws of the State of Minnesota. The Bankruptcy Court shall retain jurisdiction to hear any matters, suits or disputes regarding the Covered Transactions or this Settlement Agreement or to enforce any rights hereunder and any such matters, suits or disputes, if any, shall be brought in the Bankruptcy Court so long as the Bankruptcy Court retains such jurisdiction.

10.　**Successors and Assigns.** This Settlement Agreement shall inure to the benefit of, and shall be binding upon the Parties and their respective successors and assigns including any chapter 7 or chapter 11 trustee subsequently appointed in the Cases.

11.　**No Admissions.** Each Party agrees and stipulates that this Settlement Agreement is made solely for the purpose of settling and compromising claims and disputes and in order to avoid the cost and expense of litigation. Nothing herein shall constitute an admission of any fact or prejudice any question of law with respect to the matters addressed by this Settlement Agreement. Nothing herein shall constitute an admission of wrongdoing or liability by any of the Parties.

12.　**Severability.** Any provision of this Settlement Agreement that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions.

13.　**Headings.** Section headings in this Settlement Agreement are for convenience only and shall not in any way limit or affect the meaning or interpretation of any provision of this Settlement Agreement.

14.　**Entire Agreement.** This Settlement Agreement contains the complete agreement of the parties with respect to settling claims related to and arising from the Covered Transactions, superseding any prior agreements on the matter, whether written or oral.

15.　**Acknowledgments and Representation.** The Parties acknowledge that they have carefully read and fully understand the terms of this Settlement Agreement. They have jointly negotiated and prepared this Settlement Agreement and are fully satisfied with all of its terms. The individuals executing this Settlement Agreement are authorized to do so on behalf of the entities for which they are executing this Settlement Agreement, have obtained all required consents and approvals, and have had a full opportunity to consult with legal counsel of their choice regarding the terms hereof. The Parties entered into this Settlement Agreement knowingly and voluntarily and agree to all of its provisions.

16.　**Counterparts and Signatures.** This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together shall constitute but one and the same instrument. Facsimile and electronic versions of signatures shall be deemed original signatures, which may be relied upon by all parties and shall be binding on the respective signor.

*[The remainder of this page is intentionally left blank.]*

fb.us.4937459.05

IN WITNESS WHEREOF, each of the parties hereto has caused this Settlement Agreement to be executed and delivered by its officer thereto duly authorized as of the date first above written.

GENMAR HOLDINGS, INC.,
MINSTAR, LLC,
GENMAR INDUSTRIES, INC.,
WOOD MANUFACTURING COMPANY, INC.,
GENMAR MANUFACTURING OF KANSAS, INC.,
GENMAR MINNESOTA, INC.,
GENMAR TENNESSEE, INC.
TRIUMPH BOATS, INC.,
VEC TECHNOLOGY, INC.,
GENMAR FLORIDA, INC.,
GENMAR TRANSPORTATION, INC.,
TRIUMPH BOAT RENTALS, L.L.C.,
GENMAR YACHT GROUP, L.L.C.,
GENMAR MICHIGAN, L.L.C.,
GENMAR IP LLC,
VEC MANAGEMENT CO., L.L.C.,
VEC LEASING SERVICES, L.L.C.,
WINDSOR CRAFT YACHTS, L.L.C.,
CARVER ITALIA, L.L.C.,
CARVER YACHTS INTERNATIONAL, L.L.C.,
MARINE MEDIA, LLC, and
CARVER INDUSTRIES, L.L.C.

By: _____

Name: _David Stoichen_

Title: _V.P._

*Signature Page to Settlement Agreement*

**WELLS FARGO BANK, NATIONAL
ASSOCIATION, as Administrative
Agent**

By: _____

Name: Kimberly Leppanen
Title:   Vice President

GE COMMERCIAL DISTRIBUTION
FINANCE CORPORATION

By: _____
     Name: SHAUN PETTIT
     Title: SVP


GE COMMERCIAL DISTRIBUTION
FINANCE CANADA


By: _____
     Name:_____
     Title:_____


GE COMMERCIAL CORPORATION
(AUSTRALIA) PTY LTD


By: _____
     Name:_____
     Title:_____


GE FINANCE AND INSURANCE


By: _____
     Name:_____
     Title:_____


*Signature Page to Settlement Agreement*

**GE COMMERCIAL DISTRIBUTION
FINANCE CORPORATION**

By: _____
    Name:_____
    Title:_____

**GE COMMERCIAL DISTRIBUTION
FINANCE CANADA**

By: _____
    Name: *PETER RINCLER*
    Title: *PRESIDENT.*

**GE COMMERCIAL CORPORATION
(AUSTRALIA) PTY LTD**

By: _____
    Name:_____
    Title:_____

**GE FINANCE AND INSURANCE**

By: _____
    Name:_____
    Title:_____

*Signature Page to Settlement Agreement*

GE COMMERCIAL DISTRIBUTION
FINANCE CORPORATION


By: _____
　　Name: _____
　　Title: _____


GE COMMERCIAL DISTRIBUTION
FINANCE CANADA


By: _____
　　Name: _____
　　Title: _____


GE COMMERCIAL CORPORATION
(AUSTRALIA) PTY LTD


By: _____
　　Name: ANDREW FISHER
　　Title: SENIOR CREDIT MANAGER


GE FINANCE AND INSURANCE


By: _____
　　Name: ANDREW FISHER
　　Title: SENIOR CREDIT MANAGER


*Signature Page to Settlement Agreement*