UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Genmar Holdings, Inc.,<br><br>Debtor. | Case No. 09-43537<br>Chapter 11 Case*<br><br>*Converted to Ch. 7<br>on November 22, 2010 |

**REQUEST OF JACOB MANAGEMENT CORPORATION
FOR PAYMENT OF PRE-CONVERSION
ADMINISTRATIVE EXPENSE**

The undersigned Claimant Jacobs Management Corporation ("JMC"), pursuant to Local Rule 3002-2(c) states that:

1. The Debtors filed a petition under Chapter 11 of Title 11 of the United States Code on June 1, 2009.

2. The Debtors' cases were converted to cases under Chapter 7 on November 22, 2010.

3. Prior to conversion of the cases, JMC provided services which qualify as an administrative expense under 11 U.S.C. § 503. These services were in the nature of management and related services under a pre-petition Management Services Agreement dated July 1, 2008, a copy of which is attached hereto as Exhibit 1.

4. The services provided by JMC prior to conversion of the cases have a reasonable value of $1,833,333.33. During the administration of these cases prior to conversion, the Debtors paid JMC $1,074,902.78 for such services. Accordingly, JMC has an unpaid balance for such services of $758,430.55 as set forth in more detail on the attached Exhibit 2. Separately, JMC also has a $50,000 administrative claim for that portion of an e-commerce bill for insurance attributable to the post-petition time period as set forth on Exhibit 3.

6. Attached are documents supporting Claimant's request for payment.

7. JMC requests allowance of this Pre-conversion Administrative Expense in the total amount of $808,430.55.

8. Pursuant to Local Rule 3002-2(c), a copy of this claim is being served upon the Chapter 7 Trustee Charles W. Ries.

Dated: February 9, 2011                MASLON EDELMAN BORMAN & BRAND LLP

   /e/ Amy J. Swedberg
Amy J. Swedberg (#271019)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 672-8200

**ATTORNEYS FOR JACOBS MANAGEMENT CORPORATION**

2

<u>Exhibit 1</u>

Management Services Agreement

## MANAGEMENT SERVICES AGREEMENT

THIS MANAGEMENT SERVICES AGREEMENT made and entered into this 1st day of July, 2008 by and between JACOBS MANAGEMENT CORP., a Delaware corporation (hereinafter referred to as "JMC"), and GENMAR HOLDINGS, INC., a Delaware corporation (hereinafter referred to as "Holdings").

WHEREAS, JMC, through its officers, employees and staff, has considerable knowledge and experience relating to the organization and financial aspects of managing business enterprises and desires to continue to aid and assist Holdings by providing certain advisory and other managerial services to Holdings; and

WHEREAS, Holdings desires to continue to engage JMC.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1. **Engagement of JMC.** Pursuant to the terms and conditions hereinafter set forth, Holdings does hereby appoint and engage JMC, and JMC hereby accepts its appointment and engagement by Holdings, as Holdings' management consultant and advisor with respect to the matters specified in paragraph 2 hereof.

2. **Services of JMC.** JMC shall provide managerial and advisory services and recommendations to Holdings regarding Holdings' management, including general management, direction and planning; financial management, analysis and planning; general accounting and administration; marketing and sales assistance; facilities management; insurance administration; tax preparation and consulting; personnel administration and public relations; management of discontinued operations liabilities; employee benefit administration; IT consulting and administration; and records management. It is further agreed that JMC shall make available as often as requested by Holdings, qualified personnel to assist Holdings with any problems or questions Holdings may have in any of the above described areas. In addition, qualified JMC personnel shall monitor, examine and review the operations of Holdings on a regular basis and shall periodically report the results of such operations to the Board of Directors of Holdings.

3. **Holdings' Responsibilities.** Holdings shall cooperate with JMC personnel in the review and evaluation of Holdings' operating procedures and shall provide such reports and other material as JMC may reasonably request.

4. **Indemnification.** Holdings shall indemnify and hold harmless JMC and each of its directors and officers, employees and agents who are or are threatened to be made party to or are otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the providing of services to Holdings under this Agreement, from and against all expense, liability and loss (including attorneys' fees, judgments, fines and amounts paid in settlement) incurred or suffered by such indemnitee in connection therewith, except to the extent that it is determined in such action, suit or proceeding that action taken or failure to take action by such indemnitee in the providing of such services constituted gross negligence or willful misconduct. The foregoing rights of natural persons to indemnification shall be contract rights, shall continue to an indemnitee who has ceased to be a director,

officer, employee or agent of JMC, and shall inure to the benefit of the indemnitee's heirs, executors and administrators.

5. <u>Confidentiality</u>. It is understood that in the course of performing its duties under this Agreement, JMC, its officers and personnel, will become aware of certain financial information which Holdings considers to be proprietary and confidential. JMC shall maintain all such information in the strictest confidence and shall not disclose such information to any third party without the prior consent of Holdings' Board of Directors. Notwithstanding the foregoing, nothing in this Agreement shall be construed as restricting or prohibiting JMC, its officers and personnel, from offering the same or similar services to other corporations or enterprises, whether or not such other business enterprises could be considered to be competitive with the business of Holdings.

6. <u>Consideration</u>. In consideration of JMC's services under this Agreement, Holdings shall pay to JMC a management fee of $2,750,000.00 per annum payable in twelve (12) equal monthly installments. Such monthly installments are due and payable in advance of the first business day of each month. Within two (2) months prior to the end of any given year under this Agreement, the parties agree to negotiate in good faith and establish the consideration to be paid by Holdings to JMC for the following year. In addition to the annual fee contemplated in this paragraph 6, the parties acknowledge and agree that any fees associated with (a) records management services performed by non-fulltime JMC personnel, and (b) IT consulting services provided by JMC's Jacobs Interactive division are not included in such annual fee and are to be negotiated and agreed to by the parties as the circumstances warrant.

7. <u>Invoices for Expenses</u>. JMC shall submit to Holdings all invoices for expenses incurred by JMC personnel in connection with rendering managerial services to Holdings under this Agreement. Within thirty (30) days after receipt of any or all such invoices, Holdings shall reimburse JMC for such expenses incurred. It is understood that reimbursement of such expenses shall be in addition to the fee set forth in paragraph 6 above.

8. <u>Term of Agreement</u>. The term of this Agreement shall be for a period of one (1) year commencing July 1, 2008. Thereafter, the Agreement shall be automatically extended for successive one (1) year periods unless either party provides to the other party written notice of termination at least two (2) months prior to the end of the then-current term.

9. <u>Severability</u>. Any provisions of this Agreement which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

10. <u>Amendment</u>. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and no amendment, modification, termination or waiver of any provisions of this Agreement and no consent to any departure by any party therefrom shall in any event be effective unless the same shall be in writing and signed by all parties, and then such waiver or consent shall be effective only in the given instance and for the specific purpose for which given.

11. <u>Assignment Prohibited</u>. The parties' rights and obligations under this Agreement may not be assigned to any third party without the written consent of all the parties.

12. <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of Minnesota.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first written above.

JACOBS MANAGEMENT CORP.

By: _____

Title: VP-Treasurer

GENMAR HOLDINGS, INC.

By: _____

Title: President

3

Exhibit 2

**Jacobs Management Corporation**
**Post Petition Magagement Fees**

|  | Mgmt Fees per mgmt Agreement | Mgmt Fees actually paid | short of contract |
|---|---|---|---|
| June | $ 229,166.67 | $ 192,438.93 | $ 36,727.74 |
| July | $ 229,166.67 | $ 221,537.00 | $ 7,629.67 |
| August | $ 229,166.67 | $ 149,727.53 | $ 79,439.14 |
| September | $ 229,166.67 | $ 75,000.00 | $ 154,166.67 |
| October | $ 229,166.67 | $ 128,377.10 | $ 100,789.57 |
|  | $ 1,145,833.33 | $ 767,080.56 | $ 378,752.77 |
|  |  |  |  |
| November | $ 229,166.67 | $ 97,529.00 | $ 131,637.67 |
| December | $ 229,166.67 | $ 107,691.68 | $ 121,474.99 |
| January, 2010 | $ 229,166.67 | $ 102,601.54 | $ 126,565.13 |
|  | $ 687,500.00 | $ 307,822.22 | $ 379,677.78 |
|  |  |  |  |
| Grand Total post c-11 | $ 1,833,333.33 | $ 1,074,902.78 | $ 758,430.55 |

<u>Exhibit 3</u>

Attached is a copy of an Invoice from Willis of Minnesota, Inc. dated January 30, 2009 in the total amount of $90,932.00 is for e-commerce insurance for the 12 month period from February 1, 2009 through January 31, 2010.   A total of $75,000 of this invoice is allocated to insurance for the Debtor, with $25,000 attributable to the pre-petition time period (the months of February through May, 2009) and **$50,000** attributable to the post-petition time period (the months of June, 2009 through January, 2010).

## JACOBS MANAGEMENT CORPORATION

28674

| Vendor ID | Name | Payment Number | Check Date | Document Number |
|---|---|---|---|---|
| WILMIN010 | Willis of Minnesota, Inc. | 010106 | 2/9/2009 | 28674 |

| Document Number | PO#/Account # | Date | Net Amount Paid | Amount |
|---|---|---|---|---|
| 0193425/0191129 | | 1/30/2009 | $90,932.00 | $90,932.00 |

$90,932.00      $90,932.00

---

**JACOBS MANAGEMENT CORPORATION**
2900 IDS CENTER
80 S 8TH ST
MINNEAPOLIS, MN 55402-2100
(612) 339-9500

USBANK
17-2-910

28674

DATE: 2/9/2009      AMOUNT: $90,932.00

Ninety Thousand Nine Hundred Thirty Two Dollars And 00 Cents

PAY TO THE ORDER OF:
Willis of Minnesota, Inc.
P.O. Box 93076
Chicago, IL 60673-3076

⑆028674⑆ ⑈091000022⑈ 104755881600⑈

---

## JACOBS MANAGEMENT CORPORATION

28674

| Vendor ID | Name | Payment Number | Check Date | Document Number |
|---|---|---|---|---|
| WILMIN010 | Willis of Minnesota, Inc. | 010106 | 2/9/2009 | 28674 |

| Document Number | PO#/Account # | Date | Net Amount Paid | Amount |
|---|---|---|---|---|
| 0193425/0191129 | | 1/30/2009 | $90,932.00 | $90,932.00 |

$90,932.00      $90,932.00

DELUXE BUSINESS FORMS 1+800-328-0304 www.deluxeforms.com

To: Lori                              Make Payment on: 2/13/09
Date: 2/6/09                          Invoice Amount: 90,932
Invoice Date: 1/30/09 & 11/26/08      Approved By: [signature]
Invoice No: 0193425 & 0191129         Approval Date: 2/9/09
Purpose of Payment: Premium + Broker Fee for E-Commerce 1/31/09-10 Policy

**Payable to:**

☐ A.I. Credit Corp.
☐ Amerisure Insurance Company
☐ Crawford & Company
☐ Florida Self Insurers Guaranty Association, Inc.
☐ Gallagher Bassett Services
☐ The Hartford
☐ 
☐ Marsh USA, Inc.
☐ MN Workers Comp Assigned Risk Plan c/o RTW, Inc.
☐ RJF Agencies, Inc.
☐ Wausau Insurance Companies
☐ Wells Fargo Insurance Services
☒ Willis of Minnesota, Inc.

**Allocation:**

| Amount | Category | Amount | Category |
|---|---|---|---|
| 75,000 | Part of Fronted Program (Genmar) | | AEGIS |
| | Carver | | AMF/Minstar |
| | Four Winns | | Jacobs, Irwin |
| | Genmar Corporate | 1,132 | Jacobs Industries |
| | Genmar Int'l. | | Jacobs Management |
| | Larson/Glastron | 3,800 | Jacobs Trading |
| | Seaswirl | | Lindsay, Dan |
| | Stratos | | MLO |
| | Transportation (Genmar) | 6,000 | Operation Bass |
| | Triumph Boats | | Premier Storage |
| | VEC Technology | 5,000 | Watkins |
| | Wellcraft | | Other |
| | Wood/Ranger | | |

Comments:



**Willis of Minnesota, Inc.**
P.O. Box 93076
Chicago, IL 60673-3076
(763) 302-7100

# INVOICE

| INVOICE DATE |
|---|
| 30-JAN-2009 |

| INVOICE NO. |
|---|
| 0193425 |

JACOBS MANAGEMENT CORPORATION
ATTN: JILL HAMLETT
2900 IDS CENTER
80 SOUTH 8TH STREET
MINNEAPOLIS   MN 55402

**DUE DATE**
Upon Receipt

| ACCOUNT | LOCATION | ACCOUNT NAME |
|---|---|---|
| 111152 | 001 | Jacobs Management Corporation |

FOR QUESTIONS REGARDING THIS INVOICE, PLEASE CALL ONE OF THE FOLLOWING
SERVICER  Merry L. Cravens          PRODUCER  Scot A. Housh

| REF | BILLING INFORMATION | AMOUNT |
|---|---|---|
| 01 | Transaction: Policy Renewal<br>Eff. Date   : 31-JAN-2009<br>Policy      : 287337432<br>Description: Internet Network Liabilit<br>Period      : 31-JAN-2009 to 31-JAN-2010<br>Carrier     : Columbia Casualty Company<br>In Full     : January 2009<br>  Premium for Cyber Security Liability<br>  Commission Credit<br>  MN Surplus Lines Tax<br>  MN Stamping Fee | $  92,162.00<br>$  14,745.92CR<br>$   2,322.48<br>$     193.54 |
| | Total for Reference 01   $       79,932.10 | |

Cyber Liability.Premium billed is Net of Commission
Gross Premium:      $92,162.00
Commission:         -$14,745.92
                    ------------
Net Premium:        $77,416.08
MN Suplus Lines Tax $ 2,322.48
MN Stamping Fee     $   193.54
                    ------------
Total:              $79,932.10

PLEASE INCLUDE INVOICE NUMBER WITH YOUR PAYMENT     AMOUNT DUE ➡    (Continued)

Willis is a member of a major international group of companies. In addition to the compensation received by Willis from insurers for placements of your insurance coverages, other parties, such as excess and surplus lines brokers, wholesalers, reinsurance intermediaries, underwriting managers and similar parties (some of which may be owned in whole or in part by Willis' corporate parents or affiliates), may earn and retain usual and customary commissions for their role in providing insurance products or services to clients under their separate contracts with insurers or reinsurers. On October 21, 2004, we announced that we would discontinue contingencies in North America immediately and in the other countries in which we operate by the end of the year. For any placements that were made prior to October 21, 2004, it is possible that Willis, or its corporate parents or affiliates, earned contingent payments or allowances from insurers based on factors which are not client-specific, such as size or performance of an overall book of business produced with an insurer by Willis, its corporate parents or affiliates. Upon written request, Willis will provide information regarding the compensation received by Willis or by its corporate parents or affiliates. Prior to its merger with Willis, HRH accepted contingent compensation on certain of its clients' accounts; these contingents will be phased out over three years, and no contingents will be accepted on any new brokerage clients or business generated after the October 1, 2008 acquisition.



**Willis of Minnesota, Inc.**
P.O. Box 93076
Chicago, IL 60673-3076
(763) 302-7100

**INVOICE**

| INVOICE DATE |
|---|
| 30-JAN-2009 |

| INVOICE NO. |
|---|
| 0193425 |

JACOBS MANAGEMENT CORPORATION
ATTN: JILL HAMLETT
2900 IDS CENTER
80 SOUTH 8TH STREET
MINNEAPOLIS  MN  55402

**DUE DATE**

| Upon Receipt |
|---|

| ACCOUNT | LOCATION | ACCOUNT NAME |
|---|---|---|
| 111152 | 001 | Jacobs Management Corporation |

FOR QUESTIONS REGARDING THIS INVOICE, PLEASE CALL ONE OF THE FOLLOWING
SERVICER  Merry L. Cravens          PRODUCER  Scot A. Housh

| REF | BILLING INFORMATION | AMOUNT |
|---|---|---|
| | ACH/WIRE INSTRUCTIONS:<br>BANK NAME: SUNTRUST BANK<br>CITY/STATE: ATLANTA, GA<br>ABA#: 061000104<br>ACCOUNT#: 1000005445241<br>ACCOUNT NAME: WILLIS OF MINNESOTA, INC<br>***PLEASE REFERENCE INVOICE NUMBER***<br>***US DOLLAR ACCOUNT ONLY*** | |

PLEASE INCLUDE INVOICE NUMBER WITH YOUR PAYMENT    AMOUNT DUE ➡  $   79,932.10

Willis is a member of a major international group of companies. In addition to the compensation received by Willis from insurers for placements of your insurance coverages, other parties, such as excess and surplus lines brokers, wholesalers, reinsurance intermediaries, underwriting managers and similar parties (some of which may be owned in whole or in part by Willis' corporate parents or affiliates), may earn and retain usual and customary commissions for their role in providing insurance products or services to clients under their separate contracts with insurers or reinsurers. On October 21, 2004, we announced that we would discontinue contingencies in North America immediately and in the other countries in which we operate by the end of the year. For any placements that were made prior to October 21, 2004, it is possible that Willis, or its corporate parents or affiliates, earned contingent payments or allowances from insurers based on factors which are not client-specific, such as size or performance of an overall book of business produced with an insurer by Willis, its corporate parents or affiliates. Upon written request, Willis will provide information regarding the compensation received by Willis or by its corporate parents or affiliates. Prior to its merger with Willis, HRH accepted contingent compensation on certain of its clients' accounts; these contingents will be phased out over three years, and no contingents will be accepted on any new brokerage clients or business generated after the October 1, 2008 acquisition.

# Willis

Willis of Minnesota, Inc.
P.O. Box 93076
Chicago, IL 60673-3076
(763) 302-7100

**INVOICE**

| INVOICE DATE |
|---|
| 26-NOV-2008 |

| INVOICE NO. |
|---|
| 0191129 |

Jacobs Management Corporation
Attn: Jill Hamlett
2900 IDS Center
80 South 8th Street
Minneapolis, MN 55402

**DUE DATE**

| 30-JAN-2009 |
|---|

| ACCOUNT | LOCATION | ACCOUNT NAME |
|---|---|---|
| 111152 | 001 | Jacobs Management Corporation |

FOR QUESTIONS REGARDING THIS INVOICE, PLEASE CALL ONE OF THE FOLLOWING
SERVICER  Merry L. Cravens            PRODUCER  Scot A. Housh

| REF | BILLING INFORMATION | AMOUNT |
|---|---|---|
| 01 | Transaction: Account Service<br>Eff. Date   : 10-NOV-2008<br>Service     : MGMNT<br>Description: Management<br>Period      : 10-NOV-2008 to 10-NOV-2009<br>Installment: January 2009<br>   Fee Account for Management | $    11,000.00 |
|  | Total for Reference 01    $    11,000.00 |  |
|  | ACH/WIRE INSTRUCTIONS:<br>BANK NAME: SUNTRUST BANK<br>CITY/STATE: ATLANTA, GA<br>ABA#: 061000104<br>ACCOUNT#: 1000005445241<br>ACCOUNT NAME: WILLIS OF MINNESOTA, INC<br>***PLEASE REFERENCE INVOICE NUMBER***<br>   ***US DOLLAR ACCOUNT ONLY*** |  |

**PLEASE RETURN THIS COPY WITH YOUR PAYMENT**    AMOUNT DUE ➜ $    11,000.00

Willis is a member of a major international group of companies. In addition to the compensation received by Willis from insurers for placements of your insurance coverages, other parties, such as excess and surplus lines brokers, wholesalers, reinsurance intermediaries, underwriting managers and similar parties (some of which may be owned in whole or in part by Willis' corporate parents or affiliates), may earn and retain usual and customary commissions for their role in providing insurance products or services to clients under their separate contracts with insurers or reinsurers. On October 21, 2004, we announced that we would discontinue contingencies in North America immediately and in the other countries in which we operate by the end of the year. For any placements that were made prior to October 21, 2004, it is possible that Willis, or its corporate parents or affiliates, earned contingent payments or allowances from insurers based on factors which are not client-specific, such as size or performance of an overall book of business produced with an insurer by Willis, its corporate parents or affiliates. Upon written request, Willis will provide information regarding the compensation received by Willis or by its corporate parents or affiliates.

**Willis**

Willis of Minnesota, Inc.
P.O. Box 93076
Chicago, IL 60673-3076
(763) 302-7100

**INVOICE**

INVOICE DATE
26-NOV-2008

INVOICE NO.
0191129

Jacobs Management Corporation
Attn: Jill Hamlett
2900 IDS Center
80 South 8th Street
Minneapolis, MN 55402

**DUE DATE**
30-JAN-2009

| ACCOUNT | LOCATION | ACCOUNT NAME |
|---|---|---|
| 111152 | 001 | Jacobs Management Corporation |

FOR QUESTIONS REGARDING THIS INVOICE, PLEASE CALL ONE OF THE FOLLOWING
SERVICER: Merry L. Cravens          PRODUCER: Scot A. Housh

| REF | BILLING INFORMATION | AMOUNT |
|---|---|---|
| 01 | Transaction: Account Service<br>Eff. Date : 10-NOV-2008<br>Service : MGMNT<br>Description: Management<br>Period : 10-NOV-2008 to 10-NOV-2009<br>Installment: January 2009<br>    Fee Account for Management | $ 11,000.00 |
|  | Total for Reference 01   $  11,000.00 | |
|  | ACH/WIRE INSTRUCTIONS:<br>BANK NAME: SUNTRUST BANK<br>CITY/STATE: ATLANTA, GA<br>ABA#: 061000104<br>ACCOUNT#: 1000005445241<br>ACCOUNT NAME: WILLIS OF MINNESOTA, INC<br>***PLEASE REFERENCE INVOICE NUMBER***<br>   ***US DOLLAR ACCOUNT ONLY*** | |

PLEASE RETAIN THIS COPY FOR YOUR RECORDS          AMOUNT DUE  $  11,000.00

Willis is a member of a major international group of companies. In addition to the compensation received by Willis from insurers for placements of your insurance coverages, other parties, such as excess and surplus lines brokers, wholesalers, reinsurance intermediaries, underwriting managers and similar parties (some of which may be owned in whole or in part by Willis' corporate parents or affiliates), may earn and retain usual and customary commissions for their role in providing insurance products or services to clients under their separate contracts with insurers or reinsurers. On October 21, 2004, we announced that we would discontinue contingencies in North America immediately and in the other countries in which we operate by the end of the year. For any placements that were made prior to October 21, 2004, it is possible that Willis, or its corporate parents or affiliates, earned contingent payments or allowances from insurers based on factors which are not client-specific, such as size or performance of an overall book of business produced with an insurer by Willis, its corporate parents or affiliates. Upon written request, Willis will provide information regarding the compensation received by Willis or by its corporate parents or affiliates.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:  
Genmar Holdings, Inc.,  

Debtor.

Case No. 09-43537  
Chapter 11 Case*  

*Converted to Ch. 7  
on November 22, 2010

## UNSWORN CERTIFICATE OF SERVICE

I, Amy J. Swedberg, declare that on February 9, 2011, the following documents:

1. Request Of Jacob Management Corporation For Payment Of Pre-Conversion Administrative Expense; and

2. Certificate of Service

were electronically filed through the Electronic Case Filing System (ECF), to the Filing Users, including, but not limited to, the Chapter 7 Trustee listed below:

Charles W. Ries  
cw_ries@mrr-law.com

Pursuant to Local Rule 9006-1, the filing constitutes service or notice of the filed documents on the Filing Users.

Dated: February 9, 2011

_/e/  Amy J. Swedberg  
Maslon Edelman Borman & Brand, LLP  
3300 Wells Fargo Center  
90 South 7th Street  
Minneapolis, MN  55402